No. 25-12597

# United States Court of Appeals

*for the*

# Eleventh Circuit

ADIDAS AG, ADIDAS INTERNATIONAL MARKETING B.V.,
ADIDAS AMERICA, INC.,

*Plaintiffs-Appellees,*

– v. –

THE INDIVIDUALS, BUSINESS ENTITIES, AND UNICORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, *et al.*,

*Defendants,*

LOCALITYI.COM, MEDIUMSPOTS.COM,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
(HONORABLE RODNEY SMITH, U.S. DISTRICT JUDGE)

## BRIEF OF APPELLANTS

LAINA LOPEZ
BERLINER CORCORAN & ROWE, LLP
*Counsel for Appellants*
1101 17th Street, NW
Suite 1100
Washington, DC 20036
(202) 293-5555

CP COUNSEL PRESS (800) 4-APPEAL • (385408)

**U.S. COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT (CIP)**

localityi.com, et al, *vs.* Adidas AG, et al, Appeal No. 25-12597-H

11th Cir. R. 26.1-1(a) requires the appellant or petitioner to file a Certificate of Interested Persons and Corporate Disclosure Statement (CIP) with this court within 14 days after the date the case or appeal is docketed in this court, and to include a CIP within every motion, petition, brief, answer, response, and reply filed. Also, all appellees, intervenors, respondents, and all other parties to the case or appeal must file a CIP within 28 days after the date the case or appeal is docketed in this court. **You may use this form to fulfill these requirements.** In alphabetical order, with one name per line, please list all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party. ***(Please type or print legibly)***:

Adidas AG (Plaintiff/Appellee)

Adidas America, Inc. (Plaintiff/Appellee)

Adidas International Marketing B.V. (Plaintiff/Appellee)

Amgo Technology Co., Limited (mediumspots.com) (Defendant/Appellant)

Chen, Jacob (Counsel for Defendants/Appellants);

Daley, Christine Ann - Counsel for Plaintiffs/Appellees

Gaffigan, Stephen Michael (Counsel for Plaintiffs/Appellees);

Gigante, Virgilio (Counsel for Plaintiffs/Appellees)

Heitner, Darren Adam (Counsel for Defendants/Appellants)

Lopez, Laina C. (Counsel for Defendants/Appellants)(ADDED)

(See attached page for additional interested persons)

Submitted by:

Signature: /s/ Laina C. Lopez

Name: Laina C. Lopez Prisoner # (if applicable): ____________

Address: 1101 17th St NW, Suite 1100, Washington, D.C. 20036

Telephone #: (202) 293-5555

Rev.: 2/23

*Additional Interested Persons:*

Shenzhen Huipeng Network Technology Co., Ltd. (localityi.com) (Defendant/Appellant)

Smith, Hon. Rodney - District Court Judge

Son, Anthony H (Counsel for Defendants/Appellants)

Wiborg-Rodriguez, T. Raquel (Counsel for Plaintiffs/Appellees)

## STATEMENT REGARDING ORAL ARGUMENT

Defendants-Appellants Localityi.com and Mediumspots.com respectfully request oral argument to be heard on certain important issues of international law that have not been decided in this Circuit and to rectify an abuse of discretion by the district court in contravention of clear existing Eleventh Circuit precedent.

## TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement…………C-1

Statement Regarding Oral Argument………………………………………………i

Table of Contents…………………………………………………………...…..ii

Table of Authorities…………………………………………………………..…iv

Statement of Jurisdiction..…………………………………………………………1

Statement of the Issues……………….………………………………………………2

Statement of the Case……………………………………………...……….3

I. Statement of Facts…………………………………………….……………..3

II. Standard of Review……………………………………..………….11

Summary of Argument…………………………………………………………12

Argument………………………………………………………………………13

I. The District Court Should Have Vacated the Default Judgment under Rule 60(b)(4) Because the Default Judgment Was Void for Lack of Proper Service……………………………………………….……………..13

A. The Alternative Means Were Prohibited by International Agreement, the Hague Convention…………………………………....14

1. The Hague Convention Is Comprehensive, Specifies the Approved Methods of Service, and Pre-Empts Inconsistent Methods of Service…………………...………15

2. China Has Not Agreed with the United States to Permit Service by Email or Website Publication and Its Internal Law Mandates Service Via Its Central Authority; those Courts that Have Nonetheless Permitted Alternative Means

to Serve China-Based Entities – Including the District Court Below – Are Wrong……………………………………………….….20

3. In Addition, China Has Expressed Objected to Article 10's Service by Postal Channels, which Includes Via Electronic Means……………………………..……………………25

4. Reciprocity and Logic Add Further Support to the View Urged by the Website Owners……………..……………………27

B. It Is Undisputed that the Website Owners Were Not Served through China's Central Authority; Hence, the Default Judgment is Void and this Court Should Vacate It……..………………………28

II. The District Court Abused Its Discretion in Finding No Excusable Neglect under Rule 60(b)(1) Because It Failed to Conduct a Totality of Circumstance Analysis and Failed to Properly Evaluate the Factor It Did Consider……………………………………………………………29

A. The Eleventh Circuit Mandates that Courts Considering Excusable Neglect Under Rule 60(b)(1) Conduct a Totality of Circumstances Analysis……………………………….………….29

B. Had the Totality of Circumstances Been Considered, and the Good Reason Factor Properly Considered, Rule 60(b)(1) Relief Should Have Been Granted…………………………………..31

Conclusion…………………………………………………………...………33

Certificate of Compliance……………………….……………..……………………35

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alford v. Spillway Spas, LLC*,
2020 U.S. Dist. LEXIS 256057 (M.D. Fla. Aug. 31, 2020)……….…………..33

*Architectural Ingenieria Siglo XXI, Ltd. Liab. Co. v. Dominican Republic*,
788 F.3d 1329 (11th Cir. 2015)……………………………………………12, 30

*Breedlove v. Hill*,
2025 U.S. App. LEXIS 17053 (11th Cir. July 10, 2025)…………..…………..32

*Cannon v. Dist. Of Col.*,
717 F.3d 200 (D.C. Cir. 2013)………………………………...……………..22

*Colclough v. Gwinnett Pub. Schs.*,
734 Fed. Appx. 660 (11th Cir. 2018)…………………………………………7

*Coniglio v. Bank of Am., N.A.*,
638 Fed. Appx. 972 (11th Cir. 2016)…………………………..……………32

*De Gazelle Grp., Inc. v. Tamaz Trading Establishment*,
817 F.3d 747 (11th Cir. 2016)…………………………………………..11, 29

*Facebook, Inc. v. 9 Xiu Network Shenzhen Tech. Co.*,
480 F. Supp. 3d 977 (N.D. Cal. 2020)…………………………..…………26

*Fox Shiver LLC v. Indiv. Corp. Ltd. Liab. Cos., P'ships & Uninc. Assn's*,
2024 U.S. Dist. LEXIS 10861 (S.D.N.Y. Jan. 22, 2024)…………….………20, 25

*Idearc Inc. v. Kravitz Law Grp., P.A.*,
2010 U.S. Dist. LEXIS 54469 (M.D. Fla. May 7, 2010)………...……………33

*In re Worldwide Web Sys., Inc.*,
328 F.3d 1291 (11th Cir. 2003)………………..……………..13-14, 28-29, 31

*Karsten Mfg. Corp. v. Janit Store,*
2018 U.S. Dist. LEXIS 225682 (S.D. Fla. July 26, 2018)……...……………..22

| **Cases** | **Page(s)** |
|---|---|

*Kyjen Co., LLC v. Individuals*,
2023 U.S. Dist. LEXIS 16408 (S.D.N.Y. 2023)…………………..…………26

*Lawson v. Sutton*,
2017 U.S. Dist. LEXIS 789 (M.D. Fla. Jan. 4, 2017)…………………………33

*Luxottica Group S.p.A. v. Partnerships & Unincorporated Associations,*
391 F. Supp. 3d 816 (N.D. Ill. 2019)……………………………..…………26

*Molloy v. Triwin, Inc.*,
2024 U.S. Dist. LEXIS 182634 (C.D. Cal. Aug. 21, 2024)………...……….17

*Mutual Serv. Ins. Co. v. Frit Indus.*,
358 F.3d 1312 (11th Cir. 2004)…………………………...……………22

*Night Owl SP, LLC v. Dongguan Auhua Electronics Co.*,
2019 U.S. Dist. LEXIS 178264 (M.D. Fla. 2019)……………………………..27

*Prem Sales, LLC v. Guangdong Chigo Heating & Ventilation Equip. Co.*,
494 F. Supp. 3d 404 (N.D. Tex. 2020)……………………………..……….26

*Prewitt Enterprises, Inc. v. Org. of Petroleum Exp. Countries*,
353 F.3d 916 (11th Cir. 2003)………………………………………………14

*Safari Programs, Inc. v. CollectA Int'l Ltd.*,
686 Fed. Appx. 737 (11th Cir. 2017)……………………...…………..3, 30-31

*Schluter Sys., L.P. v. Sanven Corp.*,
2023 U.S. Dist. LEXIS 3069 (N.D.N.Y. Jan. 6, 2023)………….……………..26

*SEC v. Lahr*,
2024 U.S. App. LEXIS 18170 (3d Cir. 2024)………….……………………13-14, 23

*Smart Study Co. v. Acuteye-US*,
620 F. Supp. 3d 1382 (S.D.N.Y. 2022)…………………………..………….26

*Tianxiang Yu v. Shanghai Sishun E-Commerce Co.*,
2025 U.S. Dist. LEXIS 128357 (C.D. Cal. July 7, 2025)……………….……….25

**Cases** **Page(s)**

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
486 U.S. 694 (1988)…………………………………………..…………15

*Wang & Gao Family Trust v. TA Partners LLC*,
2025 U.S. Dist. LEXIS 167411 (N.D. Ga. Aug. 28, 2025)….….….…………..25

*Water Splash, Inc. v. Menon*,
581 U.S. 271 (2017)……………………………………….….………..15-16, 28

*Winton v. Walsh*,
829 Fed. Appx. 448 (11th Cir. 2020)…………….……………………….……17

*Xiamen Zhaozhao Trading Co., Ltd. v. Ningbo Jiangbei Shangyu Trading Co., Ltd.*,
2024 U.S. Dist. LEXIS 124368 (N.D. Cal. June 28, 2024)……………………17

*Xianfeng Wang v. Partnerships & Unincorporated Organizations in Schedule A*,
2024 U.S. Dist. LEXIS 191419 (M.D. Fla. Oct. 22, 2024)……..……………..26

**Rules**

Federal Rule of Civil Procedure 4………………………………………………*passim*

Federal Rule of Civil Procedure 60……………………………………………..*passim*

**Other Authorities**

*Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*,
Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638………………………....*passim*

## STATEMENT OF JURISDICTION

The Plaintiffs-Appellees Adidas AG, Adidas International Marketing B.V., and Adidas America, Inc. (collectively "Adidas") alleged that the district court had subject matter jurisdiction under 28 U.S.C. §§1331 and 1338 and 15 U.S.C. §1121 over the federal trademark and copyright infringement claims as well as under 28 U.S.C. §1367 over the state law claims. (Dist. Ct. Dkt. 1 ¶1). Defendants-Appellants Localityi.com and Mediumspots.com (collectively "the Website Owners") do not dispute those jurisdictional bases.

On May 16, 2024, the Clerk entered default against all the entities listed on Schedule A of Adidas's Complaint (Dist. Ct. Dkt. 1). Adidas voluntarily dismissed one of the defendants. (Dist. Ct. Dkts. 30, 32). No other defendant appeared in the case except the Website Owners, who appeared through counsel on June 4, 2024. (Dist. Ct. Dkts. 33, 34).

Despite having entered an appearance through counsel, the district court entered a default judgment and permanent injunction against the Website Owners (as well as against the rest of the defendants that had not appeared) on June 24, 2024 (Dist. Ct. Dkts. 35, 36). Adidas was awarded damages of $2,000,000 against each defendant. (Dist. Ct. Dkt. 36).

On June 30, 2025, the district court denied the Website Owners' motion to vacate the default judgment under Federal Rule of Civil Procedure 60(b) ("Rule

60(b)"). (Dist. Ct. Dkt. 45). This appeal is therefore from a final order disposing of the claims of all parties, given that, out of the many defendants, only the Website Owners appeared in the case; the rest have not appeared or were voluntarily dismissed. The Website Owners filed a timely notice of appeal under Federal Rule of Appellate Procedure 4(a)(1) on July 29, 2025. (Dist. Ct. Dkt. 46).

This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether, because service of process was not effectuated on the Website Owners in accordance with the Hague Convention (*Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 ("Hague Convention" or "Convention")), the district court should have vacated the default judgment pursuant to Federal Rule of Civil Procedure 60(b)(4) because the judgment was void as a matter of law.
2. Whether the attempted service of process on the entities at issue here by email and website publication violates the Hague Convention and thus is not permitted under Federal Rule of Civil Procedure 4(f)(3).
3. Whether the Hague Convention permits service on the Website Owners by U.S. litigants via alternative methods (email and website publication) other than through the target nation's Central Authority where (a) the alternative methods were not

agreed to by the United States and the target nation, and (b) where, for purposes of the China-based entity, those alternative methods are not permitted under China's internal laws, and where (c) China has objected to Convention Article 10, service by "postal channels" which includes email.

4. Whether the district court abused its discretion under binding Eleventh Circuit law, *Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 Fed. Appx. 737 (11th Cir. 2017) (*per curiam*), in refusing to vacate the default judgment under Federal Rule of Civil Procedure 60(b)(1) where the district court ruled only that settlement negotiations did not constitute a good reason for the delay in responding and failed to consider the totality of the circumstances, including meritorious defenses and lack of prejudice to Adidas, and where the district court improperly analyzed the one factor it did consider by analyzing only half of the Website Owners' argument.

## STATEMENT OF THE CASE

### I. Statement of Facts

On November 17, 2023, Adidas filed this action against numerous defendants – including the Website Owners – identified on Schedule "A," seeking an injunction and alleging trademark counterfeiting and infringement under the Lanham Act, false designation of origin under the Lanham Act, common law unfair competition, and common law trademark infringement. (Dist. Ct. Dkt. 1). Adidas moved for an order to seal temporarily Schedule A and the summonses

(Dist. Ct. Dkt. 5), which the district court granted on November 22, 2023. (Dist. Ct. Dkt. 6). The court ordered as follows: "Within seven (7) days of completing service, Plaintiffs must move to unseal Schedule "A" and add all the Defendants as parties through CM/ECF." (*Id.*).

On November 27, 2023, Adidas submitted evidence – including web page captures of defendants' sites (Dist. Ct. Dkt. 8-5) – and moved *ex parte* for entry of a temporary restraining order, preliminary injunction, and order restraining transfer of assets. (Dist. Ct. Dkt. 8).

Also on November 27, 2023, before attempting to serve any of the defendants, Adidas moved *ex parte* under Federal Rule of Civil Procedure 4(f)(3) ("Rule 4(f)(3)") for leave to serve the defendants listed in Schedule A by alternative means, namely by email or posting on a website created by Adidas. (Dist. Ct. Dkt. 9). In support of the motion, Adidas filed the Declaration of attorney Virgilio Gigante, who attested "reasonable cause to suspect" the defendants "may reside and/or operate in China, Vietnam, Canada, or other foreign countries." (Dist. Ct. Dkt. 9-2 ¶7). (*See also* Dist. Ct. Dkt. 9 at 13). In that same Declaration, Gigante declared that he had reviewed the Hague Convention, to which the United States, China, Vietnam, and Canada are signatories. (Dist. Ct. Dkt. 9-2 ¶8). (*See also* Dist. Ct. Dkt. 9 at 13). He added that, while China and Vietnam had objected to service by alternative means set forth in Convention Article 10, including postal channels,

the Convention did not preclude service by email or website posting. (Dist. Ct. Dkt. 9-2 ¶8). Adidas made the same argument in its motion, and contended that, in any event, the Hague Convention did not apply because the physical addresses of the defendants were not known, and Article 1 of the Convention states that it does not apply where the address of the defendant to be served "is not known." (Dist. Ct. Dkt. 9 at 13-16).

In a sealed order, the district court granted Adidas's request to serve the defendants via email and website posting under Rule 4(f)(3). (Dist. Ct. Dkt. 11). That order found that defendants "reside in or operate from China, Vietnam, and Canada," and those three countries plus the United States are signatories to the Hague Convention. (*Id.* at 1-2). Therefore, although the Hague Convention applied, service by email and website posting "are not prohibited by international agreement" because China, Vietnam, and Canada "have not objected to service by email or Internet publication" even though China and Vietnam have objected to alternative means of service, including by postal channels. (*Id.* at 2-3).

The district court also granted in a sealed order Adidas's motion for injunctive relief. (Dist. Ct. Dkt. 12).

Adidas attested in a certificate of service to having served all defendants by

email and website posting at http://servingnotice.com/Da34s6z/index.html[1] on April 23, 2024. (Dist. Ct. Dkts. 17, 25). Defendants' responses were due May 14, 2024, but no defendant filed any by that date. The next day, on May 15, 2024, Adidas moved for Clerk's entry of default (Dist. Ct. Dkt. 28), and the Clerk entered default on May 16, 2024. (Dist. Ct. Dkt. 29). On May 24, 2024, Adidas filed a motion for default judgment (Dist. Ct. Dkt. 31). Adidas also filed a notice of voluntary dismissal of defendant number 1. (Dist. Ct. Dkt. 30; *see also* Dist. Ct. Dkt. 32).

On June 4, 2024, counsel appeared on behalf of the Website Owners. (Dist. Ct. Dkts. 33, 34). No other defendant appeared through counsel.

On June 24, 2024, the district court granted Adidas's motion for default judgment and permanent injunction against all defendants and entered the injunction and final default judgment. (Dist. Ct. Dkts. 35, 36).

On that same day, counsel for the Website Owners began settlement discussions with counsel for Adidas. (Dist. Ct. Dkt. 40-2 ¶2). In phone conversations, Adidas's counsel told Website Owners' counsel that, if the Website Owners were to file a Rule 60(b) motion, settlement discussions likely would cease. (*Id.* ¶¶3-4). Those discussions between counsel continued through October

[1] On September 18, 2025, appellate counsel attempted to access this website. It was not accessible. Undersigned counsel does not know the date on which the website became inaccessible.

31, 2024. (*Id.* ¶5). The Website Owners became concerned that, in the event the parties could not reach a settlement, Adidas would use the delay as a basis to ask the court to deny vacatur of the default judgment. (*Id.* ¶¶6-7).

Accordingly, on November 13, 2024, the Website Owners moved to vacate the default judgment under Rules 60(b)(1) and 60(b)(4). (Dist. Ct. Dkt. 40). Relevant here,[2] the Website Owners argued that the judgment should be vacated under Rule 60(b)(4) as void because of lack of service. Specifically, Rule 4(f)(3) permits service by an alternative method only where it is not prohibited by international agreement. Here, the relevant international agreement, the Hague Convention, did prohibit the requested alternative methods because: (a) those methods were not specified in the comprehensive Hague Convention, the relevant contracting parties had not mutually agreed upon service by email or website publication pursuant to Article 11, and China's internal law provides that service on China-based entities shall proceed via its Central Authority; and (b) China's objection to service by "postal channels" under Article 10 constitutes an objection to service via email. (*Id.* at 7-15). In support of those arguments, they cited several

[2] The Website Owners also argued that the default judgment should be vacated under Rule 60(b)(4) as void for lack of personal jurisdiction (Dist. Ct. Dkt. 40 at 2-7), but they are not pressing that argument on appeal except as it relates to ineffective service of process. *See Colclough v. Gwinnett Pub. Schs.*, 734 Fed. Appx. 660, 662 (11th Cir. 2018) (where service is improper, court lacks jurisdiction and cannot render a default judgment).

on-point authorities from across the nation and submitted official guidance dated March 30, 2023, from the Ministry of Justice of the People's Republic of China confirming that service shall be via Central Authority as well as the scope of China's Article 10 objection. That guidance stated:

> "[A] foreign judicial body or individual cannot directly serve documents to a person within China. Such requests should be submitted through the channels specified by treaties or through diplomatic channels, to the Ministry of Justice or the Ministry of Foreign Affairs, for the People's Court of China to serve on their behalf. When China joined the Hague Convention, it reserved the right under Article 10, which prohibits serving documents by mail within its territory."

(Dist. Ct. Dkt. 40-1 at 4). They also provided declarations regarding their operations in China (localityi.com) and Hong Kong, Special Administrative Region China (mediumspots.com). (Dist. Ct. Dkts. 40-3 and 40-4). The attempted service was therefore not properly effectuated in accordance with the Hague Convention.

Second, they argued that the default judgment should be vacated under Rule 60(b)(1)'s excusable neglect prong. (Dist. Ct. Dkt. 40 at 15-17). Specifically, the delay resulted from reliance on representations by Adidas' counsel that settlement discussions would cease were a Rule 60(b) motion to be filed. Moreover, the Website Owners demonstrated meritorious defenses, including denial of willful

infringement.[3] They also noted that Adidas would suffer no prejudice given the relatively short amount of time that had passed, the fact that Adidas was protected with an injunction, and there had been no spoliation of evidence. (*Id.*).

Adidas opposed. (Dist. Ct. Dkt. 43). Relevant here, Adidas claimed that the Website Owners had been properly served under Rule 4(f)(3) because the Hague Convention did not apply due to lack of a physical address, and even if applicable, the requested service by email and website publication was not prohibited by the Convention. (*Id.* at 8-14). As to excusable neglect, they argued that a general denial of infringement did not constitute a meritorious defense, Adidas would suffer prejudice if the default judgment were vacated due to an accusation of "likely destroyed" evidence, and no good reason for the delay was shown. (*Id.* at 14-19). Adidas did not deny that settlement discussions had taken place, although it characterized them as "*discussions to discuss* settlement and talks about a potential mediation[.]" (*Id.* at 16, emphasis in original). Adidas did not address the Website Owners' argument that Adidas remained protected with injunctive relief.

The Website Owners filed a reply (Dist. Ct. Dkt. 44) arguing that the

---

[3] In Dist. Ct. Dkt. 8-5, Adidas submitted the web pages of all defendants. The web pages attributed to localityi.com are pdf pages 163-183 and the web pages attributed to mediumspots.com are pdf pages 206-228 of that document. Notably, whereas the web pages of the other defendants (*see, e.g.,* pdf pages 13-30) show products expressly using the word "Adidas," the products listed for localityi.com and mediumspots.com do not.

Convention did in fact apply because Adidas failed to undertake, as they were required to do, the necessary diligence to discover physical addresses. (*Id.* at 1-3). Moreover, they argued the Convention does not permit any means of service that is not expressly prohibited, or else Article 11 of the Convention would be superfluous (*id.* at 4-6), and in any event, China's objection to Article 10's "postal channels" constitutes an express objection to service via electronic means. (*Id.* at 6-8). Accordingly, the alternative methods of service pursuant to Rule 4(f)(3) were authorized in error. (*Id.* at 8-10).

Regarding its Rule 60(b)(1) argument, the Website Owners noted that, in addition to denying infringement, invalid service constitutes a "meritorious defense" (*id.* at 11-13), Adidas's arguments regarding prejudice were speculative (*id.* at 13-14), the judge did not allow sufficient time under the Hague Convention prior to issuing a default judgment (*id.* at 14-15), and the reason for the Website Owners' delay was reliance on representations by Adidas' counsel during settlement discussions. (*Id.* at 15).

On July 1, 2025, the district court denied the Rule 60(b) motion finding personal jurisdiction existed, service of process had been effectuated properly, and excusable neglect had not been demonstrated. (Dist. Ct. Dkt. 45).

Regarding service, the court held that, while service by email and website posting are not expressly *permitted* by the Hague Convention, they also are not

*prohibited* by it. (*Id.* at 12-13). Moreover, the district court adhered to the "majority view" to find that, although China objected to service by postal channels in Article 10 of the Convention, China's objection did not preclude service by email or publication. (*Id.* at 13).

Regarding excusable neglect, the district court denied the motion solely on the ground that settlement discussions constituted an insufficient basis to justify the delay. (*Id.* at 14-15). Although Eleventh Circuit law mandates consideration of the totality of the circumstances, the district court did not rule on whether representations by Adidas' counsel made any difference and expressly did "not reach" the arguments "concerning a meritorious defense or prejudice." (*Id.* at 14).

This appeal followed.

## II. Standard of Review

On appeal, the Website Owners ask this Court to review the district court's rulings denying a motion under Rule 60(b)(4) and Rule 60(b)(1). The Court conducts a *de novo* review of the denial of the Rule 60(b)(4) motion to vacate a default judgment as void for lack of service because failure to vacate a void judgment *per se* constitutes an abuse of discretion. *De Gazelle Grp., Inc. v. Tamaz Trading Establishment*, 817 F.3d 747, 748 (11th Cir. 2016).

The Court conducts an abuse-of-discretion review of the denial of the Rule 60(b)(1) motion to set aside a default judgment for excusable neglect. An abuse of

discretion occurs where the district court misapplies the law. *See Architectural Ingenieria Siglo XXI, Ltd. Liab. Co. v. Dominican Republic*, 788 F.3d 1329, 1338 (11th Cir. 2015) (internal citations omitted).

## SUMMARY OF ARGUMENT

**I.** The district court should have granted the Website Owners' Rule 60(b)(4) motion because the default judgment was void for lack of proper service.

**A.** Rule 4(f)(3) permits alternative means only where not prohibited by international agreement. Here, the alternative means at issue – email and website publication – are prohibited by the applicable international agreement, the Hague Convention. The Convention, which is comprehensive, specifies the allowable methods of service and pre-empts any inconsistent methods of service. China requires service via its Central Authority. The United States and China (and Hong Kong, Special Administrative Region China) have not agreed to permit service by email or website publication pursuant to Article 11 of the Convention; under Article 19, China's internal laws do not permit service by email or website publication. Therefore, service on China-based entities must proceed via China's Central Authority. Although express objection to service by email or website publication is not required, China *has* expressly objected to Article 10, service by postal channels, which includes service by electronic means.

**B.** Service on the Website Owners was therefore improper because it

undisputably was not made pursuant to the Hague Convention.

**II.** The district court abused its discretion in denying the Website Owners' Rule 60(b)(1) motion.

**A.** The district court was bound under Eleventh Circuit law to consider the totality of the circumstances but did not do so. Instead, the district court considered only one of the Rule 60(b)(1) excusable neglect factors. The district court's curtailed analysis constitutes an abuse of discretion under *Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 Fed. Appx. 737 (11th Cir. 2017) (*per curiam*).

**B.** Had the district court conducted a proper totality of the circumstances analysis and properly analyzed the relevant factors, it should have granted the Rule 60(b)(1) motion. The Website Owners established all the factors, including, importantly, lack of prejudice and efficient judicial administration. The district court's analysis of the one factor (good reason for the delay) it did consider also constitutes an abuse of discretion because it adjudicated only half of the reason presented by the Website Owners and failed to consider their reliance on representations by Adidas's counsel.

## ARGUMENT

### I. The District Court Should Have Vacated the Default Judgment under Rule 60(b)(4) Because It Was Void for Lack of Proper Service

"Generally, where service of process is insufficient, the court has no power to render judgment and the judgment is void." *Valdez v. Feltman (In re Worldwide*

*Web Sys.)*, 328 F.3d 1291, 1299 (11th Cir. 2003). *Accord SEC v. Lahr*, 2024 U.S. App. LEXIS 18170, at *4 n.8 (3d Cir. 2024). Here, the default judgment was void and should have been vacated because service of process was improper. As explained in detail below, the alternative means authorized by the district court are prohibited by the applicable international agreement, the Hague Convention. Service on the Website Owners was therefore improper because it undisputably was not made via the Central Authorities of the target nation.[4]

### A. The Alternative Means Were Prohibited by International Agreement, the Hague Convention

Rule 4(f)(3) permits service "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3); *Prewitt Enter., Inc. v. Org. of Petroleum Exp. Countries*, 353 F.3d 916, 926 (11th Cir. 2003). Here, the district court properly accepted that the Hague Convention applied in this case to these entities.[5] (Dist. Ct. Dkt. 45 at 11-13). It nonetheless held that the alternative means

[4] Localityi.com declared its headquarters and operations to be in China. (Dist. Ct. Dkt. 40-4 ¶4). Although Mediumspots.com declared its headquarters and operations in Hong Kong, Special Administrative Region China, (Dist. Ct. Dkt. 40-3 ¶4), the district court did not conduct an analysis for Hong Kong separately from China. Our appeal is similarly cabined, although we acknowledge there are differences between Hong Kong and China, and we reference same where applicable.

[5] There is no dispute that the United States, China, and Hong Kong are signatories to the Hague Convention. *See* Hague Conference on Private International Law, *Status Table: Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last visited

requested – email and website posting – were not prohibited by the Hague Convention. The district court reasoned that a signatory nation's objection under the Hague Convention is limited only to the means expressly stated in the objection, and because China has not expressly objected to service by email or website posting, a court does not violate Rule 4(f)(3) by authorizing those alternative means. That holding constitutes legal error for two reasons: *first*, the Hague Convention is a comprehensive document that prohibits all methods of service not expressly permitted, and *second*, China objected to service by "postal channels" under Article 10 of the Convention, and "postal channels" includes email.

### 1. The Hague Convention Is Comprehensive, Specifies the Approved Methods of Service, and Pre-Empts Inconsistent Methods of Service

Service under the Hague Convention is mandatory "in all cases to which it applies." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988). The Hague Convention is an international treaty "which seeks to simplify, standardize, and generally improve the process of serving documents abroad." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 271 (2017). It "specifies certain approved methods of service and pre-empts inconsistent methods of service

---

Sept. 5, 2025).

wherever it applies." *Id*. at 273 (internal citations and marks omitted).

The Convention's pre-emptive nature is reflected in its comprehensive structure. The Convention designates specific methods of service that all Contracting States must accept (Arts. 2, 5), permits additional methods to which States may affirmatively consent or object (Arts. 8–11), and allows Contracting States to authorize further methods of service within their own territory under domestic law (Art. 19).

Article 2 provides:

> Each Contracting State shall designate a Central Authority which will undertake to receive requests for service coming from other Contracting States and to proceed in conformity with the provisions of Articles 3 to 6. Each State shall organise the Central Authority in conformity with its own law.

Article 2 therefore *requires* each signatory to designate a Central Authority, which China (and Hong Kong) have done. *See* https://www.hcch.net/index.cfm?oldlang=es&act=authorities.details&aid=243 (last visited October 6, 2025). https://www.hcch.net/en/states/authorities/details3/?aid=393 (last visited October 8, 2025).

Article 5 provides:

> The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, either –
>
> (a) by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its

territory, or

(b) by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed.

Under Article 5, it is up to the Central Authority of the target nation – *not* a U.S. district court – to determine whether the method requested complies with its own internal laws. *See Winton v. Walsh*, 829 Fed. Appx. 448, 451 (11th Cir. 2020) ("Once a Central Authority receives a request, it should serve documents 'by a method prescribed by its internal laws'") (cleaned up and citations omitted). China regularly and successfully serves documents on China-based persons and entities under Article 5. *See., e.g. Molloy v. Triwin, Inc.*, 2024 U.S. Dist. LEXIS 182634 (C.D. Cal. Aug. 21, 2024) (finding proper service of process under Art. 5 of the Convention on China-based defendant); *Xiamen Zhaozhao Trading Co., Ltd. v. Ningbo Jiangbei Shangyu Trading Co., Ltd.*, 2024 U.S. Dist. LEXIS 124368 (N.D. Cal. June 28, 2024) (same).

Article 10 provides:

Provided the State of destination does not object, the present Convention shall not interfere with –

a) the freedom to send judicial documents, by postal channels, directly to persons abroad,

b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,

c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

Article 10 discusses alternative means of service outside of the Central Authority. Specifically enumerated as one of three methods of service without use of the Central Authority is the "freedom to send judicial documents, by postal channels, directly to persons abroad." Article 10(a). It is undisputed that China has objected to Article 10(a). *See* https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/China.html

Article 11 provides:

> The present Convention shall not prevent two or more Contracting States from agreeing to permit, for the purpose of service of judicial documents, channels of transmission other than those provided for in the preceding Articles and, in particular, direct communication between their respective authorities.

Thus, under Article 11, any two state members can agree to methods of service not otherwise specified in the Convention. The United States and China have not agreed to permit service by email or website publication. Nor have Hong Kong and the United States.

Article 19 provides:

> To the extent that the internal law of a Contracting State permits methods of transmission, other than those provided for in the preceding Articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions.

This Article explicitly states that any Contracting State may permit any method or means of service within their own countries. Thus, any signatory that

*wants to* permit service by e-mail or publication within that country is free to adopt "internal law" which permits those methods of transmission.

In short, the Hague Convention comprehensively addresses the methods of international service with respect to signatory countries, permits contracting parties to mutually agree to other methods, and respects the internal laws of sovereign member states. These broad and expansive terms are intended to standardize and regularize service of process abroad, pre-empting other methods of service.

The Hague Convention does not expressly mention service by email and website publication because those two technological advancements did not exist when the treaty was concluded on November 15, 1965. The Convention is not, however, a stale document. As noted *supra*, it makes clear in Articles 11 and 19 that Contracting States may agree to allow unspecified methods, and a Contracting State may adopt "internal law" permitting alternative means of service within its own territory. China has *not*, however, adopted email or website publication as acceptable methods of service under its internal laws, nor has it (or Hong Kong) agreed with the United States to permit those methods of service on China-based entities. The only method China allows today is service via its Central Authority. That China has not specified other methods besides the Central Authority renders those other methods prohibited. As one court put it:

> Articles 11 and 19 provide ready tools to permit countries to expressly permit service by email. And those articles would be largely superfluous if

> litigants could serve a party in another country merely by selecting a method that is not expressly listed in the Hague Convention—there would be no need for articles that permit countries to agree to other methods of service, or to legislate to affirmatively authorize other methods of services.

*Fox Shiver LLC v. Indiv. Corp. Ltd. Liab. Cos., P'ships & Uninc. Assn's Identified on Sch. A*, 2024 U.S. Dist. LEXIS 10861, at *3-4 (S.D.N.Y. Jan. 22, 2024) (internal citations omitted).

#### 2. China Has Not Agreed with the United States to Permit Service by Email or Website Publication and Its Internal Law Mandates Service Via Its Central Authority; those Courts that Have Nonetheless Permitted Alternative Means to Serve China-Based Entities – Including the District Court Below – Are Wrong

To reiterate, China has *not* adopted as internal law the right to serve persons directly with process by mail, email, or website publication in its own territory (Article 19) and China has not agreed with the United States to permit website publication or email. (Article 11). In fact, the circumstances are the opposite.

The Website Owners informed the district court that official guidance dated March 30, 2023, from the Ministry of Justice of the People's Republic of China, states:

> [A] foreign judicial body or individual cannot directly serve documents to a person within China. Such requests should be submitted through the channels specified by treaties or through diplomatic channels, to the Ministry of Justice or the Ministry of Foreign Affairs, for the People's Court of China to serve on their behalf. When China joined the Hague Convention, it reserved the right under Article 10, which prohibits serving documents by mail within its territory.

(Dist. Ct. Dkt. 40-1 at 4). The status of China's internal law and position on service was not challenged by Adidas.

Since the district court's decision, China has issued updated guidance emphasizing its position and clarifying that its objection to Article 10 extends to electronic service. On March 21, 2025, China issued guidance reminding those who need to serve documents in China to proceed through the Central Authority and not directly by mail, courier, email, and other similar methods that do not involve the Central Authority:

> **Q1. May foreign judicial authorities or individuals directly serve documents on parties located in China via international mail, fax, email, etc.?**
> **Answer: No.** Pursuant to China's Civil Procedure Law, foreign judicial authorities or individuals may not directly serve documents on parties located in China. Instead, they must submit a request to the Ministry of Justice or the Ministry of Foreign Affairs through the channels provided under applicable treaties or diplomatic channels. The documents will then be served by the People's Court of China. When China acceded to the Hague Convention, it made a reservation to Article 10, objecting to service in China by postal channels. **Service by mail includes traditional mail, courier services, email, fax, and other methods**.

https://www.moj.gov.cn/pub/sfbgw/jgsz/jgszzsdw/zsdwsfxzjlzx/sfxzjlzxxwdt/202503/t20250324_516204.html

The Court may take judicial notice of this official authoritative guidance on the official website of a foreign nation's Ministry of Justice. *See Mutual Serv. Ins. Co. v. Frit Indus.*, 358 F.3d 1312, 1231 (11th Cir. 2004) (courts are permitted to take judicial notice of authoritative statements of foreign law); *Cannon v. Dist. Of*

*Col.*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (citing Federal Rule of Evidence 201 and taking judicial notice of government website). For the Court's convenience, it and the translation are included in the Addendum to this brief.

Thus, China has repeatedly and unequivocally stated that service other than via the Central Authority within its territory is unlawful.

Here, the district court erred by failing to (a) acknowledge the 2023 guidance, let alone consider it, and (b) grapple with the *other* view espoused by many U.S. courts (even before the 2023 guidance) that authorization of alternative means of service in China *does* violate the Hague Convention. The district court cited three cases[6] in support of its finding that the alternative means did not trample on China's insistence that service through its Central Authority is the *only* acceptable means of service and its objection to Article 10. Those cases, however, pre-date the 2023 guidance issued by China's Ministry of Justice and subscribe to a view of the law that we are urging this Court to find is erroneous.[7]

Although to date no Court of Appeals has directly resolved this legal question regarding China, the *Lahr* case, 2024 U.S. App. LEXIS 18170, decided

---

[6] And *Karsten Mfg. Corp. v. Janit Store*, 2018 U.S. Dist. LEXIS 225682 (S.D. Fla. July 26, 2018), was before the court *ex parte* and did not have the benefit of adversarial briefing on the key point.

[7] They also therefore pre-date the recent guidance of which this Court may take judicial notice.

just last year by the Third Circuit, provides persuasive relevant authority on the operation of the Hague Convention generally. In that case, the Securities Exchange Commission ("SEC") argued that email service was permissible on a Swiss defendant. The Third Circuit held it was not. The Third Circuit noted: "the Convention prescribes the means for service abroad. Thus, for email service to be permitted in Switzerland, it must be authorized by the Convention's terms." *Id.* at *9. The Third Circuit found email service *not* authorized by the Convention's terms because: "(1) the Convention does not expressly provide for service by email, (2) there is no evidence that the United States and Switzerland have consented to email service under Article 11, and (3) email service under Swiss law is permitted only if the served party consents, and there is no evidence that Megas consented." *Id.* at *9-10.

Here too. First, as in *Lahr*, there is no dispute that the Convention does not expressly provide for service by email. Second, also as in *Lahr*, there is no evidence the United States and China (or Hong Kong)[8] have consented to email service under Article 11. Third, under Chinese law – which differs from Swiss law

[8] There is no evidence that the United States and Hong Kong have consented to email or website publication service under Article 11 either. The record on the law in Hong Kong was not developed below, but the State Department website shows that Hong Kong prefers service via its Central Authority. https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/HongKong.html (last accessed October 8, 2025).

– email service is not permitted; service must be done via Central Authority.

We urge this Court to follow the Third Circuit's lead and resolve the issue by finding that: (1) the Convention does not expressly provide for service by email; (2) there is no evidence that the United States and China (and Hong Kong) have consented to email or website publication service under Article 11; and (3) email and website publication service under Chinese law is not permitted; rather service must be made via China's Central Authority. This conclusion stems from the fact that email and website publication are not specified in the Convention. Absent express permission of those methods by the Contracting State under Articles 11 or 19, they are prohibited, as *Lahr* concluded. Moreover, although *Lahr* did not address Chinese internal law, the Website Owners provided authoritative statements of Chinese internal law, which does not permit service via any means other than the Central Authority.

Several district courts have so found. For example, in *Wang & Gao Family Trust v. TA Partners LLC*, 2025 U.S. Dist. LEXIS 167411, (N.D. Ga. Aug. 28, 2025), the court found that the Convention did apply and found that the requested alternative methods (email or through local counsel) were not among the methods specifically authorized by the Convention or China and thus violated the Convention. Accordingly, it denied the motion for alternative service. *Id.* at *16. Notably, the court added: "A number of courts have independently construed

China's objection to service by postal channels as extending to service by email….While this reasoning appears persuasive, the Court need not reach that same conclusion having found that the Convention nonetheless precludes service by email." *Id.* n.4. *Tianxiang Yu v. Shanghai Sishun E-Commerce Co.*, 2025 U.S. Dist. LEXIS 128357, at *7 (C.D. Cal. July 7, 2025), and *Fox Shiver,* 2024 U.S. Dist. LEXIS 10861, at *3-5, are among the many courts to have ruled the same, and in our view, correctly.

### 3. In Addition, China Has Expressed Objected to Article 10's Service by Postal Channels, which Includes Via Electronic Means

Even if an express objection were required (it is not), there is no dispute that China expressly objected to Article 10 service by postal channels. As described *supra*, China has made clear its position that "postal channels" includes email and other similar methods.

Below, the Website Owners cited both to cases that (a) found – like *Wang & Gao*, *Tianxiang Yu*, and *Fox Shiver* – that the Convention precluded service in China by any means other than via the Central Authority because other methods were not agreed to under Article 11 or permitted under internal law under Article 19, and (b) also relied upon China's objection to service by "postal channels" under Article 10 as extending to service by email. *See* Dist. Ct. Dkt. 40 at 12-13, citing *inter alia Kyjen Co., LLC v. Individuals*, 2023 U.S. Dist. LEXIS 16408, at

*6–7 (S.D.N.Y. 2023); *Schluter Sys., L.P. v. Sanven Corp.*, 2023 U.S. Dist. LEXIS 3069, at *19 (N.D.N.Y. Jan. 6, 2023); *Smart Study Co. v. Acuteye-US*, 620 F. Supp. 3d 1382, 1392 (S.D.N.Y. 2022); *Facebook, Inc. v. 9 Xiu Network Shenzhen Tech. Co.*, 480 F. Supp. 3d 977, 987 (N.D. Cal. 2020). *See also Prem Sales, LLC v. Guangdong Chigo Heating & Ventilation Equip. Co.*, 494 F. Supp. 3d 404, 407 (N.D. Tex. 2020) (finding that "email service is not permitted under the Convention" because China objected to service via postal channels in Article 10); *Luxottica Group S.p.A. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 391 F. Supp. 3d 816, 827 (N.D. Ill. 2019) (same).

Courts within this Circuit have ruled to the same effect. *See, e.g., Xianfeng Wang v. Partnerships & Unincorporated Organizations in Schedule A*, 2024 U.S. Dist. LEXIS 191419, at *8 (M.D. Fla. Oct. 22, 2024) ("In short, service by email upon the China-based Defendants is prohibited by the Hague Convention. Thus, email service is not proper here under Rule 4(f)"); *Night Owl SP, LLC v. Dongguan Auhua Electronics Co.*, 2019 U.S. Dist. LEXIS 178264, at *4 (M.D. Fla. 2019) (email service "improper" under the Hague Convention).

Although the Website Owners cited several of these authorities below and placed China's 2023 guidance on the issue on the record, the district court did not grapple with the authorities or China's own statements on its own law at all. Had it done so, it should have vacated the default judgment as void based also on

China's express objection to Article 10 service by "postal channels," which includes electronic means.

### 4. Reciprocity and Logic Add Further Support to the View Urged by the Website Owners

The view espoused by *Lahr* and the several district court decisions cited herein is further supported by notions of reciprocity and logic.

It goes without saying that, where the U.S. Federal Rules of Civil Procedure authorize a method of service in the United States, that method also is valid for foreign parties seeking to serve U.S. parties under the Hague Convention. But the Convention does not allow one country to unilaterally dictate what methods of service are valid in another signatory state. To put the point concretely: a Chinese court could not unilaterally declare that service of process via Tik Tok on a U.S. party is valid, because such service would conflict with the Federal Rules of Civil Procedure. Similarly, and given concerns of reciprocity and sovereignty, a U.S. court may not impose service by email or website publication in a target nation absent proof that such service comports with that nation's internal laws or proof th the target nation and the United States agreed to same.

Were it otherwise, the simplification, standardization, and efficiency sought by the adoption of the Hague Convention – as well as sovereignty of member states – would be threatened.

In addition, nations' objections to Article 10 ought to be respected, as the

United States has acknowledged previously. *See Water Splash*, 581 U.S. at 282 n.5 (noting that the Department of State posted on its website as follows: "[s]ervice by registered . . . mail . . . is an option in many countries in the world," but that it "should . . . not be used in the countries party to the Hague Service Convention that objected to the method described in Article 10(a) (postal channels)").

### B. It Is Undisputed that the Website Owners Were Not Served through the Central Authority; Hence, the Default Judgment is Void and this Court Should Vacate It

For the reasons set forth *supra*, the district court's authorization of service by email and website publication pursuant to Rule 4(f)(3) was error. Assuming this Court agrees, it is undisputed that the Website Owners were not served in accordance with the Hague Convention via Central Authority and accordingly the default judgment is void for lack of service. *Valdez v. Feltman (In re Worldwide Web Sys.)*, 328 F.3d at 1299 ("where service of process is insufficient, the court has no power to render judgment and the judgment is void"); *De Gazelle Grp.*, 817 F.3d at 748 (failure to vacate a void judgment *per se* constitutes an abuse of discretion).

This Court therefore ought to: (a) reverse the district court's decision to deny the Rule 60(b)(4) motion, (b) vacate the default judgment, and (c) remand with instructions to order service proceed in accordance with the Hague Convention.

## II. The District Court Abused Its Discretion in Finding No Excusable Neglect under Rule 60(b)(1) Because It Failed to Conduct a Totality of Circumstances Analysis and Failed to Properly Evaluate the One Factor It Did Consider

Even if – despite our argument to the contrary – service of process is deemed to have been properly effectuated on the Website Owners, this Court ought to vacate the default judgment because the district court abused its discretion in denying the Website Owners' Rule 60(b)(1) motion and failing to adjudicate this case on the merits.

### A. The Eleventh Circuit Mandates that Courts Considering Excusable Neglect Under Rule 60(b)(1) Conduct a Totality of Circumstances Analysis

Without question, there is a strong policy in favor of adjudicating cases on the merits, and therefore this Court views "defaults with disfavor." *Valdez v. Feltman (In re Worldwide Sys.)*, 328 F.3d at 1295. One mechanism to undo a default judgment to permit a decision on the merits is Rule 60(b)(1), which provides that a court may relieve a party from a final judgment due to "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). "[W]here denial of relief precludes examination of the full merits of the cause, even a slight abuse may justify reversal." *Architectural Ingenieria Siglo XXI, Ltd. Liab. Co. v. Dominican Rep.*, 788 F.3d 1329, 1343 (11th Cir. 2015).

This Court has long held that, to set aside a default judgment under Rule 60(b)(1), a defendant must demonstrate: "(1) it had a meritorious defense that

might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply to the complaint." *Id.* at 1332.

The Court has cautioned, however, that lower courts may not decide matters based on consideration of just one of those three factors. Rather, "the determination of what constitutes excusable neglect is an equitable one, taking into account the totality of the circumstances surrounding the party's omission." *Safari Programs*, 686 Fed. Appx. at 743. Thus, a court abuses its discretion where, as here, the district court looks only at the "good reason" factor to make its decision.

*Safari* is determinative of this case. In *Safari*, the district court found the defendant's reason for the four-month delay in responding was not excusable but gave no consideration to the other Rule 60(b)(1) considerations, including length of delay, lack of prejudice, and meritorious defenses. *Id.* at 742. This failure, it held, was error. *Id.* at 744. In addition, the district court was found to have erred by failing to properly evaluate the factors it did consider. *Id.*

Here, too. Below, the district court intentionally stopped its analysis at the "good reason" factor and expressly did "not reach" the other factors. (Dist. Ct. Dkt. 45 at 14). Under Eleventh Circuit law, such failure to consider the totality of the circumstances constitutes an abuse of discretion.

Notably, in the totality of circumstances analysis, the absence of prejudice and the interest of efficient judicial administration are given primary importance. *Valdez v. Feltman (In re Worldwide Sys.),* 328 F.3d at 1297. Those factors were not considered by the district court at all.

### B. Had the Totality of Circumstances Been Considered, and the Good Reason Factor Properly Considered, Rule 60(b)(1) Relief Should Have Been Granted

Under a proper totality of the circumstances analysis, the Website Owners should have prevailed.

The Website Owners established that a trial on the merits is preferred[9] and absence of prejudice. First, Adidas did not dispute that it was protected by the court's injunction. Second, Adidas's claim regarding spoilation of evidence was disingenuous given the fact Adidas had already captured and supplied its evidence of all defendants' web pages (including the Website Owners' pages) in support of its motion for injunctive relief. (Dist. Ct. Dkt. 8-5). To the extent any spoliation thereafter may have occurred, it could be dealt with in the usual manner under

---

[9] One reason, among many, that adjudication on the merits is necessary is that, even if Adidas prevails in establishing infringing conduct, the Website Owners would challenge an award of the $2,000,000 statutory maximum. The maximum may be imposed where there is willful infringement, and "willfulness may be inferred from a defendant's default." (Dist. Ct. Dkt. 31 at 15). But here, if the default is considered excusable neglect, the Website Owners should have an opportunity to establish that any infringement was not willful.

Federal Rule of Evidence 37(e). *See, e.g., Breedlove v. Hill*, 2025 U.S. App. LEXIS 17053, at*3-5 (11th Cir. July 10, 2025).

Moreover, the time between the default judgment (June 2024) and the motion (early November 2024) was mere months and simply delay "is insufficient for prejudice." *Coniglio v. Bank of Am., N.A.,* 638 Fed. Appx. 972, 975 (11th Cir. 2016). In fact, under the Hague Convention – which the district court found applicable – default judgment may not be entered before six months have passed. *See* Convention, Art. 15 (default judgment may be entered if *inter alia* "a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document").

As for the one factor the district court *did* consider, it failed to properly evaluate it because it considered only half of the reason given by the Website Owners. The Website Owners argued that they were delayed in responding by a few months because: (1) the parties were engaged in settlement discussions, and (2) they relied in good faith on representations by Adidas' counsel that the filing of a motion seeking to undo the default judgment would cause settlement discussions to cease, but took late steps to protect their interests out of an abundance of caution. (Dist. Ct. Dkt. 40-2 ¶¶2-7). The district court ruled, however, only that "settlement negotiations between the parties" was "insufficient to establish good cause for the delay" (Dist. Ct. Dkt. 45 at 14). The district court failed to consider

the second half of the Website Owners' argument – namely, reasonable reliance on representations of Adidas' counsel that settlement discussions would end upon the filing of a Rule 60(b) motion. This was error. *See Lawson v. Sutton*, 2017 U.S. Dist. LEXIS 789, at *3 (M.D. Fla. Jan. 4, 2017) (granting defendants' motion to set aside default in light of "ongoing good faith efforts at settlement, during an early stage" of the proceedings together with counsel's "oral agreement not to oppose an extension of time if settlement was not consummated"); *Idearc Inc. v. Kravitz Law Grp., P.A.,* 2010 U.S. Dist. LEXIS 54469, at *6 (M.D. Fla. May 7, 2010) (holding that good cause existed because the parties were "actively engaged in settlement negotiations for several months" and that there was an "implicit agreement between the parties that the litigation would proceed if settlement negotiations broke down"). *Accord Alford v. Spillway Spas, LLC*, 2020 U.S. Dist. LEXIS 256057, at *5 (M.D. Fla. Aug. 31, 2020).

In sum, under *Safari*, the district court abused its discretion by failing to consider the totality of the circumstances applicable in a Rule 60(b)(1) motion and by failing properly to evaluate the one factor it did consider. Accordingly, the order should be reversed and the matter remanded with instructions to consider *all* the Rule 60(b)(1) factors and to evaluate them properly.

## CONCLUSION

The Website Owners respectfully request that this Court: (1) reverse the

district court's denial of their motion for relief under Federal Rule of Civil Procedure 60(b)(4); (2) vacate the default judgment entered below as void for lack of proper service of process; and (3) remand with instructions to serve the Website Owners in accordance with the Hague Convention. Even if service is deemed to have been properly effectuated, the Websites Owners respectfully request that this Court: (1) reverse the district court's denial of their motion for relief under Federal Rule of Civil Procedure 60(b)(1), due to abuse of discretion; (2) vacate the default judgment; and (3) remand for adjudication on the merits.

Respectfully submitted,

/s/ Laina C. Lopez
Laina C. Lopez
BERLINER CORCORAN & ROWE LLP
1101 17th Street NW, Suite 1100
Washington, D.C. 20036
(202) 293-9096 (phone)
(202) 293-9075 (fax)
llopez@bcrlaw.com

*Counsel of Record for Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) as the brief contains 8,012 words, excluding those parts exempted by 11th Cir. Local R. 32-4.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) as this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

Date: October 10, 2025

*/s/ Laina C. Lopez*
Laina C. Lopez
*Attorney for Appellants*

## CERTIFICATE OF SERVICE

I certify that on this 10th day of October, 2025, I caused this Opening Brief of Appellants to be filed electronically with the Clerk of the Court using CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

/s/ Laina C. Lopez
Laina C. Lopez

# ADDENDUM

# USCS Fed Rules Civ Proc R 4, Part 1 of 4

Current through changes received through September 22, 2025.

***USCS Federal Rules Annotated* > *Federal Rules of Civil Procedure* > *Title II. Commencing an Action; Service of Process, Pleadings, Motions, and Orders***

## Rule 4. Summons

**(a) Contents; Amendments.**

**(1)** *Contents.* A summons must:

**(A)** name the court and the parties;

**(B)** be directed to the defendant;

**(C)** state the name and address of the plaintiff's attorney or—if unrepresented—of the plaintiff;

**(D)** state the time within which the defendant must appear and defend;

**(E)** notify the defendant that a failure to appear and defend will result in a default judgment against the defendant for the relief demanded in the complaint;

**(F)** be signed by the clerk; and

**(G)** bear the court's seal.

**(2)** *Amendments.* The court may permit a summons to be amended.

**(b) Issuance.** On or after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal. If the summons is properly completed, the clerk must sign, seal, and issue it to the plaintiff for service on the defendant. A summons—or a copy of a summons that is addressed to multiple defendants—must be issued for each defendant to be served.

**(c) Service.**

**(1)** *In General.* A summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service.

**(2)** *By Whom.* Any person who is at least 18 years old and not a party may serve a summons and complaint.

**(3)** *By a Marshal or Someone Specially Appointed.* At the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court. The court must so order if the plaintiff is authorized to proceed in forma pauperis under *28 U.S.C. § 1915* or as a seaman under *28 U.S.C. § 1916*.

**(d) Waiving Service.**

**(1)** *Requesting a Waiver.* An individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h) has a duty to avoid unnecessary expenses of serving the summons.

The plaintiff may notify such a defendant that an action has been commenced and request that the defendant waive service of a summons. The notice and request must:

**(A)** be in writing and be addressed:

**(i)** to the individual defendant; or

**(ii)** for a defendant subject to service under Rule 4(h), to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process;

**(B)** name the court where the complaint was filed;

**(C)** be accompanied by a copy of the complaint, two copies of the waiver form appended to this Rule 4, and a prepaid means for returning the form;

**(D)** inform the defendant, using the form appended to the Rule 4, of the consequences of waiving and not waiving service;

**(E)** state the date when the request is sent;

**(F)** give the defendant a reasonable time of at least 30 days after the request was sent—or at least 60 days if sent to the defendant outside any judicial district of the United States—to return the waiver; and

**(G)** be sent by first-class mail or other reliable means.

**(2)** *Failure to Waive.* If a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the court must impose on the defendant:

**(A)** the expenses later incurred in making service; and

**(B)** the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses.

**(3)** *Time to Answer After a Waiver.* A defendant who, before being served with process, timely returns a waiver need not serve an answer to the complaint until 60 days after the request was sent—or until 90 days after it was sent to the defendant outside any judicial district of the United States.

**(4)** *Results of Filing a Waiver.* When the plaintiff files a waiver, proof of service is not required and these rules apply as if a summons and complaint had been served at the time of filing the waiver.

**(5)** *Jurisdiction and Venue Not Waived.* Waiving service of a summons does not waive any objection to personal jurisdiction or to venue.

**(e) Serving an Individual Within a Judicial District of the United States.** Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:

**(1)** following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

**(2)** doing any of the following:

**(A)** delivering a copy of the summons and of the complaint to the individual personally;

**(B)** leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

**(C)** delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

**(f) Serving an Individual in a Foreign Country.** Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:

**(1)** by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

**(2)** if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

**(A)** as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

**(B)** as the foreign authority directs in response to a letter rogatory or letter of request; or

**(C)** unless prohibited by the foreign country's law, by:

**(i)** delivering a copy of the summons and of the complaint to the individual personally; or

**(ii)** using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

**(3)** by other means not prohibited by international agreement, as the court orders.

**(g) Serving a Minor or an Incompetent Person.** A minor or an incompetent person in a judicial district of the United States must be served by following state law for serving a summons or like process on such a defendant in an action brought in the courts of general jurisdiction of the state where service is made. A minor or an incompetent person who is not within any judicial district of the United States must be served in the manner prescribed by Rule 4(f)(2)(A), (f)(2)(B), or (f)(3).

**(h) Serving a Corporation, Partnership, or Association.** Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:

**(1)** in a judicial district of the United States:

**(A)** in the manner prescribed by Rule 4(e)(1) for serving an individual; or

**(B)** by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant; or

**(2)** at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).

**(i) Serving the United States and Its Agencies, Corporations, Officers, or Employees.**

**(1)** *United States.* To serve the United States, a party must:

**(A)**

**(i)** deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought—or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk—or

**(ii)** send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;

**(B)** send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and

**(C)** if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

**(2)** *Agency; Corporation; Officer or Employee Sued in an Official Capacity.* To serve a United States agency or corporation, or a United States officer or employee sued only in an official capacity, a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer, or employee.

**(3)** *Officer or Employee Sued Individually.* To serve a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g).

**(4)** *Extending Time.* The court must allow a party a reasonable time to cure its failure to:

**(A)** serve a person required to be served under Rule 4(i)(2), if the party has served either the United States attorney or the Attorney General of the United States; or

**(B)** serve the United States under Rule 4(i)(3), if the party has served the United States officer or employee.

**(j) Serving a Foreign, State, or Local Government.**

**(1)** *Foreign State.* A foreign state or its political subdivision, agency, or instrumentality must be served in accordance with *28 U.S.C. § 1608*.

**(2)** *State or Local Government.* A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by:

**(A)** delivering a copy of the summons and of the complaint to its chief executive officer; or

**(B)** serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.

**(k) Territorial Limits of Effective Service.**

**(1)** *In General.* Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant:

**(A)** who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located;

**(B)** who is a party joined under Rule 14 or 19 and is served within a judicial district of the United States and not more than 100 miles from where the summons was issued; or

**(C)** when authorized by a federal statute.

**(2)** *Federal Claim Outside State-Court Jurisdiction.* For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:

**(A)** the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and

**(B)** exercising jurisdiction is consistent with the United States Constitution and laws.

**(l) Proving Service.**

**(1)** *Affidavit Required.* Unless service is waived, proof of service must be made to the court. Except for service by a United States marshal or deputy marshal, proof must be by the server's affidavit.

**(2)** *Service Outside the United States.* Service not within any judicial district of the United States must be proved as follows:

**(A)** if made under Rule 4(f)(1), as provided in the applicable treaty or convention; or

**(B)** if made under Rule 4(f)(2) or (f)(3), by a receipt signed by the addressee, or by other evidence satisfying the court that the summons and complaint were delivered to the addressee.

**(3)** *Validity of Service; Amending Proof.* Failure to prove service does not affect the validity of service. The court may permit proof of service to be amended.

**(m) Time Limit for Service.** If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1), or to service of a notice under Rule 71.1(d)(3)(A).

**(n) Asserting Jurisdiction over Property or Assets.**

**(1)** *Federal Law.* The court may assert jurisdiction over property if authorized by a federal statute. Notice to claimants of the property must be given as provided in the statute or by serving a summons under this rule.

**(2)** *State Law.* On a showing that personal jurisdiction over a defendant cannot be obtained in the district where the action is brought by reasonable efforts to serve a summons under this rule, the court may assert jurisdiction over the defendant's assets found in the district. Jurisdiction is acquired by seizing the assets under the circumstances and in the manner provided by state law in that district.

**Rule 4 Notice of a Lawsuit and Request to Waive Service of Summons.**

(Caption)

To *(name the defendant or — if the defendant is a corporation, partnership, or association — name an officer or agent authorized to receive service)*:

**Why are you getting this?**

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver. To avoid these expenses, you must return the signed waiver within *(give at least 30 days or at least 60 days if the defendant is outside any judicial district of the United States)* from the date shown below, which is the date this notice was sent. Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

**What happens next?**

If you return the signed waiver, I will file it with the court. The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you. And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date ____________________

__________________________________________
(Signature of the attorney
or unrepresented party)

__________________________________________
(Printed name)

__________________________________________
(Address)

__________________________________________
(E-mail address)

__________________________________________
(Telephone number)

**Rule 4 Waiver of the Service of Summons.**

(Caption)

To *(name the plaintiff's attorney or the unrepresented plaintiff)*:

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from ____, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date ____________________

__________________________________________
(Signature of the attorney
or unrepresented party)

__________________________________________
(Printed name)

__________________________________________
(Address)

__________________________________________
(E-mail address)

__________________________________________
(Telephone number)

(Attach the following)

**Duty to Avoid Unnecessary Expenses of Serving a Summons**

*Rule 4 of the Federal Rules of Civil Procedure*requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

“Good cause” does not include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

## History

As amended Jan. 21, 1963, eff. July 1, 1963; Feb. 28, 1966, eff. July 1, 1966; April 29, 1980, eff. Aug. 1, 1980; Jan. 12, 1983, *P. L. 97-462*, § 2, *96 Stat. 2527*, eff. Feb. 26, 1983; March 2, 1987, eff. Aug. 1, 1987; April 22, 1993, eff. Dec. 1, 1993; April 17, 2000, eff. Dec. 1, 2000; April 30, 2007, eff. Dec. 1, 2007; April 29, 2015, eff. Dec. 1, 2015; April 28, 2016, eff. Dec. 1, 2016; April 27, 2017, eff. Dec. 1, 2017.

USCS Federal Rules Annotated
Copyright © 2025 All rights reserved.

---

**End of Document**

# USCS Fed Rules Civ Proc R 60, Part 1 of 5

Current through changes received through September 22, 2025.

***USCS Federal Rules Annotated* > *Federal Rules of Civil Procedure* > *Title VII. Judgment***

## Rule 60. Relief from a Judgment or Order

**(a) Corrections Based on Clerical Mistakes; Oversights and Omissions.** The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.

**(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

**(1)** mistake, inadvertence, surprise, or excusable neglect;

**(2)** newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

**(3)** fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

**(4)** the judgment is void;

**(5)** the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

**(6)** any other reason that justifies relief.

**(c) Timing and Effect of the Motion.**

**(1)** *Timing.* A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

**(2)** *Effect on Finality.* The motion does not affect the judgment's finality or suspend its operation.

**(d) Other Powers to Grant Relief.** This rule does not limit a court's power to:

**(1)** entertain an independent action to relieve a party from a judgment, order, or proceeding;

**(2)** grant relief under *28 U.S.C. § 1655* to a defendant who was not personally notified of the action; or

**(3)** set aside a judgment for fraud on the court.

**(e) Bills and Writs Abolished.** The following are abolished: bills of review, bills in the nature of bills of review, and writs of coram nobis, coram vobis, and audita querela.

## History

Amended Dec. 27, 1946, eff. March 19, 1948; Dec. 29, 1948, eff. Oct. 20, 1949; March 2, 1987, eff. Aug. 1, 1987; April 30, 2007, eff. Dec. 1, 2007.

USCS Federal Rules Annotated
Copyright © 2025 All rights reserved.

End of Document

# 国际民商事司法协助常见问题解答

来源：司法部官网　发布时间：2025-03-21 19:44



中国与外国根据《海牙送达公约》《海牙取证公约》以及目前缔结生效的38项中外双边司法协助条约（以下统称“条约”）规定途径，以及外交途径开展民商事司法协助，主要内容包括司法文书送达、调查取证和判决的承认与执行等。下面回答一些咨询中的常见问题，供参考。

**一、关于文书送达**

1．外国司法机关或个人能否直接通过国际邮件或者传真、电子邮件等向中国境内当事人送达文书？

答：不能。根据中国《民事诉讼法》，外国司法机关或个人不能直接向中国境内当事人送达文书，应当通过条约规定途径或外交途径，向司法部或外交部提交请求，由中国人民法院代为送达。中国在加入《海牙送达公约》时已对第10条做出保留，反对通过邮寄方式在中国境内送达。邮寄送达包括传统邮寄、快递、电子邮件、传真等方式。

2．中国境内当事人尤其是中国企业或公民收到外国司法机关、司法人员或当事人通过国际邮件或者传真、电子邮件等送达的司法文书，应如何处理？

答：这种送达方式根据中国法律及中国政府对《海牙送达公约》做出的声明属无效送达。如外国法庭据此出具判决，如该判决涉及在中国境内申请承认与执行，送达环节将被我法院视为程序瑕疵，判决将无法承认及执行。当事人应及时向外国法院解释中国法律规定，请其按条约规定途径有效送达。

3．在国内法院提起诉讼，如诉讼一方在国外，如何向外国当事人送达诉讼文书？

答：应通过受理法院提出向外国送达司法文书的请求。各级人民法院通过最高人民法院将请求材料转递到中方中央机关司法部，由司法部根据条约规定向外国中央机关提出送达请求。如送达目的地国与中国未缔结相关条约，应通过外交渠道提出文书送达请求。

请求涉及北京、上海、广东、浙江、江苏、福建、江西、山东、广西、海南10地的，由该地高级人民法院向海牙送达公约成员国中央机关直接提出。

4．向在中国领域内无住所的外国当事人送达司法文书是否必须通过条约规定途径？能否由国内法院直接将司法文书通过邮寄或者传真、电子邮件等方式向外国当事人送达？

答：根据中国《民事诉讼法》第283条，除条约规定途径外，另有其他10种送达途径，国内法院可根据情况选择。如受送达人所在国法律允许邮寄或者传真、电子邮件等方式送达的，地方法院可以该方式直接向外国当事人送达。

**二、关于调查取证**

5．外国司法机关或司法人员如何调取位于中国境内的证据材料？

答：应根据条约规定途径，由外国具有提出取证请求资格的司法机关或个人向司法部提出调查取证请求。与中国未缔结相关条约的，应向外交部提出请求。请求经审批后由人民法院执行，结果由请求接收部门答复请求方。

6．外国司法机关或个人能否直接询问（包括通过电话、视频等技术手段）位于中国境内的证人？

答：不能。中国在加入《海牙取证公约》时已对公约第二章除第15条之外全部作出保留，不允许外国司法机关直接向位于中国境内的证人取证。外国相关机构应通过条约规定途径向司法部，或通过外交途径向外交部提出取证请求，请求经审批后由人民法院执行。

7．外国司法机关或相关人员能否委托中国境内的律师或其他机构询问证人或其他人员，或调取位于中国境内的材料，并将结果用于外国法院的诉讼？

答：根据中国《民事诉讼法》，取证由人民法院或者经人民法院批准后由律师进行，其他任何机构或个人不得在中国境内进行取证。

8．中国境内当事人出于自愿能否直接向外国司法机关或司法人员提交位于境内的证据材料？

答：位于境内的相关材料如需出境，应符合《民事诉讼法》《数据安全法》《个人信息保护法》的相关规定。

9．数据信息出境应通过哪些部门审批？

答：根据《数据安全法》《个人信息保护法》，数据信息确需向境外提供的，应当通过国家网信部门组织的安全评估、认证后方可向境外提交。境内的组织、个人向外国司法或者执法机构提供存储于中华人民共和国境内的数据或个人信息，涉及到国际司法协助的，需经中华人民共和国司法协助主管机关批准。

在条约规定框架下，由人民法院调取的证据材料等数据信息经最高人民法院审核后，由司法部转交外国请求方。

**三、 关于判决的承认与执行**

10．外国法院的判决能否在中国境内执行？依何程序？

答：外国法院的生效判决、裁定，需人民法院承认与执行的，可由当事人直接向有管辖权的中级人民法院申请，也可由外国法院依条约规定的渠道或互惠原则请求人民法院承认与执行。人民法院审查后认为不违反中国法律基本原则或国家主权、安全、社会公共利益的，裁定承认其效力，需要执行的，发出执行令。违反中国法律基本原则或国家主权、安全、社会公共利益的，不予承认和执行。

11．中国法院的判决如何申请外国承认与执行？

答：被执行人或其财产不在中国领域内，当事人请求执行的，可由当事人直接向有管辖权的外国法院申请承认和执行，也可以由人民法院依条约规定或互惠原则，通过司法部或外交部，向外国提出承认与执行的请求。

12．涉外仲裁裁决的承认与执行和判决的承认与执行程序是一样的吗？

答：仲裁裁决在外国的承认与执行依据《承认及执行外国仲裁裁决公约》（纽约公约），如双方都是公约成员国，当事人直接向被执行人所在国法院申请承认和执行，无需通过中央机关。部分我国与外国签订的双边民商事司法协助条约里涉及到仲裁裁决的承认与执行，相关条款均直接援引一九五八年《关于承认和执行外国仲裁裁决的公约》的规定。

13．婚姻家庭纠纷中儿童抚养权判决如何申请承认与执行？

答：中国尚未加入《国际诱拐儿童民事方面的公约》，儿童抚养权判决根据中国法律予以承认与执行，但不能对子女人身、探望行为强制执行。

**四、 其他**

14．中国境内当事人如需外国司法协助，如何提出请求？可否直接向司法部提出？

答：当事人可向当地人民法院提出申请，人民法院通过最高人民法院转递司法部或外交部，根据条约规定或互惠原则向被请求国提出。司法部不直接受理当事人向外国提出的请求。

请求涉及北京、上海、广东、浙江、江苏、福建、江西、山东、广西、海南10地的，由该地高级人民法院向海牙送达公约、海牙取证公约成员国中央机关直接提出。

15．民商事司法协助信息化工作

为便利国际民商事司法协助，司法部开通了网上提交系统（www.ilcc.online），外国请求方注册后使用，可直接在线上提交请求资料。请求一经受理，请求方无需再邮寄纸质资料。

16．民商事司法协助中央机关联系信息

司法部司法协助交流中心

电话：010 6515 2763

Add. 12

传真：010 6515 2773

电子邮箱：inquiry@ilcc.online

网站：www.ilcc.online

通信地址：北京市西城区平安里西大街41号甲，邮编100035

责任编辑: 杨翠婷

▲ 上一篇: 2024年民商事司法协助案件统计

▼ 下一篇: 司法部党组第三巡视组巡视司法协助交流中心党支部工作动员会召开

中国政府网 | 中央政法部门 | 国务院各部门 | 司法部专业子网站 | 地方司法厅局 | 中央重点新闻网站

中华人民共和国司法部 版权所有
京ICP备13016994号-2

京公网安备
11010502035627号

网站地图 | 联系我们 | 法律声明
网站标识码bm13000002

政府网站 找错

司法部
移动端




**The Ministry of Justice of the People's Republic of China**

# Frequently Asked Questions on International Civil and Commercial Judicial Assistance

**Source: Official website of the Ministry of Justice**

**Publication Date: March 21, 2025**

---

China and foreign countries conduct civil and commercial judicial assistance through the channels stipulated in the *Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, the *Convention on the Taking of Evidence Abroad in Civil or Commercial Matters*, and the 38 bilateral treaties on judicial assistance between China and foreign countries that have currently been concluded and are in effect (collectively referred to as the "Treaties"), as well as through diplomatic channels. The main areas of cooperation include service of judicial documents, evidence taking, and recognition and enforcement of judgments. Below are responses to some frequently asked questions in consultations, provided for reference.

## I. Regarding Document Service

1. May foreign judicial authorities or individuals directly serve documents on parties located in China via international mail, fax, email, etc.?

**Answer**: No. Pursuant to China's Civil Procedure Law, foreign judicial authorities or individuals may not directly serve documents on parties located in China. Instead, they must submit a request to the Ministry of Justice or the Ministry of Foreign Affairs through the channels provided under applicable treaties or diplomatic channels. The documents will then be served by the People's Court of China. When China acceded to the Hague Service Convention, it made a reservation to Article 10, objecting to service in China by postal channels. Service by mail includes traditional mail, courier services, email, fax, and other methods.

2. How should parties located in China—especially Chinese enterprises or citizens—respond when they receive judicial documents served by foreign judicial authorities, personnel, or parties via international mail, fax, email, etc.?

**Answer**: Such service is invalid under Chinese law and China's declaration to the Hague Service Convention. If a foreign court renders a judgment based on such service and the judgment is later submitted for recognition and enforcement in China, Chinese courts will treat the service as a procedural defect. As a result, the judgment will not be recognized or enforced. The party should promptly explain China's legal requirements to the foreign court and request that service be conducted through the treaty-based channels to be considered valid.

**CERTIFICATION OF TRANSLATION**

I, Fengquan Li, being over the age of eighteen and not a party to the action, hereby swear and attest to the following:

My qualifications as a translator are as follows: I grew up in the People's Republic of China, and Chinese is my native language. I am fluent in English and fully competent to translate from Chinese to English. I have personally made the above English translation of the attached Exhibit A, specifically, the first two questions in the *Frequently Asked Questions*. To the best of my knowledge and ability, the translation is complete and accurate.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on July 18, 2025 in Houston, Texas.

Fengquan Li

Fengquan Li

**14. CONVENTION ON THE SERVICE ABROAD OF JUDICIAL AND EXTRAJUDICIAL DOCUMENTS IN CIVIL OR COMMERCIAL MATTERS**[1]

*(Concluded 15 November 1965)*

The States signatory to the present Convention,
Desiring to create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time,
Desiring to improve the organisation of mutual judicial assistance for that purpose by simplifying and expediting the procedure,
Have resolved to conclude a Convention to this effect and have agreed upon the following provisions:

Article 1

The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad.
This Convention shall not apply where the address of the person to be served with the document is not known.

CHAPTER I – JUDICIAL DOCUMENTS

Article 2

Each Contracting State shall designate a Central Authority which will undertake to receive requests for service coming from other Contracting States and to proceed in conformity with the provisions of Articles 3 to 6.
Each State shall organise the Central Authority in conformity with its own law.

Article 3

The authority or judicial officer competent under the law of the State in which the documents originate shall forward to the Central Authority of the State addressed a request conforming to the model annexed to the present Convention, without any requirement of legalisation or other equivalent formality.
The document to be served or a copy thereof shall be annexed to the request. The request and the document shall both be furnished in duplicate.

Article 4

If the Central Authority considers that the request does not comply with the provisions of the present Convention it shall promptly inform the applicant and specify its objections to the request.

[1] This Convention, including related materials, is accessible on the website of the Hague Conference on Private International Law (www.hcch.net), under "Conventions" or under the "Service Section". For the full history of the Convention, see Hague Conference on Private International Law, *Actes et documents de la Dixième session (1964)*, Tome III, *Notification* (391 pp.).

## Article 5

The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, either –

*a)* by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory, or

*b)* by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed.

Subject to sub-paragraph *(b)* of the first paragraph of this Article, the document may always be served by delivery to an addressee who accepts it voluntarily.

If the document is to be served under the first paragraph above, the Central Authority may require the document to be written in, or translated into, the official language or one of the official languages of the State addressed.

That part of the request, in the form attached to the present Convention, which contains a summary of the document to be served, shall be served with the document.

## Article 6

The Central Authority of the State addressed or any authority which it may have designated for that purpose, shall complete a certificate in the form of the model annexed to the present Convention.

The certificate shall state that the document has been served and shall include the method, the place and the date of service and the person to whom the document was delivered. If the document has not been served, the certificate shall set out the reasons which have prevented service.

The applicant may require that a certificate not completed by a Central Authority or by a judicial authority shall be countersigned by one of these authorities.

The certificate shall be forwarded directly to the applicant.

## Article 7

The standard terms in the model annexed to the present Convention shall in all cases be written either in French or in English. They may also be written in the official language, or in one of the official languages, of the State in which the documents originate.

The corresponding blanks shall be completed either in the language of the State addressed or in French or in English.

## Article 8

Each Contracting State shall be free to effect service of judicial documents upon persons abroad, without application of any compulsion, directly through its diplomatic or consular agents.

Any State may declare that it is opposed to such service within its territory, unless the document is to be served upon a national of the State in which the documents originate.

## Article 9

Each Contracting State shall be free, in addition, to use consular channels to forward documents, for the purpose of service, to those authorities of another Contracting State which are designated by the latter for this purpose.

Each Contracting State may, if exceptional circumstances so require, use diplomatic channels for the same purpose.

## Article 10

Provided the State of destination does not object, the present Convention shall not interfere with –

*a)* the freedom to send judicial documents, by postal channels, directly to persons abroad,

*b)* the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,

*c)* the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

Article 11

The present Convention shall not prevent two or more Contracting States from agreeing to permit, for the purpose of service of judicial documents, channels of transmission other than those provided for in the preceding Articles and, in particular, direct communication between their respective authorities.

Article 12

The service of judicial documents coming from a Contracting State shall not give rise to any payment or reimbursement of taxes or costs for the services rendered by the State addressed.
The applicant shall pay or reimburse the costs occasioned by –

*a)* the employment of a judicial officer or of a person competent under the law of the State of destination,

*b)* the use of a particular method of service.

Article 13

Where a request for service complies with the terms of the present Convention, the State addressed may refuse to comply therewith only if it deems that compliance would infringe its sovereignty or security.
It may not refuse to comply solely on the ground that, under its internal law, it claims exclusive jurisdiction over the subject-matter of the action or that its internal law would not permit the action upon which the application is based.
The Central Authority shall, in case of refusal, promptly inform the applicant and state the reasons for the refusal.

Article 14

Difficulties which may arise in connection with the transmission of judicial documents for service shall be settled through diplomatic channels.

Article 15

Where a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and the defendant has not appeared, judgment shall not be given until it is established that –

*a)* the document was served by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory, or

*b)* the document was actually delivered to the defendant or to his residence by another method provided for by this Convention,

and that in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend.

Each Contracting State shall be free to declare that the judge, notwithstanding the provisions of the first paragraph of this Article, may give judgment even if no certificate of service or delivery has been received, if all the following conditions are fulfilled –

*a)* the document was transmitted by one of the methods provided for in this Convention,

*b)* a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,

*c)* no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.

Notwithstanding the provisions of the preceding paragraphs the judge may order, in case of urgency, any provisional or protective measures.

Article 16

When a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and a judgment has been entered against a defendant who has not appeared, the judge shall have the power to relieve the defendant from the effects of the expiration of the time for appeal from the judgment if the following conditions are fulfilled –

*a)* the defendant, without any fault on his part, did not have knowledge of the document in sufficient time to defend, or knowledge of the judgment in sufficient time to appeal, and

*b)* the defendant has disclosed a *prima facie* defence to the action on the merits.

An application for relief may be filed only within a reasonable time after the defendant has knowledge of the judgment.

Each Contracting State may declare that the application will not be entertained if it is filed after the expiration of a time to be stated in the declaration, but which shall in no case be less than one year following the date of the judgment.

This Article shall not apply to judgments concerning status or capacity of persons.

CHAPTER II – EXTRAJUDICIAL DOCUMENTS

Article 17

Extrajudicial documents emanating from authorities and judicial officers of a Contracting State may be transmitted for the purpose of service in another Contracting State by the methods and under the provisions of the present Convention.

CHAPTER III – GENERAL CLAUSES

Article 18

Each Contracting State may designate other authorities in addition to the Central Authority and shall determine the extent of their competence.

The applicant shall, however, in all cases, have the right to address a request directly to the Central Authority.

Federal States shall be free to designate more than one Central Authority.

Article 19

To the extent that the internal law of a Contracting State permits methods of transmission, other than those provided for in the preceding Articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions.

Article 20

The present Convention shall not prevent an agreement between any two or more Contracting States to dispense with –

*a)* the necessity for duplicate copies of transmitted documents as required by the second paragraph of Article 3,

*b)* the language requirements of the third paragraph of Article 5 and Article 7,

*c)* the provisions of the fourth paragraph of Article 5,

*d)* the provisions of the second paragraph of Article 12.

Article 21

Each Contracting State shall, at the time of the deposit of its instrument of ratification or accession, or at a later date, inform the Ministry of Foreign Affairs of the Netherlands of the following –

*a)* the designation of authorities, pursuant to Articles 2 and 18,

*b)* the designation of the authority competent to complete the certificate pursuant to Article 6,

*c)* the designation of the authority competent to receive documents transmitted by consular channels, pursuant to Article 9.

Each Contracting State shall similarly inform the Ministry, where appropriate, of –

*a)* opposition to the use of methods of transmission pursuant to Articles 8 and 10,

*b)* declarations pursuant to the second paragraph of Article 15 and the third paragraph of Article 16,

*c)* all modifications of the above designations, oppositions and declarations.

Article 22

Where Parties to the present Convention are also Parties to one or both of the Conventions on civil procedure signed at The Hague on 17th July 1905, and on 1st March 1954, this Convention shall replace as between them Articles 1 to 7 of the earlier Conventions.

Article 23

The present Convention shall not affect the application of Article 23 of the Convention on civil procedure signed at The Hague on 17th July 1905, or of Article 24 of the Convention on civil procedure signed at The Hague on 1st March 1954.

These Articles shall, however, apply only if methods of communication, identical to those provided for in these Conventions, are used.

Article 24

Supplementary agreements between Parties to the Conventions of 1905 and 1954 shall be considered as equally applicable to the present Convention, unless the Parties have otherwise agreed.

Article 25

Without prejudice to the provisions of Articles 22 and 24, the present Convention shall not derogate from Conventions containing provisions on the matters governed by this Convention to which the Contracting States are, or shall become, Parties.

Article 26

The present Convention shall be open for signature by the States represented at the Tenth Session of the Hague Conference on Private International Law.

It shall be ratified, and the instruments of ratification shall be deposited with the Ministry of Foreign Affairs of the Netherlands.

Article 27

The present Convention shall enter into force on the sixtieth day after the deposit of the third instrument of ratification referred to in the second paragraph of Article 26.

The Convention shall enter into force for each signatory State which ratifies subsequently on the sixtieth day after the deposit of its instrument of ratification.

Article 28

Any State not represented at the Tenth Session of the Hague Conference on Private International Law may accede to the present Convention after it has entered into force in accordance with the first paragraph of Article 27. The instrument of accession shall be deposited with the Ministry of Foreign Affairs of the Netherlands.

The Convention shall enter into force for such a State in the absence of any objection from a State, which has ratified the Convention before such deposit, notified to the Ministry of Foreign Affairs of the Netherlands within a period of six months after the date on which the said Ministry has notified it of such accession.

In the absence of any such objection, the Convention shall enter into force for the acceding State on the first day of the month following the expiration of the last of the periods referred to in the preceding paragraph.

Article 29

Any State may, at the time of signature, ratification or accession, declare that the present Convention shall extend to all the territories for the international relations of which it is responsible, or to one or more of them. Such a declaration shall take effect on the date of entry into force of the Convention for the State concerned.

At any time thereafter, such extensions shall be notified to the Ministry of Foreign Affairs of the Netherlands.

The Convention shall enter into force for the territories mentioned in such an extension on the sixtieth day after the notification referred to in the preceding paragraph.

Article 30

The present Convention shall remain in force for five years from the date of its entry into force in accordance with the first paragraph of Article 27, even for States which have ratified it or acceded to it subsequently.

If there has been no denunciation, it shall be renewed tacitly every five years.

Any denunciation shall be notified to the Ministry of Foreign Affairs of the Netherlands at least six months before the end of the five year period.

It may be limited to certain of the territories to which the Convention applies.

The denunciation shall have effect only as regards the State which has notified it. The Convention shall remain in force for the other Contracting States.

Article 31

The Ministry of Foreign Affairs of the Netherlands shall give notice to the States referred to in Article 26, and to the States which have acceded in accordance with Article 28, of the following –

*a)* the signatures and ratifications referred to in Article 26;
*b)* the date on which the present Convention enters into force in accordance with the first paragraph of Article 27;
*c)* the accessions referred to in Article 28 and the dates on which they take effect;
*d)* the extensions referred to in Article 29 and the dates on which they take effect;
*e)* the designations, oppositions and declarations referred to in Article 21;
*f)* the denunciations referred to in the third paragraph of Article 30.

In witness whereof the undersigned, being duly authorised thereto, have signed the present Convention.

Done at The Hague, on the 15th day of November, 1965, in the English and French languages, both texts being equally authentic, in a single copy which shall be deposited in the archives of the Government of the Netherlands, and of which a certified copy shall be sent, through the diplomatic channel, to each of the States represented at the Tenth Session of the Hague Conference on Private International Law.