CASE NO. 25-12597-H

# In the United States Court of Appeals for the Eleventh Circuit

adidas, AG, adidas International Marketing B.V.,
adidas America, Inc.
*Plaintiffs-Appellees*
v.
The Individuals, Business Entities, and Unincorporated Associates Identified in Schedule A,
*Defendants*
and
Localityi.com, MediumSpots.com
*Defendants-Appellants*

On appeal from the United States District Court
for the Southern District of Florida
Case Number 0:23-cv-62185

## APPELLEES' BRIEF

December 10 , 2025


Dineen Pashoukos Wasylik
Florida Bar No. 0191620
DPW Legal
PO Box 48323
Tampa, Florida 33646
Telephone: 813-778-5161
Email: dineen@ip-appeals.com

Stephen M. Gaffigan
Florida Bar No. 025844
Stephen M. Gaffigan P.A.
401 East Las Olas Blvd.,
Suite 130-453
Ft. Lauderdale, Florida 33301
Telephone: 954-767-4819
Email: stephen@smgpa.cloud

*Attorneys for Appellees adidas, AG,*
*adidas International Marketing B.V., adidas America, Inc.*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to F.R.A.P 26.1 and 11th Cir. R. 26.1-1, Appellees disclose the following trial judges, attorneys, persons, firms, partnerships, corporations or business entities that have an interest in the appeal, including subsidiaries, affiliates, and parent corporations including any publicly held corporation that owns 10% or more of the party's stock:

adidas AG (ADDY) (Plaintiff/Appellee)

adidas America, Inc. (Plaintiff/Appellee)

adidas International Marketing B.V. (Plaintiff/Appellee)

adidas North America, Inc. (Parent Company of adidas America, Inc.)

Amgo Technology Co., Ltd. d/b/a mediumspots.com (Defendant/Appellant)

Berliner Corcoran & Rowe LLP (Counsel for Defendants/Appellants)

Chen, Jacob (Counsel for Defendants/Appellants)

Daley, Christine Ann (Counsel for Plaintiffs/Appellees)

DGW Kramer LLP (Counsel for Plaintiffs/Appellees)

Dineen Pashoukos Wasylik, P.A. d/b/a DPW Legal (Counsel for Plaintiffs/Appellees)

Gaffigan, Stephen M. (Lead Counsel for Plaintiffs/Appellees)

Gigante, Virgilio (Counsel for Plaintiffs/Appellees)

Heitner, Darren Adam (Counsel for Plaintiffs/Appellees)

Heitner Legal, P.L.L.C. (Counsel for Plaintiffs/Appellees)

Lopez, Laina C. (counsel for Defendants/Appellants)

Shenzhen Huipeng Network Technology Co., Ltd. d/b/a localityi.com (Defendant/Appellant)

Boocezawni Technology Co. Ltd. d/b/a localityi.com (Defendant/Appellant)

Smith, Hon. Rodney (District Court Judge)

Stephen M. Gaffigan, P.A. (Counsel for Plaintiffs/Appellees)

Son, Anthony H (Counsel for Defendants/Appellants)

Wasylik, Dineen Pashoukos (Counsel for Plaintiffs/Appellees)

Wiborg-Rodriguez, T. Raquel (Counsel for Plaintiffs/Appellees)

## STATEMENT REGARDING ORAL ARGUMENT

Appellees respectfully submit that oral argument is not necessary in this matter, which turns primarily on established precedent and the broad discretion of the District Court.

## TABLE OF CONTENTS

Certificate of Interested Persons

and Corporate Disclosure Statement .................................C-1

Statement Regarding Oral Argument .................................... i

Table of Contents ..........................................................ii

Table of Citations ..........................................................vi

Statement of Subject-Matter and Appellate Jurisdiction .... xviii

Statement of the Issues ...................................................... 1

Statement of the Case ........................................................ 3

I. Course of Proceedings and Disposition in the Court Below and Statement of the Facts. ............................. 3

A. adidas Simultaneously Seeks an Ex Parte Injunction and Obtains Leave of Court to Serve Process via Email. ................................................ 4

B. The District Court Grants the TRO and Service Motion and adidas Serves the Website Owners as Instructed. ........................................................ 8

C. Website Owners Fail to Respond to the Complaint, and adidas Seeks a Default Judgment.................. 9

D. After Being Served, Counsel for Defendants Appeared on Their Behalf, But Did Not Seek to Set Aside the Entry of Clerk's Default or Respond to the Pending Motion for Entry of Default Judgment. ... 10

E. Five Months Later, Defendants Ask the Court for Relief for the First Time. ... 12

F. adidas Opposes Rule 60 Relief. ... 16

G. The District Court in Its Discretion Denies the Motion to Set Aside the Default Judgment. ... 18

II. Statement of the Standard of Review ... 20

Summary of the Argument ... 21

Argument ... 23

I. Appellants Waived Any Challenge to Service of Process by Appearing in the Action and Failing to Take Any Steps to Prevent Entry of Default Judgment. ... 23

II. Service by Website and Email Provided Appellants with Adequate Due Process and Actual Notice, so the Judgment is Not Void. ... 28

A. The Hague Convention Does Not Require Service via the Central Authority Because the Convention Does

Not Apply Where a Defendant's Address is Unknown. ........................................................ 31

B. No International Agreement Prohibits Service in China by Email and Website. .............................. 34

*1. China's objection to service via physical mail in Article 10 is not an express objection to service via email. .............................................................38*

*2. The Website Owners Waived Any Reliance on the "New" Chinese Guidance Because They Failed to Raise It Prior to the District Court's Decision. ......43*

*3. This Court Must Adhere to the Terms of the Treaty, and China Cannot Expand Those Terms via an Administrative Interpretation. ..............................44*

C. The Website Owners Waived Any Argument that They Were Deprived of Due Process; They Had Actual, Reasonable Notice. ................................. 45

III. The District Court Applied the Correct Test and Acted Well-Within Its Discretion in Refusing to Find Excusable Neglect. ....................................................49

A. Safari Does Not Mandate Detailed Consideration of All Three Factors When There is No Good Reason for a Long Delay. .................................................. 50

B. The District Court Acted Well Within Its Discretion in Finding Appellants Failed to Establish Good Cause for Delay. ............................................... 54

C. Even Under Appellants' Overbroad Reading of Safari, Any Error Would Be Harmless Because Appellants Merely Made Bald Assertions without Evidence as to the other Factors. ........................ 57

*1. Appellants Did Not Even Attempt to Argue a Meritorious Defense on Appeal. ...........................58*

*2. Appellants Failed to Demonstrate a Lack of Prejudice...............................................61*

Conclusion ..............................................................64

Certificate of Compliance ..................................................65

Certificate of Service ..........................................................66

## **TABLE OF CITATIONS**

### **CASES**

*Adler v. Duval County Sch. Bd.*,

112 F.3d 1475 (11th Cir. 1997) ....................................33

*Alford v. Spillway Spas, LLC*,

No. 6:20-CV-823ORL40GJK, 2020 WL 10054533

(M.D. Fla. Aug. 31, 2020) ............................................57

*Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*,

788 F.3d 1329 (11th Cir. 2015) ....................................28

*Baragona v. Kuwait Gulf Link Transp. Co.*,

594 F.3d 852 (11th Cir. 2010) ................................24, 25

*Bidi Vapor LLC v. U.S. Food & Drug Admin.*,

47 F.4th 1191 (11th Cir. 2022) ....................................63

*Bonilla v. Baker Concrete Const., Inc.*,

487 F.3d 1340 (11th Cir. 2007) ..............................51, 52

*Bonner v. City of Pritchard*,

661 F.2d 1206 (11th Cir. 1981) (en banc) .....................49

*Brookshire Bros. v. Chiquita Brands Int'l, Inc.*,

No. 05-cv-21962, 2007 WL 1577771, 2007 U.S. Dist. LEXIS 29495 (S.D. Fla. May 31, 2007) .........................35

*Bros. Inc. v. W. E. Grace Mfg. Co.*,

320 F.2d 594 (5th Cir. 1963).........................................49

*Canada Goose Inc. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*,

No. 1:25-CV-22730-RS, 2025 WL 2831341 (S.D. Fla. June 24, 2025) .............................................35

*Chanel, Inc. v. HandbagStore*,

No. 20-CV-62121, 2021 WL 3060329 (S.D. Fla. June 30, 2021), *report and recommendation adopted sub nom. Chanel, Inc. v. Handbag Store*, No. 20-CIV-62121-RAR, 2021 WL 3053396 (S.D. Fla. July 20, 2021) .................41

*Cobos v. Adelphi Univ.*,

179 F.R.D. 381 (E.D.N.Y. 1998)...................................63

*Compania De Inversiones Mercantiles S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*,

970 F. 3d 1269 (10th Cir. 2020)..................................36

*Davila v. Alcami Grp., Inc.*, No. 12-23168-CIV, 2013 WL

1934168, at *5 (S.D. Fla. May 9, 2013)........................55

*De Gazelle Group, Inc. v. Tamaz Trading Establishment*,

817 F.3d 747 (11th Cir. 2016).....................................30

*Douglas Asphalt Co. v. QORE, Inc.*,

657 F.3d 1146 (11th Cir. 2011)...................................44

*E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*,

896 F.2d 524 (11th Cir. 1990).....................................19

*Emqore Envesecure Private Cap. Trust v. Singh*,

No. 20-7324 (KM) (JBC), 2020 U.S. Dist.

LEXIS 260456 (D.N.J. July 9, 2020)............................43

*Factory Direct Wholesale, LLC v. Henglin Home Furnishings Co.,*

*Ltd.*, No. 2:24-cv-07118-CAS-PDx,

2024 WL 5413653, 2024 U.S. Dist. LEXIS 239928

(C.D. Cal. Nov. 25, 2024)............................................36

*Florida Physician's Ins. Co., Inc. v. Ehlers*,

8 F.3d 780 (11th Cir. 1993).........................................52

*Fox Shiver LLC v. Individuals, Corps., Ltd. Liab. Companies,*

*Partnerships, & Unincorporated Associations Identified on*

*Schedule A to the Complaint,*

No. 23-CV-1898 (JPO), 2024 WL 230748

(S.D.N.Y. Jan. 22, 2024)..............................................32

*Genus Lifesciences Inc. v. Tapaysa Eng'g Works Pvt. Ltd.*,

No. 20-CV-3865, 2021 WL 915662

(E.D. Pa. Mar. 10, 2021)..............................................41

*Goddess Approved Productions, LLC v. Wolox*,

No. CV 20-1697 (MN), 2021 WL 11678467, 2021 U.S.

Dist. LEXIS 267115 *6-7 (D. Del. Aug. 11, 2021)..........42

*Grant v. Pottinger-Gibson*,

725 F. App'x 772 (11th Cir. 2018) ...............................49

*Griffin v. Swim-Tech Corp.*,

722 F.2d 677 (11th Cir. 1984).....................................49

*Gulf Coast Fans, Inc. v. Midwest Elecs. Importers, Inc.*,

740 F.2d 1499 (11th Cir. 1984)................................ xviii

*Gurung v. Malhotra*,

279 F.R.D. 215 (S.D.N.Y. 2011)..................................36

*Hangzhou Chic Intelligent Tech. Co. v. Partnerships &*

*Unincorporated Associations Identified on Schedule A*,

No. 20 C 4806, 2021 WL 1222783

(N.D. Ill. Apr. 1, 2021)................................................42

*Idearc Media LLC. v. Kravitz Law Group, P.A.*,

No. 8:09-CV-02078-T-17AE, 2010 WL 2179122, (M.D. Fla. May 7, 2010),

*report and recommendation adopted*, No. 8:09-CIV-2078T17AEP, 2010 WL 2179109 (M.D. Fla. June 1, 2010) ....................56

*In re Guidant Corp. Implantable Defribrillators Prods. Liab. Litig.*, 496 F.3d 863 (8th Cir. 2007) ....................63

*In re Le Ctr. on Fourth, LLC*,

17 F.4th 1326 (11th Cir. 2021) ....................46

**In re Worldwide Web Sys., Inc.*,

328 F.3d 1291 (11th Cir. 2003) ("*Valdez*") .. 20, 54, 59, 63

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,

456 U.S. 694 (1982) ....................21

*Jackson Lab. v. Nanjing Univ.*,

No. 1:17-CV-00363-GZS, 2018 WL 615667 (D. Me. Jan. 29, 2018) ....................42

*Kasbekar v. Ivy Station Cmty. Ass'n, Inc.*,

No. 20-10620, 2022 WL 17247551

(11th Cir. Nov. 28, 2022) ............................................21

*Lawson v. Sutton*,

No. 8:16-CV-403-T-17TBM, 2017 WL 40591

(M.D. Fla. Jan. 4, 2017) ..............................................56

*Lexmark Int'l Inc. v. Ink Techs. Printer Supplies, LLC*,

295 F.R.D. 259 (S.D. Ohio 2013) ..................................36

*Loper Bright Enterprises v. Raimondo*,

603 U.S. 369 (2024) ....................................................45

*MacLean-Fogg Co. v. Ningbo Fastlink Equp. Co.*,

No. 08 CV 2593, 2008 WL 5100414, 2008 U.S. Dist.

LEXIS 97241 (N.D. Ill. Dec. 1, 2008) ............................37

*Medellin v. Texas*,

552 U.S. 491 (2008) ....................................................45

*Mullane v. Cent. Hanover Bank & Tr. Co.*,

339 U.S. 306 (1950) ..............................................25, 46

*Nat'l Academy of TV Arts & Sciences, Inc. v. Jin Xin*,

No. 24-62281-CIV-DAMIAN,

2025 WL 2840577, 2025 U.S. Dist. LEXIS 201892

(S.D. Fla. July 24, 2025) ............................................35

*Oldfield v. Pueblo De Bahia Lora, S.A.*,

558 F.3d 1210 (11th Cir. 2009)...................................20

*Pardazi v. Cullman Med. Ctr.*,

896 F.2d 1313 (11th Cir. 1990)...................................23

*Patrick's Rest., LLC v. Singh*,

No. 18-cv-00764 (ECT/KMM),

2019 U.S. Dist. LEXIS 2535 (D.Minn., Jan. 7, 2019) ....42

*Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*,

507 U.S. 380 (1993)...........................................50, 57

*Popular Enters. LLC v. Webcom Media Group, Inc.*,

225 F.R.D. 560 (E.D. Tenn. 2004) ...............................37

*Prewitt Enterprises, Inc. v. Org. of Petroleum Exporting Countries*,

353 F.3d 916 (11th Cir. 2003)....................................24

*Regeneron Pharms, Inc. v. Celltrion, Inc.*,

No. 1:23-cv-89; 1:23-cv-94; 1:23-cv-97,

2024 WL 4958304, 2024 U.S. Dist. LEXIS 177775 (N.D. W. Va. Sept. 30, 2024) ................................................36

*Rentrop v. Spectranetics Corp.*,

550 F.3d 1112 (Fed. Cir. 2008) ....................................44

*Rio Properties, Inc. v. Rio Intern. Interlink*,

284 F.3d 1007 (9th Cir. 2002)......................................30

*Rivas v. Denovus Corp., Ltd.*,

No. 10-22070-CIV-KING, 2010 WL 4102926 (S.D. Fla. Oct. 18, 2010)............................................................54

*Rubie's Costume Co., Inc. v. Yiwu Hua Hao Toys Co., Ltd.*,

No. 2:18-CV-01530-RAJ, 2019 WL 6310564 (W.D. Wash. Nov. 25, 2019) ..........................................................42

*Safari Programs, Inc. v. CollectA Int'l Ltd.*,

686 Fed. Appx. 737 (11th Cir. 2017) ............................50

**Sanderford v. Prudential Ins. Co. of Am.*,

902 F.2d 897 (11th Cir. 1990)..........................25, 26, 38

**Sapuppo v. Allstate Floridian Ins. Co.*,

739 F.3d 678 (11th Cir. 2014)....................33, 46, 59, 61

*Sec. & Exch. Comm'n v. Lahr*,

No. 22-2497, 2024 WL 3518309, 2024 U.S. App. LEXIS 18170

(3d Cir. July 24, 2024) ................................................37

*Singh v. U.S. Atty. Gen.*,

561 F.3d 1275 (11th Cir. 2009) .................................... 59

*Skanska USA Civil Se. Inc. v. Bagelheads, Inc.*,

75 F.4th 1290 (11th Cir. 2023) .................................... 62

*Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc.*,

803 F.2d 1130 (11th Cir. 1986) .................................... 58

*Stat Med. Devices, Inc. v. HTL-Strefa, Inc.*,

Case No. 15-cv-20590-FAM, 2015 WL 5320947,

2015 U.S. Dist. LEXIS 122000

(S.D. Fla. Sept. 14, 2015) ........................................... 35

*Tesla, Inc. v. Individuals*,

Civil No. W-24-cv-00172-ADA, 2024 U.S. Dist. LEXIS

246713 (W.D. Tex. Apr. 19, 2024) ................................ 41

*United States v. Approximately $299,873.70 Seized From a*

*Bank of Am. Account*,

833 Fed. Appx. 773 (11th Cir. 2020) ............................ 58

*United States v. Hall*,

714 F.3d 1270 (11th Cir. 2013) .................................... 21

**United States Student Aid Funds, Inc. v. Espinosa*,

559 U.S. 260 (2010) ........................................ 28, 38, 46

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,

486 U.S. 694 (1988) ....................................................29

*Water Splash, Inc. v. Menon*,

581 U.S. 271 (2017) ....................................................29

*Wells v. Rockefeller*,

728 F.2d 209 (3d Cir. 1984) ........................................27

*Winston v. Walsh*,

829 Fed. Appx. 448 (11th Cir. 2020) ......................32, 40

*Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*,

898 F.3d 1279 (11th Cir. 2018) .............................21, 28

**STATUTES**

§ 48.193, Fla. Stat. ..........................................................18

15 U.S.C. § 1114 .........................................................5, 15

15 U.S.C. § 1121 ......................................................... xviii

15 U.S.C. § 1338 ......................................................... xviii

28 U.S.C. § 1291 ......................................................... xviii

28 U.S.C. § 1331 ......................................................... xviii

28 U.S.C. § 1367 ......................................................... xviii

28 U.S.C. § 2111 ............................................................58

**RULES**

A. Scalia & B. Garner, *Reading Law:*

*The Interpretation of Legal Texts* 64 (2012) ....................40

Fed. R. Civ. P. 12 ....................24

Fed. R. Civ. P. 37(e) ....................61, 62

Fed. R. Civ. P. 4 ....................25

Fed. R. Civ. P. 4(f) ....................2, 16, 28

Fed. R. Civ. P. 4(f)(1) ....................29

Fed. R. Civ. P. 4(f)(2) ....................29

Fed. R. Civ. P. 4(f)(3) .................... 2, 7, 18, 29, 30, 31, 46

Fed. R. Civ. P. 5(b)(1) ....................48

Fed. R. Civ. P. 5(b)(2)(E) ....................48

Fed. R. Civ. P. 55(c) ....................56, 57

Fed. R. Civ. P. 60 .................... xviii, 56

Fed. R. Civ. P. 60(b)(1) .................... 3, 13, 14, 16, 19, 20

Fed. R. Civ. P. 60(b)(4) ....................13, 16, 28

*Hague Convention, Art. 1,

20 U.S.T. 361 (1969) ....................31, 40

*Hague Convention, Art. 10,

20 U.S.T. 361 (1969) .................... 16, 22, 38, 39, 40, 41, 43

S.D. Fla. L. R. 11.1(6).........................................................55

S.D. Fla. L. R. 5.1(e).........................................................11

S.D. Fla. L. R. 7.1(c)(1).........................................................10

S.D. Fla. L.R. 5.1(b).........................................................12

## STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

The trial court had jurisdiction pursuant to 28 U.S.C. § 1331 and 1338 and 15 U.S.C. § 1121 over the trademark and infringement claims, and 28 U.S.C. § 1367 over the state law claims.

The appellate court has jurisdiction to review the denial of a Rule 60 post-judgment motion to set aside the judgment pursuant to 28 U.S.C. § 1291. *See Gulf Coast Fans, Inc. v. Midwest Elecs. Importers, Inc.*, 740 F. 2d 1499, 1507 (11th Cir. 1984) ("The denial of a Rule 60(b) motion is, in itself, a final appealable order").

## <u>STATEMENT OF THE ISSUES</u>

This appeal from a final order denying a motion to set aside default judgment [DE 45][1] filed almost seven months after the party first appeared in the case presents two issues:

**ISSUE 1**. The Website Owners' counsel filed a notice of appearance [DE 33], then failed to timely respond to the pending motion for default judgment [DE 31] or seek an extension of time to respond, and did not take steps to set aside the judgment entered twenty days after their appearance until almost ***five months*** after the entry of judgment [DE 40]. Did the Appellants waive any challenge to service of process by appearing in the case and then not participating for five months?

**ISSUE 2**. The Hague Convention, by its terms, does not apply where a foreign defendant's physical address is not known, and Plaintiff provided evidence that it had been unable to obtain physical addresses for defendants, but had valid

[1] Pursuant to 11th Cir. R. 28-5, references to docket entries for documents filed in the trial court are denoted with the abbreviation DE ___.

electronic addresses. Did the trial court abuse its discretion in ordering alternative service by means narrowly targeted to ensure due process and notice as provided by Fed. R. Civ. P. 4(f)(3)?

**ISSUE 3**. The Hague Convention allows service by alternative means, including email, so long as the receiving country has not objected to that alternative form of service, while Fed. R. Civ. P. 4(f) allows for service on foreign defendants either by use of the Hague Convention protocols, or by any other means "not prohibited by international agreement as may be directed by the Court." At the time service was made, China had not made any statements regarding service via electronic means. Did the District Court act within its discretion in directing alternative service by email to valid email addresses and public posting?

**ISSUE 4:** The District Court found that Defendants failed to demonstrate excusable neglect because their counsel entered an appearance in the case on June 4, 2025, failed to respond or seek an extension to respond to the pending motion for default judgment, and then waited five months to move to set aside

judgment entered against them. Did the District Court act well within its sound discretion in finding no excusable neglect when it found that the delay in seeking relief was inexcusable, and in any event Appellants did not make any meaningful argument as to the remaining Rule 60(b)(1) factors?

## STATEMENT OF THE CASE

### I. Course of Proceedings and Disposition in the Court Below and Statement of the Facts.

Plaintiffs adidas, AG, adidas International Marketing B.V., adidas America, Inc. (collectively, "adidas"), in order to put an end to the "promot[ion], selling, offering for sale, and/or distribut[ion] of goods using counterfeits and confusingly similar imitations" of their famous trademarks, filed suit against multiple defendants, including Localtyi.com and MediumSpots.com (collectively "Website Owners" or "Appellants"), seeking monetary and injunctive relief. DE 1 at 1. The Complaint alleged, among other things, that Website Owners infringed what adidas refers to as its three stripe mark, , which has been registered with the United States Patent and Trademark Office for more than a decade for use in

conjunction with, among many other things, "Articles made of leather and imitation leather, namely, backpacks, bags for general and sports use, carry-all bags, athletic bags, duffle bags, shoulder bags, sling bags, handbags, purses, tote bags, waist packs, overnight bags, knapsacks, [and] shoe bags." DE 1 at 6-10 ¶ 18 (allegation in Complaint), DE 1-2 at 47 (registration certificate). The Complaint alleged that the Appellants were promoting and selling "counterfeits and confusingly similar imitations of one or more of the adidas Marks" DE 1 at 12 ¶ 26, 16 ¶ 44, causing "confusion, mistake, and deception among members of the trade and the general consuming public" and therefore causing adidas irreparable harm. DE 1 at 16 ¶¶ 45-47.

### *A. adidas Simultaneously Seeks an Ex Parte Injunction and Obtains Leave of Court to Serve Process via Email.*

adidas sought an *ex parte* motion for Temporary Restraining order against all defendants, including Website Owners. DE 8 (the "TRO Motion"). In support of the TRO Motion, adidas submitted evidence showing that Appellants

sold the following item into the United States (the “Accused Product”):

| **Shenzhen Huipeng Network Technology Co., Ltd. dba Localityi.com DE 8-5 at 165** | **Amgo Technology Co. Ltd. dba MediumSpots.com DE 8-5 at 209** |
|---|---|
|  |  |

The TRO Motion made substantial legal argument with respect to proving that the Accused Product (and the many others connected with the other defendants not relevant to this appeal) caused a likelihood of confusion with at least one of adidas’ registered trademarks without adidas’ authorization. DE 8 at 9-11. It addressed each of the elements of a claim for violation of 15 U.S.C. § 1114 and each of the elements required to demonstrate a likelihood of confusion. DE 8 at 9-11.

On the same day adidas filed the TRO Motion, it also requested the Court's permission to effectuate service of process on foreign defendants resident in China and other countries by electronic means because the defendants operate via the Internet and rely on electronic communications to operate their businesses. DE 9 at 2 (the "Service Motion"). In the Service Motion, adidas provided evidence that email and electronic communications would be the most reliable method to provide defendants with actual notice of the pleadings in the lawsuit against them. DE 9 at 3-4.

Specifically, adidas' evidence demonstrated that because of the methods of operation of electronic commerce stores, the email addresses for the merchants associated with payment processors used by those stores, along with their customer service email addresses, onsite contact forms, and e-commerce store messaging services, would all be reliable ways to provide defendants with actual notice of the lawsuit against them. DE 9 at 5-6. In addition, adidas provided a website with free access to all pleadings in the case to ensure defendants, after being served with the Complaint, would have continuing access to the

documents filed in the case as it progressed.[2] DE 9 at 5-6. adidas therefore asked the District Court to use its broad discretion to order alternative service pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure. DE 9 at 7.

adidas specifically addressed whether the Hague Convention prohibited service via email and posting on a designated website allows for service in this manner on defendants in China. DE 9 at 13-16. adidas provided the District Court with a copy of the treaty, which states:

> Provided the state of destination does not object, the present Convention shall not interfere with – a) the freedom to send judicial documents, by postal channels, directly to persons abroad…

DE 9-3 at 30. adidas also provided the Court with a translation of China's Declaration Notification, which stated that China "oppose[s] the service of documents in the territory of the

[2] Website Owners state the website is not currently accessible. Appellants' Brief at 6 n.1. There was no argument below that the website did not contain the required documents at all relevant times. The current state of the website, 18 months after final judgment was entered, is entirely irrelevant.

People's Republic of China by the methods provided by Article 10 of the Convention." DE 9-3 at 12.

### *B. The District Court Grants the TRO and Service Motion and adidas Serves the Website Owners as Instructed.*

The District Court granted the *Ex Parte* TRO (DE 12) and authorized alternate service of process (DE 11) on the same day. The District Court held that service by email and web publication is permitted by the Hague Convention. DE 11 at 2. The Court also made the factual finding that China had not objected to service by email or Internet publication. DE 11 at 3. After also making the factual finding that service by email and Internet publication were the most likely means of communication to actually reach the Defendants, the District Court granted adidas' motion. DE 11 at 3. The District Court ordered adidas to perfect service by publicly posting the pleadings in the case on the designated website and by notifying defendants of the suit to the email addresses associated with their e-commerce store. DE 11 at 3-4. Following the directives of that order, adidas served copies of the Complaint, civil cover sheet, and other pleadings by email and publication on both

localityi.com and mediumspots.com on April 19, 2024. DE16-1 at 1-3. A few days later, adidas formally served the Summons and Complaint on both localityi.com and mediumspots.com as directed by the District Court. DE 25 at 2.

The Docket entry for the executed return of service set forth each party's response deadline, ordering both localityi.com and mediumspots.com to respond to the complaint by May 14, 2024. Appx. at 9 (Tab A Docket).

### ***C. Website Owners Fail to Respond to the Complaint, and adidas Seeks a Default Judgment.***

When neither localityi.com nor mediumspots.com timely responded to the Complaint – neither filing an answer, nor a Rule 12 motion – adidas requested the entry of a clerk's default, which was entered the next day. Appx. at 9 (Docket citing DE 28 and 29).

Eight days later, on Friday, May 24, 2024, adidas by motion sought entry of default judgment against all defendants that had neither responded to the complaint nor settled, including localityi.com and mediumspots.com. DE 31. Because Appellants had not yet appeared in the District Court,

adidas served them at the email addresses identified in the motion for entry to default, as well as by posting on the designated service notice website. DE 31 at 20-22. Under local rule, responses to motions are due 14 days after service of the motion, making a timely response due no later than Friday, June 7, 2024. S.D. Fla. L. R. 7.1(c)(1).

### ***D. After Being Served, Counsel for Defendants Appeared on Their Behalf, But Did Not Seek to Set Aside the Entry of Clerk's Default or Respond to the Pending Motion for Entry of Default Judgment.***

The Website Owners demonstrated they had actual knowledge of the case by hiring counsel, who sought and obtained pro hac vice admission to represent them before the District Court on June 4, 2024 – 3 days prior to the deadline to respond to the Motion for Entry of Default Judgment. DE 33 (pro hac vice motion to appear on behalf of mediumspots.com, localityi.com); Appx at 19 (Docket displaying DE 34, the same-day paperless order granting admission pro hac vice). The pro hac vice motion was filed by a Florida Bar member admitted to practice before the Southern District of Florida. DE 33, *see also* S.D. Fla. L. R. 1 (only Florida Bar members may become

members of the Southern District of Florida Bar); S.D. Fla. L. R. 4 (motions to appear pro hac vice must be submitted and served "by co-counsel admitted to practice in this District"). As required by rule, the pro hac vice attorney certified in the motion that counsel had studied the District's local rules. DE 33 at 5.

After appearing in the case through both local and pro hac vice counsel, Website Owners did not oppose the motion for default judgment by the deadline set forth by the local rules or seek an extension of time to do so. Appx. at 10 (Tab A docket). Nor did Appellants seek to set aside the entry of clerk's default. *Id.*

The trial court waited 17 days after the deadline for Website Owners to oppose entry of default judgment without any intervening filings by Appellants before finally granting the request for a default judgment (DE 35), followed by entry of a separate judgment (DE 36). Although Appellants were represented by counsel and were presumed to have been served by the CM/ECF system pursuant to Local Rule, the District Court ordered adidas to serve the order and default judgment

directly on all defendants. DE 35; S.D. Fla. L. R. 5.1(e) (parties registered for CM/ECF service consent to service via that system); S.D. Fla. L.R. 5.1(b) (service by CM/ECF system is deemed complete by date document was filed). The Clerk also sent the required report to the United States Patent and Trademark Office advising that the case was closed on June 24, 2024, and filed and served on all counsel including counsel for Localityi.com and MediumSpots.com, a notice regarding the same. Appx. at 10 (citing DE 37).

More than 30 days after the entry of the Default Judgment, Appellants had not filed a notice of appeal directed at the final default judgment. Appx. at 10 (Tab A Docket). The case remained closed. *Id.*

### *E. Five Months Later, Defendants Ask the Court for Relief for the First Time.*

Five months after entry of the default judgment, the Website Owners' local counsel moved to admit another attorney pro hac vice to represent them. DE 38. Once again, the District Court granted the pro hac vice motion on the same day. Appx at 10 (citing DE 39, paperless order).

More than a week after the pro hac vice motion was granted – such that Appellants now had three separate lawyers from two separate law firms representing them before the District Court – Appellants filed a motion to set aside the judgment entered five months earlier (the Rule 60 Motion). DE 40.

In the Rule 60 Motion, the Website Owners alleged that the judgment entered against them was void due to lack of due process under the Florida long arm statute (an argument they have expressly waived on appeal). DE 40 at 2-5, Appellants' Brief at 7 n.2. They also argued that the judgment was void pursuant to Rule 60(b)(4) on the theory that service of process by email is not permitted in China. DE 40 at 7-14. Separately, they also argued that the judgment should be set aside for excusable neglect pursuant to Rule 60(b)(1). DE 40 at 15-17. Although Appellants had appeared in the matter through counsel weeks prior to entry of judgment, the Motion stated that Appellants "now intends [sic] to appear and contests [sic] the propriety of service by email on Defendants located in China." DE 40 at 8. The Website Owners also argued that the *only* way

to serve a Chinese national under the Hague Convention is through its central authority, and that China had not opted-in to service by email on its nationals. DE 40 at 7-11.

In support of their motion pursuant to Rule 60(b)(1) due to excusable neglect, Appellants argued that they established a good reason for failing to respond to the complaint because they had engaged in settlement discussions with adidas' counsel and thus "there was an implicit agreement between the parties that litigation would proceed if settlement negotiations broke down." DE 40 at 17. Appellants did not make any argument regarding their failure to seek extensions of time to respond to the motion for entry of default judgment, to seek to set aside the clerk's default prior to entry of default judgment, or to directly appeal the default judgment. DE 40 at 15-17.

Appellants acknowledged that to set aside a default judgment for excusable neglect pursuant to Rule 60(b)(1), they bore the burden to "establish that (1) [they] had a meritorious defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply to the

complaint." DE 40 at 15. As to the requirement of establishing a meritorious defense, Appellants denied advertising or selling "inferior products" and selling "any 'Adidas' products, deny selling Adidas footwear," and denied that the alleged infringement was willful. DE 40 at 16. These denials cite the declarations of Long Zhang and Xingyuan Jiang for factual support. *Id.* The factual assertions in the Zhang and Jiang Declarations go primarily to the issue of service, and other than admitting to selling accused product, do not address any facts relevant to the merits of the underlying infringement claims. DE 40-3 at ¶ 9 (Zhang Declaration) DE 40-4 at ¶ 9 (Jiang Declaration). The Motion did not cite any case law or make any legal argument as to any of the four prongs required to prove a violation of 15 U.S.C. § 1114, nor to any of the seven factors required to assess the likelihood of confusion prong. DE 40 at 15-16.

As to the prejudice prong, Appellants argued, in a single paragraph, that adidas was protected by the TRO and Appellants "have maintained and continue to maintain records as to the sale so the allegedly infringing products, and have

furnished them to both Plaintiff and the Court." DE 40 at 16. However, the Zhang and Jiang declarations did not attach the sales records they purported to attach. DE 40-3; DE 40-4.

### *F. adidas Opposes Rule 60 Relief.*

In response, adidas provided both argument and evidence opposing the motion on both 60(b)(4) and 60(b)(1) grounds. DE 43, 43-1.

As to Rule 60(b)(4), adidas argued that Appellants were properly served because the Hague Convention does not apply where a defendants' physical address is unknown. DE 43 at 8. In addition, even if the Hague Convention did apply, service by email complied with that treaty's rules because China's objection to Article 10 service only applied to postal channels. DE 43 at 14. adidas also argued that Federal Rule of Civil Procedure 4(f)(3) grants courts broad discretion to authorize service by alternative means so long as such service is "not prohibited by international agreement" and provides due process. DE 43 at 14.

In response to the Motion to set the judgment aside pursuant to Rule 60(b)(1) for excusable neglect, adidas argued

that Appellants merely made a general denial of adidas' allegations, and thus did not assert a meritorious defense. DE 43 at 15. As to prejudice, adidas argued that Appellants had the knowledge and ability to respond to the complaint at the very least prior to entry of the default judgment, as evidenced by the fact that they appeared through counsel prior to the entry of the default judgment. DE 43 at 16.

adidas also provided evidence of prejudice, including a sworn assertion that material changes had been made to the websites at issue, that IP records of third-party hosts were likely deleted due to the delay, and that at least one of the Appellants had continued to sell the accused product under different aliases after the TRO had been entered. DE 43 at 15-16, DE 43-1 at 5, ¶ 11. adidas also offered evidence that Website Owners, and specifically both their counsel and the affiants, were actively participating in at least four other intellectual property infringement actions against them and thus were well-acquainted with the United States legal system. DE 43 at 18.

### *G. The District Court in Its Discretion Denies the Motion to Set Aside the Default Judgment.*

The District Court denied the Rule 60 Motion. DE 45. The Court found that Due Process principles and Florida's long-arm statute both supported finding personal jurisdiction over the Website Owners. DE 45 at 5-10, citing § 48.193, Fla. Stat.

The District Court also ruled that service of process on Website Owners was proper. Recognizing its discretion under Fed. R. Civ. P. 4(f)(3), the District Court found that the method of service it had ordered provided reasonably calculated notice and the opportunity to be heard. DE 45 at 11-12. The District Court also determined that China had not expressly objected to service via email or website posting, allowing the District Court to order alternative service using those means. DE 45 at 12. The Court held that a signatory nation's objection to alternative service methods "is expressly limited to those means" stated in the objected-to article – that is, to service by postal mail. DE 45 at 12. The District Court therefore followed "the majority view" that "China's objection to the alternative means of service in Article 10 does not preclude service by e-mail or website

posting." DE 45 at 13. Because it found service of process valid, the District Court declined to find the judgment void and refused to set it aside.

The District Court also carefully considered the request to set aside the judgment for excusable neglect pursuant to Fed. R. Civ. P. 60(b)(1). DE 45 at 13-15. The Court recognized that each Website Owner bore the burden of showing that "(1) it had a meritorious defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply to the complaint." DE 45 at 13-14, citing *E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990).

Noting that the Website Owners' counsel had appeared prior to entry of default judgment yet failed to act "until *five months* after the final judgment was entered," the Court rejected the Website Owner's argument that purported settlement negotiations excused their months-long inaction. DE 45 at 14 (emphasis in original). Because Website Owners fail[ed] to show good cause for their delay," the District Judge declined to set aside the default judgment. DE 45 at 14.

## II. Statement of the Standard of Review

This Court applies different standards of review to the denial of Rule 60 motions to set aside judgment, depending on the subsection of Rule 60 at issue. The denial of a motion to set aside judgment for excusable neglect under Rule 60(b)(1) is reviewed for an abuse of discretion. *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009). The denial of a motion to set aside a void judgment is reviewed de novo, because "insufficient service of process under Rule 60(b)(4) implicates personal jurisdiction and due process concerns," and the purpose of service of process is to ensure "notice reasonably calculated, under all the circumstances, to apprise interested parties of the ... action and [to] afford them an opportunity to present their objections. *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003) ("*Valdez*"). Because due process and the opportunity to present objections is the core of the requirement that a defendant be afforded service of process, "objections to personal jurisdiction…are generally waivable." *Id.* citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites*

*de Guinee*, 456 U.S. 694, 705 (1982). The District Court's factual findings are reviewed for clear error.

This Court may affirm for any reason supported by the record, even if not relied upon by the District Court. *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1300 (11th Cir. 2018) (applying principle in trademark infringement action); *Kasbekar v. Ivy Station Cmty. Ass'n, Inc.*, No. 20-10620, 2022 WL 17247551, at *3 (11th Cir. Nov. 28, 2022) (applying principle in action challenging validity of judgment), both citing *United States v. Hall*, 714 F.3d 1270, 1271 (11th Cir. 2013).

## SUMMARY OF THE ARGUMENT

The District Court acted well within its discretion in refusing the Website Owners' unsupported attempts to set aside the entry of default judgment five months after it was entered and almost seven months after they first appeared.

Appellants had two attorneys appear prior to the deadline to respond to the motion for default judgment, yet remained silent, watching as the court entered judgment, the deadline to appeal passed, and five months more. By appearing and demonstrating actual notice and then taking no action, the

Website Owners intentionally waived any challenge to service of process, and this waiver alone is sufficient to affirm, without need for further inquiry into the contours of the Hague Convention.

The District Court in any event properly analyzed Articles 1 and 10 of the Hague Convention, and China's objections pursuant to Article 10. The Hague Convention on its face does not apply in a case such as this one when a defendant's address is unknown, so China's objection to service by postal channels pursuant to Article 10 cannot be read to prohibiting service by email and website. The "new" authority the Website Owners raise to this Court is not new at all, and because it was not brought to the District Court's attention it should not be considered here. But even if considered, China cannot by fiat stretch the definition of "postal channels" in the Hague Convention to include email and website delivery. On its face, the Hague Convention does not prohibit the service of process procedures ordered by the District Court, and therefore the District Court properly exercised its right to fashion a method of service that ensured due process. The Website Owners had

actual notice of this case in time to oppose entry of default judgment, and so were afforded the process they were due. The judgment is not void.

Finally, the District Court applied the correct excusable neglect test and acted well within its discretion in refusing to find excusable neglect based on alleged settlement negotiations given local rules regarding stipulations and extensions, and the Website Owners' extensive five-month delay. Website Owners did not make even a plausible showing of either a meritorious defense or lack of prejudice, and so no remand is necessary.

The District Court's denial of the Motion to Set Aside the Default Judgment should be affirmed.

## ARGUMENT

### I. Appellants Waived Any Challenge to Service of Process by Appearing in the Action and Failing to Take Any Steps to Prevent Entry of Default Judgment.

Objections to service of process "like any other objection to jurisdiction over the person, can be waived by the party over whom jurisdiction is sought." *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990) (finding waiver because by

failing to timely object as required under Fed. R. Civ. P. 12, a party "consents to the litigation of the action in that court"). Personal jurisdiction has two interrelated components:

> amenability to jurisdiction and service of process. Amenability to jurisdiction means that a defendant is within the substantive reach of a forum's jurisdiction under applicable law. Service of process is simply the physical means by which that jurisdiction is asserted.

*Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852, 855 (11th Cir. 2010), quoting *Prewitt Enterprises, Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 925 n. 15 (11th Cir. 2003). Appellants have waived any objection to amenability to jurisdiction. Appellants' Brief at 7 n.2. So, the only question remaining is whether service of process was effected, or if not otherwise valid, was nonetheless waived.

The purpose of service of process is to ensure that the defendant is afforded due process – that is, that the defendants receive notice "reasonably calculated, under all the circumstances, to apprise interested parties of the ... action and [to] afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314

(1950). The notice to the defendant must "be of such nature as reasonably to convey the required information...and it must afford a reasonable time for those interested to make their appearance." *Id.* (citations omitted). Thus, the requirement of service of process pursuant to Fed. R. Civ. P. 4, "is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *Sanderford v. Prudential Ins. Co. of Am.*, 902 F.2d 897, 900 (11th Cir. 1990).

A defendant that "ignores faulty service of process might be found to have waived one component of personal jurisdiction: the defense of improper service of process" *Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852, 855 (11th Cir. 2010).

A party can waive the requirement of service of process "if he or she has entered an appearance" prior to the entry of default judgment. *Baragona,* 594 F.3d at 854. It is only if a defendant has not appeared that it is "free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding." *Id.*

Factually, this case closely parallels the facts under which this Circuit found a party waived his objection to service of process in *Sanderford v. Prudential Ins. Co. of Am.*, 902 F.2d 897, 901 (11th Cir. 1990). The appellant in Sanderford challenged a defect on the face of a summons, but only after the appellant received a copy of the complaint and had "complete and total knowledge of" the claims against him. *Id.* at 901. Specifically, the defendant in *Sanderford* had received the complaint and "the first of what proved to be many notices of a possible default judgment." *Id.* at 901. With full knowledge of the pending default, the *Sanderford* defendant failed to take any steps to prevent the entry of default judgment against him. *Id.* Instead, the court held that defendant's "studied indifference and deliberate inaction" in the face of clear notice that default judgment was pending against him proved he was not prejudiced by the alleged defect in service. *Id.* at 901. The Court thus found the *Sanderson* appellant waived his objection to service of process.

Similarly, here, Appellants had clear knowledge of the case against them, appeared through two different counsel ensuring

they would have notice of all future filings in the case, and failed to take any steps to oppose or avoid entry of default judgment. They then waited an additional five months before adding a third lawyer, and then an additional 8 days before finally seeking to set aside the judgment. Here, the very fact that counsel appeared and received ECF notices from that point forward removes any argument that Appellants lacked notice of the proceedings. Instead, Appellants failure to take action to prevent entry of default judgment after appearing "was voluntary and intentional....It was an essential part" of their strategy "to permit a default judgment." *Wells v. Rockefeller*, 728 F.2d 209, 213 (3d Cir. 1984). When a party undertakes such a strategy, it does so at its own risk, and "must now live with the consequences," making this case "quite unlike" those where default judgments should be set aside in difficult situations. *Id.*

Because the Court may affirm for any reason supported by the record, even if not relied upon by the District Court, the Court can simply end its analysis with a finding of waiver and affirm without addressing the other issues raised on appeal.

*Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1300 (11th Cir. 2018).

## II. Service by Website and Email Provided Appellants with Adequate Due Process and Actual Notice, so the Judgment is Not Void.

"Voidness for purposes of a 60(b)(4) motion contemplates lack of jurisdiction *or* defects in due process that deprive a party of notice or an opportunity to be heard." *Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*, 788 F.3d 1329, 1338 (11th Cir. 2015) (emphasis added). A void judgment is "one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010). Relief under Rule 60(b)(4) is appropriate "only for the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction." *Id.* at 271. If due process is met, the lack of formal service of process does not require reversal. *Id.*

Federal Rule of Civil Procedure 4(f) creates a framework for providing due process in serving individuals in foreign countries. Fed. R. Civ. P. 4(f). Specifically, it provides three

different avenues for such service: First, service may be made "by any internationally agreed means of service" such as the Hague Convention. Fed. R. Civ. P. 4(f)(1). Second, if there is no applicable internationally agreed means, the rule sets forth several ways to serve in compliance with the foreign country's law, including by mail that requires a signed receipt, "unless prohibited by the foreign country's law." Fed. R. Civ. P. 4(f)(2). Finally, the rule gives courts broad flexibility to, within the bounds of due process, allow service "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3).

Service of process under Hague Convention procedures regarding service by a central authority, while intended to "simplify, standardize, and generally improve the process of serving documents abroad," is not required if the Hague Convention does not apply so long as the court ensures due process by other non-prohibited means. *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017); *see also Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 708 (1988)(finding

service on foreign company via its U.S.-based agent sufficient and outside the scope of Article I of the Hague Convention).

Rather, under Fed.R.Civ.P. 4(f)(3), the only question is whether service by email or web posting is expressly prohibited "by international agreement." Rule 4(f)(3), "is an equal means of effecting service of process" and does not require a party first attempt service via subsections (1) or (2). *See, e.g.*, *Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). As this Court has explained, "[i]f a party cannot, or chooses not to, serve a defendant abroad using one of the methods specified in Rule 4(f)(1)"—including the Hague Convention, where applicable—"the party may accomplish service by other means," as set forth in Rule 4(f)(3). *De Gazelle Group, Inc. v. Tamaz Trading Establishment*, 817 F.3d 747, 750 (11th Cir. 2016).

Here, service of process was adequate for several reasons: (1) The Hague Convention does not apply because Defendants' address is unknown, (2) China's participation in the Hague Convention does not forbid service by email and website posting; and (3) the District Court acted well within its

discretion in crafting an alternative basis for service that ensured due process.

### *A. The Hague Convention Does Not Require Service via the Central Authority Because the Convention Does Not Apply Where a Defendant's Address is Unknown.*

Appellants simply assume that the Hague Convention requires service via the Central Authority in this matter, but the District Court never made such a holding. *See* Appellant's Brief at 28. Instead, the District Court determined that alternative service adequately protected due process under Federal Rule of Civil Procedure 4(f)(3) because the method of service requested—U.S.-based website and notification of that website via email to known email addresses —are not expressly prohibited by international agreement (including the Hague Convention). DE 45 at 11-13.

Article I of the Hague Convention states that the "convention shall not apply where the address of the person to be served with the document is not known." Hague Convention, Art. 1, 20 U.S.T. 361 (1969). adidas expressly alleged, in requesting service by alternative means pursuant to Rule 4(f)(3), that it had investigated the Websites and had been unable to

identify a valid address for service of process. DE 9 at 16; DE 9-2 at 4, ¶ 7. Indeed, this Circuit has invalidated service purportedly made on the central authority pursuant to the Hague Convention when the defendant proved that his address was unknown. *Winston v. Walsh*, 829 Fed. Appx. 448, 450 (11th Cir. 2020).

Appellants' own cited cases acknowledge that the Hague Convention does not apply, and service via the Hague Convention's central authority framework is not required (or permitted), when a defendant's address is unknown. For example, the *Fox Shriver* case cited by Appellants (at 20) expressly found that "service by email is permissible where the Hague Convention does not apply, and the Hague Convention is inapplicable where 'the address of the person to be served is not known to the party serving process.'" *Fox Shiver LLC v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule A to the Complaint*, No. 23-CV-1898 (JPO), 2024 WL 230748, at *2 (S.D.N.Y. Jan. 22, 2024) (emphasis added) (allowing service of process by email as to defendants whose physical addresses

were unknown); see also *Winston v. Walsh*, 829 Fed. Appx. 448, 450 (11th Cir. 2020) (cited in Appellants' Brief at 17).

Moreover, Appellants have waived the opportunity to brief the applicability of the Hague Convention by failing to raise it. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority"). Because Appellants' brief does not "plainly and prominently" brief the applicability of the Hague Convention when an address is not known, it cannot challenge this interpretation of the Hague Convention now. *Adler v. Duval County Sch. Bd.*, 112 F.3d 1475, 1480 (11th Cir. 1997) (Noting claim was waived on appeal because it was not included in the statement of issues or in any substantive argument).

Because the Hague Convention does not allow for service by the Central Authority on these facts, the only question is whether international agreement prohibits service by email and website posting. The trial court correctly concluded it does not.

### *B. No International Agreement Prohibits Service in China by Email and Website.*

By choosing to order alternative service pursuant to Rule 4(f)(3), the District Court held that such service was proper because "according to a majority of courts," including in the Southern District of Florida, (1) "alternative means of service such as e-mail that are unmentioned by the Hague Convention are not prohibited if the receiving state has not objected to that alternative form of service" (internal citations omitted) (DE 45 at 12-13); and (2) "China's objection to the alternative means of service in Article 10 does not preclude service by e-mail or website posting." (DE 45 at 13). The District Court had broad discretion in ruling on alternative service under Rule 4(f)(3) and did not abuse its discretion in relying on binding precedent and the majority view among federal courts.

Courts within this Circuit, including in the Southern District of Florida, have long adhered to the majority opinion that "the Hague Convention … does not specifically preclude service by email and electronic publication on a website." *Canada Goose Inc. v. Partnerships & Unincorporated*

*Associations Identified on Schedule "A"*, No. 1:25-CV-22730-RS, 2025 WL 2831341, at *1 (S.D. Fla. June 24, 2025) (the Hague Convention does not expressly object to service via email), citing *Stat Med. Devices, Inc. v. HTL-Strefa, Inc.*, Case No. 15-cv-20590-FAM, 2015 WL 5320947, at *3, 2015 U.S. Dist. LEXIS 122000, at *8-9 (S.D. Fla. Sept. 14, 2015) (noting that an objection to the alternative forms of service set forth in the Hague Convention is limited to the specific forms of service objected to); *see also Nat'l Academy of TV Arts & Sciences, Inc. v. Jin Xin*, No. 24-62281-CIV-DAMIAN, 2025 WL 2840577 at *2, 2025 U.S. Dist. LEXIS 201892 (S.D. Fla. July 24, 2025) (same); and *Brookshire Bros. v. Chiquita Brands Int'l, Inc.*, No. 05-cv-21962, 2007 WL 1577771 at *2, 2007 U.S. Dist. LEXIS 29495 *2 (S.D. Fla. May 31, 2007) (denying motion to quash service made by alternative means because alternative means afforded due process).

Indeed, the majority of federal courts across the country who have considered this issue agree. *Factory Direct Wholesale, LLC v. Henglin Home Furnishings Co., Ltd.*, No. 2:24-cv-07118-CAS-PDx, 2024 WL 5413653 at *3, 2024 U.S. Dist. LEXIS

239928 *7-8 (C.D. Cal. Nov. 25, 2024) ("the majority view is that, without an express objection by a signatory to the Hague Convention to the method of service proposed, the method … is permissible" and citing cases); *Regeneron Pharms, Inc. v. Celltrion, Inc.*, No. 1:23-cv-89; 1:23-cv-94; 1:23-cv-97, 2024 WL 4958304 at *3, 2024 U.S. Dist. LEXIS 177775 (N.D. W. Va. Sept. 30, 2024) (finding the Convention "does not address and therefore does not prohibit service via email"); *Compania De Inversiones Mercantiles S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F. 3d 1269, 1294 (10th Cir. 2020) (allowing service via email under Rule 4(f)(3) because the "Convention does not contain a specific prohibition on this form of service"); *Lexmark Int'l Inc. v. Ink Techs. Printer Supplies, LLC*, 295 F.R.D. 259, 261-62 (S.D. Ohio 2013) (same; citing cases); *Gurung v. Malhotra*, 279 F.R.D. 215, 219 (S.D.N.Y. 2011) ("Where a signatory nation has objected to only those means of service listed in Article X, a court acting under Rule 4(f)(3) remains free to order alternative means of service that are not specifically referenced in Article X"); *MacLean-Fogg Co. v. Ningbo Fastlink Equp. Co.*, No. 08 CV 2593, 2008 WL 5100414 at *2, 2008 U.S.

Dist. LEXIS 97241 (N.D. Ill. Dec. 1, 2008) (holding service via email per Rule 4(f)(3) appropriate because the "Hague Convention does not prohibit service by e-mail ...."); *Popular Enters. LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004) (authorizing service via email under Rule 4(f)(3)).

Ignoring all of these cases to the contrary, Appellants rely heavily on an unpublished outlier Third Circuit case that it failed to bring to the District Court's attention to argue otherwise. *Sec. & Exch. Comm'n v. Lahr*, No. 22-2497, 2024 WL 3518309, at *4, 2024 U.S. App. LEXIS 18170 (3d Cir. July 24, 2024)). First, *Lahr* is inapplicable because it was a case where the defendant's address was known. *Id.* at *4. As courts must, the *Lahr* court recognized that "the Convention does not apply "where the address of the person to be served with the document is not known." *Id.* Second, *Lahr* does not comport with Eleventh Circuit and Supreme Court binding precedent, because it elevates the form of "service of process" over the function of due process. *Compare Id.* at n.8 (stating that a judgment entered without proper service is "a fortiori void") with

*Sanderford v. Prudential Ins. Co. of Am.*, 902 F.2d 897, 900 (11th Cir. 1990) (Rule 4 "is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint") and *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010) (relief under Rule 60(b)(4) is appropriate "only for the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction."). Rather than follow *Lahr*, this Court should align with the vast majority of case law – and common sense – and conclude that objection to service by "postal channels" under Article 10 does not preclude service by email.

1. *China's objection to service via physical mail in Article 10 is not an express objection to service via email.*

adidas does not dispute that China is a signatory to the Hague Convention. Appellants' Brief at 15-16, DE 9-3 at 4-5, DE 9-3 at 8; 12-16. Nor does it dispute that China can and has served documents via its Central Authority, or that the Central Authority is allowed to set its own rules for how it will serve documents via that Central Authority. Appellants' Brief at 17. Nor does it dispute that Article 10 of the Hague Convention

allows signatories the freedom to "send judicial documents, by postal channels," so long as "the State of destination does not object," or that China has objected to service by postal channels. Appellants' Brief at 18; DE 9-3 at 4-5, DE 9-3 at 8; 12-16. But as the structure of the Hague Convention makes clear, an objection to the service of judicial documents "by postal channels" pursuant to Article 10 does not equate to an express objection to email service, particularly when the defendant's address is unknown.

The actual text of China's Declaration states that China opposes "the service of documents in…China by the methods provided by Article 10 of the Convention," DE 9-3 at 12 (copy of declaration provided by adidas to support its Service Motion). Article 10 speaks only to the "freedoms to send judicial documents, by postal channels, directly to persons abroad." DE 9-3 at 2. Under the supremacy of text principle, the Court must derive the purpose of Article 10 and of China's Declaration "from the text, not from extrinsic sources such as legislative history or an assumption about the legal drafter's desires." A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal*

*Texts* 64 (2012). Thus, the courts are bound by what Article 10 actually states – that it addresses delivery "by postal channels" – and cannot accept China's decades-later statement that it intends its objection to "postal channels" to encompass service by email or website publication. *Id.*

The focus on "postal channels" makes particular sense when read together with Article 1 of the Hague Convention, which expressly states that the "convention shall not apply where the address of the person to be served with the document is not known." Hague Convention, Art. 1, 20 U.S.T. 361 (1969). Postal channels go hand-in-hand with known addresses to which a posted envelope can be sent. This Court has expressly held that where the address is not known, service of process through the Central Authority cannot be made, because of this Article 1 exclusion. *Winston v. Walsh*, 829 Fed. Appx. 448, 450 (11th Cir. 2020).

Thus, the plain text of Article 10 and China's objection pursuant to Article 10 does not forbid service by email. The text of the provision "necessarily contemplates sending documents through the post, which in common parlance cannot be

construed to include e-mail either in text or in spirit given the dissimilarities between e-mail and traditional mail." *Genus Lifesciences Inc. v. Tapaysa Eng'g Works Pvt. Ltd.*, No. 20-CV-3865, 2021 WL 915662, at *4 (E.D. Pa. Mar. 10, 2021). Unlike traditional mail, "the instantaneous and traceable nature of email cures the concerns with postal service." *Chanel, Inc. v. HandbagStore*, No. 20-CV-62121, 2021 WL 3060329, at *10 (S.D. Fla. June 30, 2021), *report and recommendation adopted sub nom. Chanel, Inc. v. Handbag Store*, No. 20-CIV-62121-RAR, 2021 WL 3053396 (S.D. Fla. July 20, 2021).

Most courts have correctly found that an objection to service by "postal channels" under Article 10 does not equate to an express objection to email service. See, e.g., *Tesla, Inc. v. Individuals*, Civil No. W-24-cv-00172-ADA, 2024 U.S. Dist. LEXIS 246713 *7 (W.D. Tex. Apr. 19, 2024) (allowing email service because "Rule 4(f)(1) and the Hague Convention do not displace Rule 4(f)(3), and a country's objection to Hague Agreement service via postal channels is not the equivalent of an international agreement expressly prohibiting email service"); *Goddess Approved Productions, LLC v. Wolox*, No. CV

20-1697 (MN), 2021 WL 11678467, at *3, 2021 U.S. Dist. LEXIS 267115 *6-7 (D. Del. Aug. 11, 2021) ("a strong majority" of District Courts "have concluded that a country's objection to Article 10 does not equate to an objection to email service"); *Patrick's Rest., LLC v. Singh*, No. 18-cv-00764 (ECT/KMM), 2019 U.S. Dist. LEXIS 2535 *8 (D.Minn., Jan. 7, 2019) (same).

Looking specifically at service into China, several courts have applied this same analysis and held that service on Chinese nationals pursuant to Rule 4(f)(3) is permissible so long as due process is otherwise met. *See, e.g.*, *Hangzhou Chic Intelligent Tech. Co. v. Partnerships & Unincorporated Associations Identified on Schedule A*, No. 20 C 4806, 2021 WL 1222783, at *3 (N.D. Ill. Apr. 1, 2021); *Jackson Lab. v. Nanjing Univ.*, No. 1:17-CV-00363-GZS, 2018 WL 615667, at *3 (D. Me. Jan. 29, 2018); *Rubie's Costume Co., Inc. v. Yiwu Hua Hao Toys Co., Ltd.*, No. 2:18-CV-01530-RAJ, 2019 WL 6310564, at *3 (W.D. Wash. Nov. 25, 2019) (citing several other cases allowing service by email or Facebook message to Chinese nationals because "[d]espite China's objection to Article [10], numerous courts have held that Article [10] does not prohibit service by

electronic communication."); *Emqore Envesecure Private Cap. Trust v. Singh*, No. 20-7324 (KM) (JBC), 2020 U.S. Dist. LEXIS 260456 *6 (D.N.J. July 9, 2020)) (service to China and other countries via email not prohibited because "[w]here a signatory nation has objected to only those means of service listed in Article 10, a court acting under Rule 4(f)(3) remains free to order alternative means of service that are not specifically referenced in Article 10" but requiring a stronger showing of due process before allowing such service).

2. *The Website Owners Waived Any Reliance on the "New" Chinese Guidance Because They Failed to Raise It Prior to the District Court's Decision.*

The Website Owners argue for the first time on appeal that the Chinese government has, "[s]ince the district court's decision," stated that its Article 10 objection to service by mail "extends to electronic service." Appellants' Brief at 21. But this guidance was dated March 21, 2025 ("the March Guidance") – approximately three months before the District Court ruled on the Rule 60 Motion. DE 45 at 15 (order dated June 30 and docketed July 1, 2025). The Website Owners made no attempt to bring this new information to the District Court's attention

prior to its ruling. They did not seek leave to file a reply or otherwise seek to supplement their motion. See Appendix Tab A (Docket).

This Court has made clear that "when there is a relevant change in the law before entry of final judgment, a party generally must notify the district court; if the party fails to do so, it waives arguments on appeal that are based on that change in the law." *Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146, 1152 (11th Cir. 2011). The same is true if the change comes while post-judgment motions are pending. *Id.*, *citing Rentrop v. Spectranetics Corp.*, 550 F.3d 1112, 1117 (Fed. Cir. 2008). Thus, by failing to bring the March Guidance to the trial court's attention before it ruled, the Website Owners have waived any reliance on it as authority. *Douglas Asphalt Co.*, 657 F.3d at 1152.

3. *This Court Must Adhere to the Terms of the Treaty, and China Cannot Expand Those Terms via an Administrative Interpretation.*

Even if considered, the March Guidance does not change the analysis. To the extent the March Guidance is an administrative agency's attempt to interpret an allegedly

ambiguous treaty term, the Supreme Court has made clear that courts should not merely defer to an agency's interpretation but rather must use the tools of statutory interpretation at its disposal to discern meaning. An agency's interpretation of a statute "cannot bind a court," *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 402 (2024). In the same way, the March Guidance does not bind this Court. Instead, the Court is required to interpret the terms of the treaty the same way it would interpret a statute: by starting with its text and applying general principles of interpretation. *Medellin v. Texas*, 552 U.S. 491, 506 (2008), *Id.* at 517. And as already set forth in Part II.A. above, the District Court correctly applied those principles in interpreting the Hague Convention and finding service of process proper.

### ***C. The Website Owners Waived Any Argument that They Were Deprived of Due Process; They Had Actual, Reasonable Notice.***

Due process requires that a party be given "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent.*

*Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Notice need not take a particular form, so long as it otherwise meets the test for due process. *In re Le Ctr. on Fourth, LLC*, 17 F.4th 1326, 1335 (11th Cir. 2021). And actual notice of all relevant information is "sufficient to satisfy due process." *Id.*, citing *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) (Upholding denial of Rule 60 relief from "void" judgment for failure to follow service of process procedure, because actual notice "more than satisfied" the requirements of due process).

The phrase "due process" does not even appear in Appellants' brief: They have waived any claims that they were not afforded due process. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). Nonetheless, the notice given was reasonably calculated to give the Website Owners\Defendants an opportunity to be heard, they had notice in time to participate in the proceedings, and chose not to do so.

The notice given by adidas, as the District Court allowed in its broad discretion pursuant to Rule 4(f)(3), was both reasonably calculated to give the Website Owners notice of the

claims against them, and afforded them an opportunity to present their objections. adidas' request to serve the Website Owners via email and U.S.-based website was supported by significant evidence that email was the best way to reach them. DE 9. Supported by extensive declarations, adidas showed that in order to receive payment for goods they sell, the Website Owners are required by PayPal to consent to receive all communications electronically and are required to maintain a valid email address. DE 9 at 4. Prior to service, adidas identified 3 email addresses for localityi.com, and one for mediumspots.com. DE 9 at 18. adidas successfully placed orders with those stores. DE 9 at 6. adidas created a serving notice website where it posted every document in the case as it was docketed, allowing them to "access all electronic filings to view, print, or download." DE 9 at 12; DE 9-2 at 4. The District Court expressly found that service by email would satisfy due process because it is the "most likely means of communication to reach Defendants, who operate via the Internet and rely on electronic communications for the operation of their businesses." DE 11 at 3.

Moreover, the record is clear that Website Owners had actual notice of the proceedings in time to prevent the entry of default judgment. Website Owners never allege that they did not *receive* the summons and complaint. The declarations of Zhang and Jiang both just make the identical statement that to their knowledge, "the Company was not served through the Central Authorities or China" – studiously avoiding any statement as to whether they received the documents or emails notifying them of the documents. Zhang Decl. ¶ 11, DE 40-3 at 3; Jiang Decl. ¶ 11, DE 40-4 at 3. Two of their attorneys appeared before the Court on June 4, 2024 (DE 33, DE 34), in time to respond to the motion for entry of default judgment, and in so doing consented to receiving all further notice of all subsequent electronic filings via email notification sent to their counsel. *See* Fed. R. Civ. P. 5(b)(1) (if a party is represented by an attorney, service "must be made on the attorney") and Fed. R. Civ. P. 5(b)(2)(E)(service is completed by sending to a registered user via the court's electronic-filing system). Thus, the Defendants had presumptive actual knowledge of each and every filing on the docket no later than June 4, 2024.

### III. The District Court Applied the Correct Test and Acted Well-Within Its Discretion in Refusing to Find Excusable Neglect.

Although the law favors resolution of legal disputes on the on the merits, relief under Rule 60(b) is at the expense of the strong public policy in favor of finality of judgments. *Bros. Inc. v. W. E. Grace Mfg. Co.*, 320 F.2d 594, 610 (5th Cir. 1963)[3] ("policy of finality is, and should be, strong" barring unusual circumstances). Thus, "[t]he Rule 60(b) movant's burden is a heavy one on appeal." *Grant v. Pottinger-Gibson*, 725 F. App'x 772, 776 (11th Cir. 2018). "[I]t is not enough that a grant of the [Rule 60(b) motion] might have been permissible or warranted; rather, the decision to deny the motion[ ] must have been sufficiently unwarranted as to amount to an abuse of discretion." *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984).

To set aside a default judgment based on excusable neglect the defendant must "establish that (1) it had a meritorious

---

[3] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent the decisions the former Fifth Circuit rendered prior to October 1, 1981.

defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply to the complaint." *Architectural Ingenieria Siglo XXI, Ltd. Liab. Co. v. Dominican Republic*, 788 F.3d 1329, 1343 (11th Cir. 2015). The Supreme Court has expounded that the good reason portion of the excusable neglect analysis includes considering "the length of the delay and its potential impact on the judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." DE 45 at 4, *citing Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 398 (1993) (numbers added).

### *A. Safari* Does Not Mandate Detailed Consideration of All Three Factors When There is No Good Reason for a Long Delay.

Relying on this Court's unpublished opinion in *Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 Fed. Appx. 737, 744 (11th Cir. 2017), Appellants argue that a District Court can never deny Rule 60(b)(1) relief unless it exhaustively discusses all prongs of the excusable neglect test. Appellants' Brief at 29.

This argument fails for two reasons. First, because *Safari* is an unpublished opinion, it is not binding, and should only be considered for its persuasive value, if any. *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007) ("Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants").

Second, *Safari* is not even persuasive here because it does not stand for proposition Appellants urge this Court to adopt. Rather, on the unique facts before it, the *Safari* Court noted that a district court in considering the excusable neglect standard is making an equitable determination, considering "the totality of the circumstances surrounding the party's omission." *Safari,* 686 Fed. Appx. at 743. While the Court in *Safari* emphasized a holistic approach, it nonetheless reiterated that "the lack of good reason combined with the length of delay ***may in some cases*** preclude relief under Rule 60(b)(1)." *Id.* at 744 (emphasis added). This must be so, because prior panels in published decisions have upheld the denial of a Rule 60 motion even though the district court did not discuss factors other than the movant failing to establish a good reason for the delay. *See,*

*e.g., Florida Physician's Ins. Co., Inc. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993). However, based on the unique facts before it, the *Safari* Court found defendant's misapprehension of the complicated facts, and the circumstances surrounding the delay, could potentially support a finding of excusable neglect if considered with the other factors, and thus remanded for the district court to consider the other factors of meritorious defense and prejudice. *Id.* at 747.

*Safari* is also not persuasive "because its facts are materially different from this case." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 n. 7 (11th Cir. 2007). In *Safari*, the plaintiff had advanced two nearly identical suits against the defendant, had signaled that it intended to drop the first suit, and thus the defendant, upon receiving service of process in the first suit, believed those documents "were for a lawsuit that had been dismissed or withdrawn." *Safari*, 686 Fed. Appx. at 741. The *Safari* plaintiff changed course and sought default in the first suit. *Id.* While the district court found the defendant had waited four months from service to appear through counsel, the appellate court explained that the

defendant foreign corporation had attempted to notify the court of the confusion prior to entry of judgment the day after it learned of the default in an unauthorized *pro se* filing, and the district court did not give the foreign entity time to secure counsel, as the law requires. *Id.* at 746. The trial court instead struck the *pro se* letter and entered default judgment eight days after receiving the *pro se* filing. *Id.* at 740. Moreover, the defendant in *Safari* timely appealed the final default judgment and filed its Rule 60(b)(1) motion – accompanied by a proposed answer and affirmative defenses, and evidence supporting the alleged defenses – two days after filing the notice of appeal. *Id.*at 741.

Here, by contrast, there was no second lawsuit causing confusion as to whether the case was going forward. Unlike in *Safari*, Appellants not only had full knowledge of which court had pending claims against them but had *two separate U.S. counsel* appear prior to the entry of default judgment, only to take no action to prevent entry of default judgment, and still yet take no action for an additional five more months. DE 45 at 14.

### *B. The District Court Acted Well Within Its Discretion in Finding Appellants Failed to Establish Good Cause for Delay.*

Moreover, the District Court acted well within its discretion in determining that alleging ongoing settlement negotiations, without more, "is insufficient to establish good cause for the delay." DE 45 at 14, citing *Valdez*, 328 F.3d at 1297–98 (affirming dismissal where defendant failed to demonstrate "good reason" under Rule 60(b)(1) for failing to move to set side judgment for nearly two months after learning of default judgment). Southern District of Florida local rules make clear that Court will not recognize any agreement between parties unless it is "made before the Court and noted in the record or is reduced to writing." S.D. Fla. L.R. 11.1(6). Thus, in the Southern District of Florida, it is clear that "[r]eliance on a belief that deadlines were extended based on settlement negotiations, without any written agreement or any actual ongoing negotiations, is not good reason for failure to timely respond." *Rivas v. Denovus Corp., Ltd.*, No. 10-22070-CIV-KING, 2010 WL 4102926, at *2 (S.D. Fla. Oct. 18, 2010); *see also Davila v. Alcami Grp., Inc.*, No. 12-23168-CIV, 2013 WL

1934168, at *5 (S.D. Fla. May 9, 2013) ("Defendants' decision not to file a response based on their belief that settlement negotiations would continue was not sufficient for purposes of Rule 60(b)(1).").

Appellants make little effort to argue otherwise. They do not cite, much less attempt to distinguish, the cases relied upon by the District Court in finding the alleged settlement talks insufficient to meet the Rule 60(b)(1) standard. Their only argument is to accuse the trial court of ignoring their alleged "reasonable reliance on representations of Adidas' counsel that settlement discussions would end upon the filing of a Rule 60(b) motion." Appellants' Brief at 33. This argument both ignores that this assertion by Appellants was factually disputed by adidas' counsel, <u>see</u> DE 43 at 16, citing DE 43-1 at ¶ 7, and ignores that local rules require any agreement to extend time or other stipulation to be in writing to be effective precisely to avoid these kinds of disputes. S.D. Fla. L. R. 11.1(6). Because of this Local Rule, the Middle District of Florida cases relied upon by Appellants for the proposition that a Defendant can reasonably

rely on settlement negotiations are inapplicable in the Southern District. Appellants' Brief at 33.

Each of the cases cited by Appellants are further distinguishable because they are in a much different procedural posture: They are decisions on motions to set aside default *prior to entry of default judgment,* and are thus decisions under Fed. R. Civ. P. 55(c) rather than Fed. R. Civ. P. 60(b). "The standard imposed on the defaulting party for setting aside an entry of default is different from and less burdensome than the standard for setting aside a default judgment." *Lawson v. Sutton*, No. 8:16-CV-403-T-17TBM, 2017 WL 40591, at *2 (M.D. Fla. Jan. 4, 2017). *See also Idearc Media LLC. v. Kravitz Law Group, P.A.*, No. 8:09-CV-02078-T-17AE, 2010 WL 2179122, at *2 (M.D. Fla. May 7, 2010), *report and recommendation adopted*, No. 8:09-CIV-2078T17AEP, 2010 WL 2179109 (M.D. Fla. June 1, 2010) ("The excusable neglect standard that courts apply in setting aside a default judgment is more rigorous than the good cause standard that is utilized in setting aside an entry of default"); *Alford v. Spillway Spas, LLC*, No. 6:20-CV-823ORL40GJK, 2020 WL 10054533, at *2 (M.D.

Fla. Aug. 31, 2020) (applying Rule 55(c) good cause standard because default judgment had not yet been entered). But Appellants, though clearly on notice of the default and pending motion for entry of default judgment, failed to take advantage of the "less burdensome" Rule 55(c) standard.

Here, through the lens of the stricter excusable neglect standard, the facts of the unwarranted delay alone are sufficient to support denial of the motion. Appellants' appearance and failure to secure a stipulated extension or move to set aside the default or oppose the motion for entry of default judgment or seek to set default judgment aside for more than five months is not excusable at all and is a waiver. *See* Part I above. And as the Supreme Court made clear in *Pioneer*, clients still "must be held accountable for the acts and omissions of their attorneys." 507 U.S. 380, 396 (1993).

### C. *Even Under Appellants' Overbroad Reading of* **Safari**, *Any Error Would Be Harmless Because Appellants Merely Made Bald Assertions without Evidence as to the other Factors.*

Even if it were an abuse of discretion for the District Court not to discuss the meritorious defense or prejudice prongs in its

order, any purported error is harmless because Appellants did not provide the District Court (or this Court) with evidence or legal argument on either prong. *See* 28 U.S.C. § 2111 ("on the hearing of any appeal…the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties").

1. *Appellants Did Not Even Attempt to Argue a Meritorious Defense on Appeal.*

To show a meritorious defense, a party must provide a defense that "that probably would have been successful" in the action. *United States v. Approximately $299,873.70 Seized From a Bank of Am. Account*, 833 Fed. Appx. 773, 775 (11th Cir. 2020), citing *Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1133 (11th Cir. 1986). "A general denial of liability does not suffice." *Id.*

Appellants' Brief makes no real effort to argue the merit of its purported defenses. Appellants' Brief at 31-33. Instead, they do not make *any* argument about the validity of their defenses, other than to broadly state in a footnote that their actions were not willful. An appellant abandons a claim "either

makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). "[S]imply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue." *Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009).

Even if the Court were to consider the waived arguments made to the trial court, the Website Owners had "not offered anything resembling a meritorious defense" before the District Court, either. *Valdez,* 328 F.3d at 1296 (affirming denial of Rule 60 motion). Appellants offered a scant four paragraphs of argument to the District Court. DE 40 at 15-16. And even then, they only deny that their products were "inferior," that they did not sell "any 'Adidas' products, [and] deny selling Adidas footwear." DE 40 at 16. But the operative complaint alleged more than the sale of footwear, or the sale of product bearing the word mark adidas. DE 1. Both companies were accused of selling athletic bags bearing the adidas "three stripe mark," , and the evidence adidas supplied to secure the Temporary Restraining Order supports that allegation. *See* DE 8-5 at 165;

209. The Defendants cited to their declarations to argue they had a meritorious defense, but those declarations only confirm they did, indeed, sell the accused product in the United States. DE 40-3 at ¶ 9 (Zhang Declaration); DE 40-4 at ¶ 9 (Jiang Declaration). Appellants did not, before the District Court or here, actually put forth a viable defense to the trademark infringement and false designation of origin allegations of the complaint. DE 40 at 15-17; Appellants' Brief at 29-33.

To the extent Appellants argument as to willfulness is not waived by the short shrift it was given in their brief, it is also belied by the record. The District Court had before it significant evidence that Defendants willfully trade on the reputation and goodwill of major brands as a matter of pattern and practice: The same PayPal accounts used by these Website Owners are at issue in at least four other similar trademark infringement litigations pending at the time the motion to set aside was filed, with the same lawyers and affiants appearing as affiants in three of those cases. DE 43-1 at 4; DE 43 at 17.

### 2. *Appellants Failed to Demonstrate a Lack of Prejudice.*

Appellants' single paragraph argument as to prejudice is similarly so paltry as to waive the issue. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). But even its surface-level arguments do not stand up to scrutiny or the reality of the record in this case.

Appellants argue that adidas was "protected" from prejudice by the injunction in place prior to entry of default and that any spoliation of evidence could be dealt with "in the usual manner." Appellants' Brief at 31. But the evidence before the trial court showed that the injunction did not sufficiently protect adidas from the prejudice of lost evidence, which could not be remedied under Federal Rule of Civil Procedure 37(e).

While Appellants argued without evidentiary citation that "there has been no spoliation of evidence," adidas provided the District Court with sworn statements supporting the fact that the websites had been materially altered, and that third-party IP records "have likely been deleted and are no longer subject to forensic examination." DE 43 at 16, citing DE 43-1 at ¶ 11.

Appellants never provided evidence to counter adidas' sworn assertions of spoliation to the District Court, nor do they cite any to this Court. DE 40 at 16 (Defendants' single paragraph argument as to prejudice, without any citation to case law). Appellants' Brief at 31.

Nor could the loss of third-party evidence be "dealt with in the usual manner." Appellants' Brief at 31-32, citing Fed. R. Civ. P. 37(e). Rule 37(e) only applies to spoliation caused by parties – it does not provide a vehicle for correcting the prejudice caused by *third parties* deletion of pertinent evidence in the normal course of business. *See Skanska USA Civil Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1311 (11th Cir. 2023) (Rule 37(e) sanctions require a finding that a *party* deprived another party of necessary information). Rule 37(e) does not protect a party from the prejudice caused by the actions of third parties.

Moreover, there is inherent prejudice caused by delay when it affects the gathering of evidence. In *Valdez*, this Court held that while "not particularly pronounced," prejudice existed as to the non-moving party sufficient to deny a motion to vacate default judgment because the evidence that could have been

obtained from the defaulting party would have been helpful to the underlying case. *Valdez*, 32 F.3d at 1297-98. When evidence-gathering is affected by delay, this Court held "we cannot say that the lack of substantial prejudice to the non-moving party so tips the scale in favor of [the moving party] that we should excuse the barest showing of meritorious defense or to present a good reason for failing to respond." *Id.* Such prejudice caused by delay is exactly the type of prejudice that counsels against finding excusable neglect. *See, e.g., Cobos v. Adelphi Univ.*, 179 F.R.D. 381, 387 (E.D.N.Y. 1998) (finding non-movant would be prejudiced where evidence went stale during movant's multiple-year delay); *In re Guidant Corp. Implantable Defribrillators Prods. Liab. Litig.*, 496 F.3d 863, 867 (8th Cir. 2007) (holding that the movant's delay was prejudicial to non-movant where the delay hindered the non-movant's investigation of the case and thereby gave an unfair advantage to the movant).

Here, remand would be an "idle and useless formality." *Bidi Vapor LLC v. U.S. Food & Drug Admin.*, 47 F.4th 1191, 1209 (11th Cir. 2022). The Website Owners did not provide the

District Court or this Court with evidence sufficient to require a re-assessment of the issues of meritorious defense or prejudice.

## CONCLUSION

Defendants were effectively served process pursuant to Fed. R. Civ. P. 4, as evidenced by their appearance in the case prior to the entry of default judgment. By appearing and then taking no action to prevent entry of default judgment, Defendants waived any objection to service of process. By waiting five additional months before acting, Defendants further failed to meet the strict excusable neglect standard of Fed. R. Civ. P. 60(b)(1) to justify setting aside default judgment. The District Court applied the correct standard in so deciding, and this Court should AFFIRM its sound exercise of discretion.

December 10, 2025


*/s/ Stephen M. Gaffigan*

Dineen Pashoukos Wasylik
Florida Bar No. 0191620
DPW LEGAL
PO Box 48323
Tampa, Florida 33646
Telephone: 813-778-5161
Email: dineen@ip-appeals.com

Stephen M. Gaffigan
Florida Bar No. 025844
STEPHEN M. GAFFIGAN P.A.
401 East Las Olas Blvd.,
Suite 130-453
Ft. Lauderdale, Florida 33301
Telephone: 954-767-4819
Email: stephen@smgpa.cloud

*Attorneys for Appellees adidas, AG,*
*adidas International Marketing B.V., adidas America, Inc.*

## Certificate of Compliance

This document complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B) because, excluding the materials properly excluded by Fed. R. App. P. 32(f), this document contains 12,149 words as counted by the word-processing system used to prepare this document.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Bookman Old Style 14-point type.

*/s/ Stephen M. Gaffigan*
Stephen M. Gaffigan
Florida Bar No. 025844

## <u>CERTIFICATE OF SERVICE</u>

I certify that I served a copy of the foregoing on counsel of record on December 10, 2025 by filing electronically, which generated a Notice of Docket Activity sent to:

Laina C. Lopez
Berliner Corcoran & Rowe LLP
1101 17th Street NW, Suite 1100
Washington, D.C. 20036
(202) 293-9096 (phone)
(202) 293-9075 (fax)
llopez@bcrlaw.com

*<u>/s/ Stephen M. Gaffigan</u>*
Stephen M. Gaffigan
Florida Bar No. 025844