No. 25-12597

# United States Court of Appeals

*for the*

# Eleventh Circuit

ADIDAS AG, ADIDAS INTERNATIONAL MARKETING B.V.,
ADIDAS AMERICA, INC.,

*Plaintiffs-Appellees,*

– v. –

THE INDIVIDUALS, BUSINESS ENTITIES, AND UNICORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, *et al.*,

*Defendants,*

LOCALITYI.COM, MEDIUMSPOTS.COM,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
(HONORABLE RODNEY SMITH, U.S. DISTRICT JUDGE)

## REPLY BRIEF OF APPELLANTS


LAINA LOPEZ
BERLINER CORCORAN & ROWE, LLP
*Counsel for Appellants*
1101 17th Street, NW
Suite 1100
Washington, DC 20036
(202) 293-5555


CP COUNSEL PRESS (800) 4-APPEAL •

## U.S. COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT (CIP)

localityi.com, et al, *vs.* Adidas AG, et al, Appeal No. 25-12597-H

11th Cir. R. 26.1-1(a) requires the appellant or petitioner to file a Certificate of Interested Persons and Corporate Disclosure Statement (CIP) with this court within 14 days after the date the case or appeal is docketed in this court, and to include a CIP within every motion, petition, brief, answer, response, and reply filed. Also, all appellees, intervenors, respondents, and all other parties to the case or appeal must file a CIP within 28 days after the date the case or appeal is docketed in this court. **You may use this form to fulfill these requirements.** In alphabetical order, with one name per line, please list all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party. ***(Please type or print legibly)***:

Adidas AG (Plaintiff/Appellee)

Adidas America, Inc. (Plaintiff/Appellee)

Adidas International Marketing B.V. (Plaintiff/Appellee)

Amgo Technology Co., Limited (mediumspots.com) (Defendant/Appellant)

Chen, Jacob (Counsel for Defendants/Appellants);

Daley, Christine Ann - Counsel for Plaintiffs/Appellees

Gaffigan, Stephen Michael (Counsel for Plaintiffs/Appellees);

Gigante, Virgilio (Counsel for Plaintiffs/Appellees)

Heitner, Darren Adam (Counsel for Defendants/Appellants)

Lopez, Laina C. (Counsel for Defendants/Appellants)(ADDED)

(See attached page for additional interested persons)

Submitted by:

Signature: /s/ Laina C. Lopez

Name: Laina C. Lopez Prisoner # (if applicable): ______________

Address: 1101 17th St NW, Suite 1100, Washington, D.C. 20036

Telephone #: (202) 293-5555

Rev.: 2/23

*Additional Interested Persons:*

Shenzhen Huipeng Network Technology Co., Ltd. (localityi.com) (Defendant/Appellant)

Smith, Hon. Rodney - District Court Judge

Son, Anthony H (Counsel for Defendants/Appellants)

Wiborg-Rodriguez, T. Raquel (Counsel for Plaintiffs/Appellees)

**TABLE OF CONTENTS**

Certificate of Interested Persons……………….……..……………………………..C-1

Table of Contents…………………………..……………………………..i

Table of Authorities……………………………………………..………………ii

Introduction…………………………………………………………..…………1

Argument…………………………………………………….………..……2

I. This Court Ought to Follow The Two Persuasive Circuit Court Opinions To Have Ruled on the Hague Convention Service Issue and Find that the Convention Was Violated, Service Was Ineffective, and the Default Judgment Void…………………………………..………2

A) The Second Circuit Has Joined the Third Circuit in Finding that the Convention Prohibits Service by Alternative Means under Circumstances Similar to Those At Issue Here……..…………2

B) The Hague Convention Applies in this Case, and Actual Notice Does Not Remedy the Defects in Service……………………………7

C) This Court May Consider the Chinese Government's 2025 Guidance, Which Does Not Represent a Change in the Law or an Attempt to "Expand" Treaty Terms………………………………13

D) The Website Owners Did Not Waive A Challenge to Service of Process………………………………………………………15

II. The District Court Abused its Discretion by Failing to Conduct a Fulsome Rule 60(b)(1) Analysis……………..…………………………22

Conclusion………………………………………………………...……27

Certificate of Compliance…………………………………….……………………..29

## TABLE OF AUTHORITIES

**Case(s)** **Page(s)**

*Adler v. Duval Cty. Sch. Bd.*,

112 F.3d 1475 (11th Cir. 1997)………….……………………..………….13

*Aldossari v. Ripp*,

49 F.4th 236 (3d Cir. 2022)……………………………………..………...18

*Animal Sci. Prods. v. Hebei Welcome Pharm. Co.*,

585 U.S. 33 (2018)………………………………………..……...……14

*Architectural Ingenieria Siglo XXI, Ltd. Liab. Co. v. Dominican Rep.*,

788 F.3d 1329 (11th Cir. 2015)……………………………………..……22

*Baragona v. Kuwait Gulf Link Transp. Co.*,

594 F.3d 852 (11th Cir. 2010)..……………………………………..……17

*Bickerstaff Clay Prods. Co. v. Harris Cty*.,

89 F.3d 1481 (11th Cir. 1996)………………………………………...14

*Bidi Vapor LLC v. U.S. FDA*,

47 F.4th 1191 (11th Cir. 2022)……………………………………..….25

*Blessing v. Chandrasekhar*,

988 F.3d 889 (6th Cir. 2021)……………………………………..…17-18

*Colclough v. Gwinnett Pub. Schs*,

734 F. Appx. 660 (11th Cir. 2018*)*……………………………………21

**Case(s)** **Page(s)**

*Coniglio v. Bank of Am., N.A.*,

638 Fed. Appx. 972 (11th Cir. 2016)…………………………..………………26

*Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*,

591 F.3d 1337 (11th Cir. 2009)…………………………..…………………25

**De Gazelle Grp., Inc. v. Tamaz Tr. Estab.*,

817 F.3d 747 (11th Cir. 2016)…………………………...……………7-8, 20, 21

*Diagnostic Leasing, Inc. v. Assoc. Indem. Corp.*,

2022 U.S. App. LEXIS 17455 (11th Cir. June 24, 2022)……………………..16

*Florida Physician's Ins. Co., Inc. v. Ehlers*,

8 F.3d 780 (11th Cir. 1993)…………………...…………………………23-24

*Fox Shriver LLC v. Indiv., Corps. Ltd. Liab. Cos., P'ships & Uninc. Ass'ns Id. on Sch. A to the Compl.*,

2024 U.S. Dist. LEXIS 10861 (S.D.N.Y. Jan. 22, 2024)……...…..……………9

**In re Worldwide Web Sys., Inc.*,

328 F.3d 1291 (11th Cir. 2003)……………………………….………..21, 23, 27

*MSP Recov. Claims, Series LLC v. Metro. Gen. Ins. Co.*,

40 F.4th 1295 (11th Cir. 2022)…………………………………………………11

*Orix Fin Servs. v. Cline*,

369 Fed. Appx. 174 (2d Cir. 2010)……………………………...……..18

**Case(s)** **Page(s)**

*****_Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship_,

507 U.S. 380 (1993)…………………………………………………..………..23

*_Pouyeh v. Public Health Trust of Jackson Health System_,

718 Fed. Appx. 786 (11th Cir. Nov. 21, 2017)……………………………..17-18

_Precision Etchings & Findings, Inc. v. LGP Gem, Ltd._,

953 F.2d 21 (1st Cir. 1992)…………………………………………………….18

_Prewitt Enters., Inc. v. OPEC_,

353 F.3d 916 (11th Cir. 2003)……………………………………...…8, 20, 21

*_Safari Programs, Inc. v. CollectA Int'l Ltd._,

686 Fed. Appx. 737 (11th Cir. 2017)……………………….………………22-23

_Sanderford v. Prudential Ins. Co. of Am._,

902 F.2d 897 (11th Cir. 1990)…………………………...……………15, 19-20

_Sapuppo v. Allstate Floridian Ins. Co._,

739 F.3d 678 (11th Cir. 2014)…..………………………..…………………13

*_SEC v. Lahr_,

2024 U.S. App. LEXIS 18170 (3d Cir. July 24, 2024)…...………………6-7, 9

_Sloss Indus. Corp. v. Eurisol_,

488 F.3d 922 (11th Cir. 2007)…………………………………………..…22-23

| **Case(s)** | **Page(s)** |
|---|---|


**Case(s)** **Page(s)**

**Smart Study Co. Ltd. v. Shenzhenshixindajixieyouxiangongsi*,

--- F.4th ---, 2025 U.S. App. LEXIS 33039
(2d Cir. Dec. 18, 2025)………...……………………………1-2, 3-5, 6, 7, 15

*Spin Master, Ltd. v. Aomore-US*,

2024 U.S. Dist. LEXIS 106694 (S.D.N.Y. June 17, 2024)……….……….11, 12

*United States v. Burwell*,

763 Fed. Appx. 84049 (11th Cir. 2019).….………………………………..11, 25

**Volkswagenwerk Aktiengesellschaft v. Schlunk*,

486 U.S. 694 (1988)……………………………..…………………6, 8, 15

*Wang & Gao Fam. Trust v. TA Partners LLC*,

2025 U.S. Dist. LEXIS 167411 (N.D. Ga. Aug. 28, 2025)……………………..9

**Water Splash, Inc. v. Menon,*

581 U.S 271 (2017)……………………….……………..….….……4, 15

*Wells v. Rockefeller*,

728 F.2d 209 (3d Cir. 1984)……………………………………………..20-21

*Winston v. Walsh*,

829 Fed. Appx. 448 (11th Cir. 2020)……………………………………….8-9

**Rules** **Page(s)**

Fed. R. Civ. P. 4……………………………..……………………..19, 21

Fed. R. Civ. P. 4(f)(3)………………………...…………………3, 5, 7, 8, 9, 10

Fed. R. Civ. P. 60(b)……………………...…………………………..16, 24, 25

Fed. R. Civ. P. 60(b)(1)………………..…………………………..…1, 22, 27, 28

Fed. R. Civ. P. 60(b)(4)……………………………………….………1, 21, 28

**Treaties and International Agreements** **Page(s)**

*Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, Art. 1,

Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638…………………………………..8

*Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, Art. 10,

Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638……………….…………5, 7, 13, 14-15

*Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, Art. 1,

Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638…………………………..………6

## INTRODUCTION

The Website Owners demonstrated that the District Court materially erred thus justifying reversal because:

(a) the alternative means of serving process on them violated the Hague Convention,[1] and thus the District Court ought to have declared the default judgment void for lack of personal jurisdiction under Federal Rule of Civil Procedure 60(b)(4), and

(b) the District Court failed to conduct the required totality of circumstances inquiry under Rule 60(b)(1).

(*See* W.O. Br.).[2]

In its opposition brief, Adidas tries to deflect from the flaws of the District Court's rulings by arguing that the Website Owners waived any challenge to service of process, that this Court ought to affirm on grounds not addressed below, and that the Website Owners abandoned certain arguments on appeal.

This Court ought not be distracted by Adidas's red herrings and side shows. As demonstrated below, the Website Owners neither waived any challenges nor abandoned any arguments on appeal, and this Court should not affirm on the alternative grounds urged by Adidas.

Before addressing Adidas's tangential arguments, the Website Owners wish

---

[1] *Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 ("Hague Convention" or "Convention").

[2] "W.O. Br." indicates the Website Owners' opening brief on appeal.

to bring to this Court's attention a new, on-point circuit authority – *Smart Study Co. Ltd. v. Shenzhenshixindajixieyouxiangongsi*, -- F.4th --, 2025 U.S. App. LEXIS 33039 (2d Cir. Dec. 18, 2025). This opinion is highly persuasive, and this Court therefore ought to follow it to resolve the service of process issue on appeal.

This reply brief then proceeds to address Adidas's other arguments on service and regarding Rule 60(b)(1). As shown *infra*, Adidas's arguments do not carry the day under relevant and precedential case law; the default judgment ought to be vacated and this matter remanded.

## ARGUMENT

### I. This Court Ought to Follow The Two Persuasive Circuit Court Opinions To Have Ruled on the Hague Convention Service Issue and Find that the Convention Was Violated, Service Was Ineffective, and the Default Judgment Void

#### A) The Second Circuit Has Joined the Third Circuit in Finding that the Convention Prohibits Service by Alternative Means under Circumstances Similar to Those At Issue Here

In opposition to the crux of the Website Owners' service argument (W.O. Br. 14-28), Adidas relies almost entirely on district court decisions, claiming that the District Court properly found the Hague Convention not to prohibit service by email and website publication, and that therefore service by those alternative means was proper under Rule 4(f)(3). (Adidas Br. 34-44).

Mere days after Adidas filed its opposition brief in this Court, the Second Circuit issued its decision in *Smart Study*. In that case, the court ruled squarely in a

manner favorable to the Website Owners' arguments and directly in a manner contrary to Adidas's position. *Smart Study* is soundly reasoned and highly persuasive to resolve the service issue on appeal, and we therefore ask this Court to follow it.

In *Smart Study*, the plaintiff argued that, because the Convention did not prohibit email service, it was a proper means of service of two China-based defendants under Rule 4(f)(3), even though local counsel had concluded that the physical addresses for service of those defendants may well have been known. 2025 U.S. App. LEXIS 33039, at *10-11, 17. Those defendants did not appear, but the court nonetheless denied plaintiff's motion for default judgment and instead dismissed the complaint for failure to effectuate service. *Id.* at *11.

In a thorough opinion that largely tracks the Website Owners' arguments here (W.O. Br. 14-28), the Second Circuit affirmed the district court's holdings. It held that the Convention prescribes the permissible channels for service abroad and cannot be circumvented by characterizing email as merely not expressly prohibited. *Smart Study*, 2025 U.S. App. LEXIS 33039, at *1. Indeed, "reading into the Convention's silence [about email] implicit permission for all types of service not affirmatively barred would render meaningless its 'approved methods of service,' encouraging

endruns around the very system it created." *Id.* at *15. (*Contra* Adidas Br. 39). Thus, where it applies, the Convention preempts inconsistent service methods, and email service is one such inconsistent preempted method. 2025 U.S. App. LEXIS 33039, at *14.

The Second Circuit also remarked that China explicitly had objected to service by postal channels, which would include email, *id.* at *12, and even if the term "postal channels" does not include email, "it would make little sense for a nation to object to a method of service not identified or authorized by the Convention, since…'there would be nothing affirmative to object to.'" *Id.* at *13. (*Contra* Adidas Br. 39-43).

In support of its holding, the Second Circuit relied on the Convention's text, Supreme Court precedent (*Water Splash, Inc. v. Menon*, 581 U.S 271 (2017)), and common sense. 2025 U.S. App. LEXIS 33039, *at *13-15. It concluded that the Convention is a "closed universe" for service and any means not approved by it is effectively prohibited under Rule 4(f)(3). *Id.* at *14. Moreover, "were the Convention to permit email service, it is difficult to see why any party would ever choose slower, more costly" service methods expressly stated therein. *Id.* at *14-15 (internal citations and quotations omitted).

It also relied upon the Convention's structure, highlighting Articles 11

and 19:

> [Under] Article 11…[t]wo contracting states could therefore agree to allow service by email if they so choose. But this provision would be superfluous if the Convention allowed serving parties to use unspecified methods of service beyond those already identified in the text….
> [And,] preserving a country's ability to enact more permissive service-of-process laws [under Article 19] would be unnecessary if the Convention did not already bar parties from using methods beyond those specified.

*Id.* at *15-16. Accordingly, held the court, because email service was prohibited by the Convention and thus improper under Rule 4(f)(3), the district court "correctly denied Smart Study's motion for a default judgment for lack of personal jurisdiction" and correctly dismissed the matter for lack of personal jurisdiction. *Id.* at *17-20.

On appeal, Adidas focused on the purported "majority" of district court decisions that have found the Hague Convention does not explicitly prohibit service by email and website publication and thus those methods are not prohibited by international agreement, and that China's Article 10 objection does not extend to those alternative means. (Adidas Br. 34-37). Even if, however, a majority of district courts so held at the time Adidas filed its brief, there are now *two* circuit courts to have ruled in a manner opposite of that supposed majority and directly supportive of the Website Owners' position.

Adidas attempts to belittle the other apposite circuit court opinion, *SEC v.*

*Lahr*, 2024 U.S. App. LEXIS 18170 (3d Cir. July 24, 2024); (*see* W.O. Br. 22-24) – by calling it is a mere "outlier Third Circuit case[.]" (Adidas Br. 37). Even if it once held "outlier" status, in light of *Smart Study*, *Lahr* is an outlier no more. In the same vein as *Smart Study*, *Lahr* held that the Convention does not expressly provide for service by email, and because there was no evidence that the two countries at issue (the United States and Switzerland) consented to email service under Article 11, or that Swiss internal law was followed, service was improper. 2024 U.S. App. LEXIS 18170, at *9-10.

Adidas's attempts to distinguish *Lahr* fail. (Adidas Br. 37-38). Adidas argues first that *Lahr* is "inapplicable" because, in that case, the Convention applied and here it does not. Adidas is wrong on that point, as we demonstrate in detail *infra*, Section I(B).

Adidas also contends that *Lahr* elevates form of service of process over the function of due process in contravention of Supreme Court and Eleventh Circuit precedent. (Adidas Br. 37-38). Supreme Court precedent is, however, crystal clear: where the Convention applies, compliance with its terms is mandatory. (W.O. Br. 15, citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988)).

In light of *Lahr* and *Smart Study*, Adidas's district-court-decision-based arguments regarding the Convention have lost strength and persuasiveness.

This Court should follow the highly persuasive reasoning of *Lahr* and *Smart Study*, which tracks the Website Owners' arguments here (*see* W.O. Br. 14-28), and was similarly in the context of two defendants who did not appear (indeed the two *Smart Study* defendants *never* appeared). Based on these authorities and those cited in the opening brief (W.O. Br. 14-28), this Court ought to find (a) the Hague Convention does *not* permit service by email and website publication merely because those means are not expressly prohibited, (b) with regard to both the Website Owners (localityi.com and mediumspots.com), because service of process was not effected through the nations' Central Authorities, service was ineffective and in violation of Rule 4(f)(3), and (c) with regard to the China-based defendant (localityi.com), China's objection in Article 10 means that methods other than via its Central Authority are prohibited and the service on the China-based Website Owner was ineffective on that ground, too.

### B) The Hague Convention Applies in this Case, and Actual Notice Does Not Remedy the Defects in Service

The Hague Convention is not optional and does not leave service choices up to the plaintiff so long as it provides actual notice. (*Contra* Adidas Br. 30, 45-48). *See De Gazelle Grp., Inc. v. Tamaz Tr. Estab.*, 817 F.3d 747, 751 (11th Cir. 2016) ("notice does not confer personal jurisdiction on a defendant when it has not been served in accordance with Rule 4"); *Prewitt Enters., Inc. v. OPEC*, 353 F.3d 916,

925 (11th Cir. 2003) ("even though OPEC had actual notice of the filing of the suit, service of process was ineffective because it was clearly not in substantial compliance with the requirements" of Rule 4(f)(2)); *id.* at n.14 (noting that, even in cases finding service of process adequate and considering actual notice, the "courts were careful to determine that service of process was in substantial compliance with the formal requirements of the Federal Rules").

Rather, where the Hague Convention applies, compliance with its terms is mandatory, *Schlunk*, 486 U.S. at 699, 705, and service by any means prohibited by the Convention violates Rule 4(f)(3). *See* Fed. R. 4(f)(3) (service may be accomplished by court-ordered alternative means "not prohibited by international agreement").

Pointing to Article 1 of the Convention, which states that the Convention "shall not apply where the address of the person to be served with the document is not known," Adidas contends that the Convention did not apply here because the physical addresses of the Website Owners were unknown. (Adidas Br. 30-33). Adidas is wrong.

"It is the plaintiff's…responsibility to find the correct address of a defendant" for purposes of the Hague Convention. *Winston v. Walsh*, 829 Fed. Appx. 448, 452 (11th Cir. 2020). Therefore, the plaintiff bears the burden of making a genuine showing that a physical address cannot be ascertained. To do so,

courts require the plaintiff to demonstrate that it exercised "reasonable diligence" (but non-success) to learn the defendant's physical address. *See, e.g., Lahr*, 2024 U.S. App. 18170, at *6-8 and n.13 (citing cases from various jurisdictions employing the reasonable diligence test and finding that test comports with the Convention); *Wang & Gao Fam. Trust v. TA Partners LLC*, 2025 U.S. Dist. LEXIS 167411, at *12-14 (N.D. Ga. Aug. 28, 2025) (finding plaintiff's efforts failed to rise to the reasonable diligence standard and citing similar cases).

Under that test, a plaintiff must undertake investigation, such as dispatching an investigator to scour in-country utility and property records, *Wang Gao*, 2025 U.S. Dist. LEXIS 167411, at *13, and/or to attempt to determine through in-person efforts whether physical addresses were associated with defendants. *Fox Shriver LLC v. Indiv., Corps. Ltd. Liab. Cos., P'ships & Uninc. Ass'ns Id. on Sch. A to the Compl.*, 2024 U.S. Dist. LEXIS 10861, at *6-7 (S.D.N.Y. Jan. 22, 2024). Where feasible, the plaintiff also should ask counsel known to be associated with defendant for the address. *Wang Gao*, 2025 U.S. Dist. LEXIS 167411, at *14.

Here, in the District Court, Adidas's main argument was that, although the Hague Convention applied, the proposed alternative service means did not run afoul of the treaty and hence were permissible under Rule 4(f)(3). (Adidas Br. Dist. Ct. Dkt. 9 at 13-16). Adidas then wrote half-heartedly at the end of its filing: "Notwithstanding, Plaintiffs also submit that the Hague Convention does not apply

in this case" because "Plaintiffs have not identified a valid address" for the many defendants it had sued. (*Id.* at 16). In support, Adidas relied on one paragraph in a counsel declaration, which stated in full:

> Plaintiffs have investigated Defendants and have reasonable cause to suspect Defendants may reside and/or operate in China, Vietnam, Canada, or other foreign jurisdictions, and/or redistribute products from sources in those locations. Plaintiffs' investigation of Defendants looked at multiple connection data points, such as information contained on Defendants' actual e-commerce stores operating under their respective E-commerce Store Names, payment and shipping information, and the investigative data provided thereunder. While Plaintiffs have not identified a valid address for service of process on Defendants or determined Defendants' exact locations, Plaintiffs have good cause to suspect Defendants are not residents of the United States.

(Dist. Ct. Dkt. 9-2 at 4 ¶7).

The District Court did not make any findings regarding Adidas's efforts to ascertain any of the defendants' physical addresses, let alone its efforts specifically regarding these particular Website Owners. It did not make those findings because the District Court *accepted* Adidas's main argument that the Hague Convention in fact applied. It held, although the Convention applies, it "does not specifically preclude service by email and Internet publication," hence, service by these means do not violate an international agreement under Rule 4(f)(3). (Appendix Tab 11 at 2-3). That decision did not change even when the Website Owners moved to set aside the default judgment. In opposition, Adidas again raised its argument that the Convention was inapplicable as well as its argument that, even though the

Convention applied, the proposed alternative means did not violate it. (Dist. Ct. Dkt. 43 at 8-14). The District Court held that the Convention applied but that the alternative means did not violate it. (*See id.* Tab 45 at 12-13).

The reasonable diligence inquiry is fact-specific. *Spin Master, Ltd. v. Aomore-US*, 2024 U.S. Dist. LEXIS 106694, at *15 (S.D.N.Y. June 17, 2024). Where a district court did not address a party's argument and a determination of that issue is necessary but fact-specific, this Court may remand to the district court to address the issue in the first instance. *United States v. Burwell*, 763 Fed. Appx. 840, 849 (11th Cir. 2019) (*per curiam*) (citing *Torres v. Pittston Co.*, 346 F.3d 1324, 1334 (11th Cir. 2003)); *accord MSP Recov. Claims, Series LLC v. Metro. Gen. Ins. Co*., 40 F.4th 1295, 1306 (11th Cir. 2022). But here, this Court should instead resolve the issue even though it was not passed on below because the proper resolution is beyond any doubt. *See Burwell*, 763 Fed. Appx. at 849 (citing *Narey v. Dean*, 32 F.3d 1521, 1526-27 (11th Cir. 1994)).

On appeal, Adidas relies again on the single paragraph in counsel's declaration– which was general to the many defendants and not specific as to *these* defendants – as proof that it established these particular Website Owners' physical addresses to have been unknown. (Adidas Br. 32). There can be no doubt, however, that the efforts described therein fall woefully short of the reasonable diligence test. Merely hiring an investigator with no explanation of what if any

steps were taken to verify addresses simply does not constitute reasonable diligence. *Spin Master*, 2024 U.S. Dist. LEXIS 106694, at *16. Even beyond that, there is no evidence Adidas undertook any in-country investigation of records or made any attempts to find the physical addresses in person. In addition, although Adidas itself informed the District Court that the Website Owners were "in at least four other similar trademark infringement litigations pending at the time the motion to set aside was filed, with the same lawyers" (Adidas Br. 60), there is no evidence Adidas asked those "same lawyers" for address information, although they easily could have done so.

Contrary to Adidas's argument (Adidas Br. 33), the Website Owners did not forfeit any argument about the Convention's applicability by failing to raise it in their opening brief. As already noted, the District Court *accepted* that the Convention applied but held that it did not prohibit the alternative means. (*See* W.O. Br. 4-5, 10-11). (*Accord* Appendix, Tab 11 at 2-3 and Tab 45 at 12-13). The Website Owners had no reason to challenge on appeal the portion of the District Court's decision with which it agrees (that the Convention applies). Thus, no forfeiture has occurred.

The two cases cited by Adidas (Adidas Br. 33) are not to the contrary. Both cases clarify that an appellant forfeits an argument where it fails to *contest* a holding rendered *against* it. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d

678, 680 (11th Cir. 2014) ("To obtain reversal of a district court judgment that is based on multiple, independent grounds, an appellant must convince us that every stated ground for the judgment *against him* is incorrect") (emphasis added); *Adler v. Duval Cty. Sch. Bd.*, 112 F.3d 1475, 1480 (11th Cir. 1997) (finding appellants forfeited argument on appeal because they failed to offer it as a basis for "finding trial court *error*") (emphasis added). Because the District Court did not rule against the Website Owners on the applicability issue, the Website Owners had no reason to raise that issue in their opening brief.

### C) This Court May Consider the Chinese Government's 2025 Guidance, Which Does Not Represent a Change in the Law or an Attempt to "Expand" Treaty Terms

Adidas asserts that the Website Owners "waived" reliance on China's March 2025 Guidance (which was cited on appeal, *see* W.O. Br. 21) that its Article 10 objection extends to electronic service because it pre-dated the District Court's order and was not presented below. (Adidas Br. 43-44). Adidas also argues that the Guidance constitutes non-binding "agency interpretation" and that China cannot expand treaty terms. (*Id.* 44-45). Adidas is off-base on all fronts.

First, Adidas ignores our point that this Court may take judicial notice of authoritative guidance on the official website of a foreign nation's Ministry of Justice. (W.O. Br. 21-22). It therefore implicitly concedes that point. *Bickerstaff Clay Prods. Co. v. Harris Cty.*, 89 F.3d 1481, 1487 n.10 (11th Cir. 1996).

Second, the Guidance does not represent a "change in the law[.]" (*Contra* Adidas Br. 44). The 2025 Guidance built upon the 2023 official guidance that a "foreign judicial body or individual cannot directly serve documents to a person within China" but must proceed via the Central Authority. (W.O. Br. 20, quoting 2023 guidance). The 2025 Guidance thus emphasized China's position, "reminding those who need to serve documents in China to proceed through the Central Authority and not directly by mail, courier, email, and other similar methods that do not involve the Central Authority." (*Id.* 21). The Website Owners informed the District Court of the 2023 guidance, and Adidas did not challenge (below or on appeal) the status of China's internal law or position on service. (*Id.*)

Third, the question presented is one of law. *See Animal Sci. Prods. v. Hebei Welcome Pharm. Co.*, 585 U.S. 33, 36 (2018) (Fed. R. Civ. P. 44.1 instructs that, in determining foreign law, "the court may consider any relevant material or source . . . whether or not submitted by a party"; "[t]he court's determination must be treated as a ruling on a question of law," … the court "may engage in its own research and consider any relevant material thus found")).

Fourth, the Guidance here is not akin to a U.S. agency's non-binding statutory interpretation or an attempt by China to amend the Convention's terms. (*Contra* Adidas Br. 45). It is instead elaboration on how China understands its service of process regime and implements its Article 10 objection to assist parties

wishing to serve process there. The Convention's text makes the receiving state's declarations and objections central to whether particular channels are available. *See Water Splash*, 581 U.S. at 276–77; *see also generally Smart Study*, 2025 U.S. App. LEXIS 33039. Moreover, nations routinely provide practical information on how properly to serve process on persons within their boundaries so foreign plaintiffs might *succeed* in their Convention service efforts, not in an attempt to amend a treaty to which they have acceded. *See, e.g.,* *https://www.hcch.net/en/instruments/conventions/authorities1/?cid=17* (Last visited Jan. 6, 2026).

Fifth, in any event, the Convention's mandatory character when applicable and Rule 4(f)(3)'s "not prohibited by international agreement" limitation are questions of treaty text, precedent, and persuasive authority, regardless of any Guidance. Where the Hague Convention applies, compliance with its terms is mandatory. *Schlunk*, 486 U.S. at 699, 705.

### D) The Website Owners Did Not Waive A Challenge to Service of Process

Relying largely on *Sanderford v. Prudential Ins. Co. of Am*., 902 F.2d 897, 901 (11th Cir. 1990), Adidas urges affirmance on a theory that the Website Owners waived objection to service of process by having actual notice, appearing through counsel, and then failing to raise the objection before entry of default judgment. (Adidas Br. 23-28). Adidas misreads Eleventh Circuit law, and its arguments

should be rejected for several reasons.

As an initial matter, it is Adidas – not the Website Owners – that suffers from a forfeiture problem. Undisputably, the Website Owners raised ineffective service of process in their first substantive motion, that is, their Rule 60(b) motion to set aside the default judgment. (*See* W.O. Br. 7, citing Dist. Ct. Dkt. 40). Below, in opposition to the Website Owners' Rule 60(b) motion, Adidas did not contend that the Website Owners had waived a service objection or contest their ability to raise it. Adidas's failure to make their waiver argument below means the argument is forfeited on appeal. *See Diagnostic Leasing, Inc. v. Assoc. Indem. Corp.*, 2022 U.S. App. LEXIS 17455, at *20 (11th Cir. June 24, 2022) (citing *Resol. Tr. Corp. v. Dunmar Corp.,* 43 F.3d 587, 598 (11th Cir. 1995)).

Even if Adidas had preserved the argument below, the Website Owners did not lose their ability to challenge service of process just by entering an appearance. (*Contra* Adidas Br. 25). As expounded on below, the case law is clear – (a) mere appearance by an attorney does not, without more, constitute waiver, and (b) courts find waiver by conduct only where the defendant actively participated in the judicial proceedings so as to mislead the plaintiff into thinking it was going to defend on the merits, which did not happen here.

Adidas cherry-picked *dicta* from *Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852 (11th Cir. 2010), to support this broad proposition: "A party can

waive the requirement of service of process 'if he or she has entered an appearance' prior to the entry of default judgment.' *Baragona*, 594 F.3d at 854." (Adidas Br. 25). *Baragona* did not, however, tackle the issue whether mere appearance prior to entry of default judgment without more constitutes waiver. In *Baragona*, the defendant did *not* appear but was accused of engaging in "'lawyerly gamesmanship'" by "ignoring valid service, retaining counsel in the United States, monitoring court proceedings, and then filing a motion to vacate the judgment after a default judgment was rendered against it." *Id*. This Court summarized that a defendant "normally only waives a personal jurisdiction defense if he or she has entered an appearance or was involved in overt wrongdoing to deceive the court and avoid service of process." *Id.* "[N]one of those circumstances are present" however, – meaning, the conduct did *not* constitute "overt wrongdoing to deceive the court" and the defendant was found *not* to have waived its personal jurisdiction defense. *Id.* The "normally…waives a personal jurisdiction defense if he or she has entered an appearance" phrase was therefore *dicta*.

In any event, since *Baragona*, this Court clarified (after surveying Eleventh Circuit authorities and other circuit cases) that mere appearance of counsel is insufficient to waive a challenge to service. *See Pouyeh v. Public Health Trust of Jackson Health System*, 718 Fed. Appx. 786, 791 (11th Cir. Nov. 21, 2017). Other Circuits expressly agree with *Pouyeh*. *See, e.g., Blessing v. Chandrasekhar*, 988

F.3d 889, 894-899 (6th Cir. 2021). *See also Aldossari v. Ripp*, 49 F.4th 236, 256 n.33 (3d Cir. 2022) (citing *Blessing* favorably on this point).

Waiver of a service of process defense results not just from failure to raise the defense but also extensive participation in the judicial proceedings on the merits thereby giving the plaintiff a reasonable expectation of a defense on the merits. *See, e.g., Pouyeh*, 718 Fed. Appx. at 791 (finding no waiver of service objection where defendant participated in proceedings only by entering an appearance and raising the service objection after the Clerk's entry of default but not otherwise invoking the judgment of the court); *Orix Fin Servs. v. Cline*, 369 Fed. Appx. 174, 177 (2d Cir. 2010) (noting waiver had been found in prior cases "only where the defendant litigated the merits of the case without asserting the defense"); *Precision Etchings & Findings, Inc. v. LGP Gem, Ltd.*, 953 F.2d 21, 25 (1st Cir. 1992) (surveying case law and concluding that conduct leads to waiver where defendant fails to raise defense and actively participates in judicial proceedings, such as by participating in a preliminary injunction hearing, seeking affirmative relief by bringing a parallel suit, or giving "the appearance of submission through extended inaction[,]" e.g., by appearing, participating in depositions, and waiting four years before raising the defense).

Here, the Website Owners merely entered an appearance but did not participate in the judicial proceedings at all until the filing of the Rule 60(b)

motion. (*Accord* Adidas Br. 1, 21, 26-27). Under the precedents cited just above, they did not waive the defense through their conduct.

Adidas cited no case resembling the circumstances at issue here. As noted *supra*, Adidas relies mainly on *Sanderford*, asserting that it "closely parallels" this case and that Rule 4 should be "liberally construed so long as a party receives sufficient notice of the complaint" which, according to Adidas, the Website Owners did. (Adidas Br. 25-26). This case, however, is nothing like *Sanderford.* There, a third-party U.S. defendant was properly served with the summons and complaint but the summons contained a minor defect. Thereafter, the third-party defendant was served with several filings warning him of possible entry of default judgment, including an order giving him additional time to respond. 902 F.2d at 899. (Notably, even prior to the action being brought against him, he had been deposed in the underlying action months before the third-party complaint was filed against him. *Id.* at 901.) Following his failure to respond, the court issued a default judgment, which the defendant then moved to set aside for a defective summons. This Court concluded that the summons defect was minor, service was in "substantial compliance" with Rule 4, and the court was "not deprived of personal jurisdiction because there is a minor defect in the process." *Id.* at 899. Moreover, through his "studied indifference and deliberate inaction" to multiple notices, the defendant waived the defense regarding the minor summons defect. *Id.* at 901.

This case by contrast involves wholesale non-compliance with the Hague Convention. *See De Gazelle Grp.*, 817 F.3d at 751 (service that is not in "substantial compliance" with the Federal Rules fails to confer personal jurisdiction over a defendant, even when defendant has actual notice of lawsuit); *accord Prewitt*, 353 F.3d at 925 and n.14.

*Sanderford* also is distinguishable because the defendant in that case was given multiple opportunities and extra time to oppose entry of a default judgment but studiously elected not to do so until after the default judgment. Here, the Website Owners did not have multiple opportunities and evince a studious election not to act. Adidas attested to having served all defendants on April 23, 2024. One month later, on May 24, 2024, Adidas sought entry of a default judgment. On June 4, 2024, mere days after Adidas moved for default judgment, the Website Owners appeared through counsel. On June 24, exactly one month after Adidas filed its motion and a mere 20 days after the Website Owners appeared through counsel, the district court granted Adidas's motion. (*See* W.O. Br. 5-6). Those circumstances in no manner demonstrate "studied indifference and deliberate inaction" like the failed response to multiple notices in *Sanderford*.

This case also bears no resemblance to *Wells v. Rockefeller*, 728 F.2d 209 (3d Cir. 1984). (Adidas Br. 27). There, the defendant intentionally ignored the suit against him, "allow the entry of the default judgment" *id*. at 214 and instead

asserted his own claims in a separate suit against the plaintiff. The Court found the defendant to have acted in a calculated manner of taking the default but bringing his own separate litigation. *Id.*

Finally, even if this Court finds the Website Owners to have waived the service defense, it nonetheless should – as it did in *De Gazelle* – exercise its discretion to review this pure question of law. (W.O. Br. 11, *de novo* review conducted of denial of Rule 60(b)(4) motion). Failure to review this defense would result in a miscarriage of justice, namely enforcement of a $2 million default judgment against each of the Website Owners, who were never served in compliance with Rule 4 and the Hague Convention. *De Gazelle*, 817 F.3d at 750 n.1. *See also Prewitt*, 353 F.3d at 925 (entity "is not obliged to engage in litigation unless officially notified of the action under a court's authority, by formal process'"). As argued, "where service of process is insufficient, the court has no power to render judgment and the judgment is void." (W.O. Br. 14, 28, quoting and citing *In re Worldwide*, 328 F.3d at 1299); *accord Colclough v. Gwinnett Pub. Schs.*, 734 Fed. Appx. 660 ("Given the improper service, the Court lacked jurisdiction over the matter and could not render a default judgment or enter default"). Moreover, there is a strong policy in favor of adjudicating cases on their merits, and this Court disfavors defaults. (W.O. Br. 29).

## II. The District Court Abused its Discretion by Failing to Conduct a Fulsome Rule 60(b)(1) Analysis

Adidas contends that the District Court's consideration of just one of the Rule 60(b)(1) "excusable neglect" factors was sound and not an abuse of discretion and that in any event the Website Owners do not satisfy Rule 60(b)(1). (Adidas Br. 49-64). Adidas' contention is incorrect.

As explained (W.O. Br. 30-31), under Eleventh Circuit law, the determination of what constitutes Rule 60(b)(1) excusable neglect "is an equitable one, taking into account the totality of the circumstances surrounding the party's omission." *Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 Fed. Appx. 737, 743 (11th Cir. 2017) (*per curiam*). A district court therefore abuses its discretion by failing to conduct the requisite totality-of-the-circumstances analysis.

That inquiry requires a court to consider whether: (1) the defendant "had a meritorious defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply to the complaint." *Architectural Ingenieria Siglo XXI, Ltd. Liab. Co. v. Dominican Rep.*, 788 F.3d 1329, 1332 (11th Cir. 2015).

It is true that *Safari* is unpublished (Adidas Br. 50-51), but the totality-of-the-circumstances principle stated therein was not new. It was taken practically verbatim from the three binding, published precedents cited therein, *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993), *Sloss Indus.*

*Corp. v. Eurisol*, 488 F.3d 922, 934 (11th Cir. 2007), and *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1297 (11th Cir. 2003). *See Safari*, 686 Fed. Appx. at 743-744 (citing these cases).

Therefore, *Safari* is not only persuasive but also binding for the principle for which it was cited. (W.O. Br. 30). (*Contra* Adidas Br. 51-52, claiming *Safari* is not binding and not persuasive "because it does not stand for the proposition Appellants urge this Court to adopt").

Notably, in addition to relying on *Safari*, the Website Owners also relied upon *In re Worldwide Web Sys.* (*see* W.O. Br. 30-31), in which this Court also iterated the proposition they urge this Court to follow here, as follows:

> While the absence of prejudice to the nonmoving party and to the interest of efficient judicial administration are of "primary importance," the *Pioneer* and [another] decisions do not alter the fact that a determination of excusable neglect is an equitable one that necessarily involves consideration of all three elements – a meritorious defense, prejudice, and a good reason for not responding to the complaint – and not, as Valdez argues, exclusively prejudice.... "The excusable neglect determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."

328 F.3d at 1297. Accordingly, Adidas is flat wrong to suggest that the "holistic approach" is optional under *Safari*[3] or *Florida Physician's Ins. Co., Inc. v. Ehlers*,

[3] Adidas also argues that *Safari* should be cast aside as cabined to the "unique facts before it," which are "materially different" than the facts here. (Adidas Br. 51-52, internal citations and quotations omitted). The Website Owners cited the case for its totality-of-the-circumstances principle, not its facts.

8 F.3d 780, 783 (11th Cir. 1993) (setting forth three elements to be considered), or any other case. (Adidas Br. 51).

As established, under Eleventh Circuit law, a district court abuses its discretion where it fails to conduct an equitable analysis, taking into account the totality of circumstances surrounding the party's omission. Because there is no dispute that the District Court failed to consider any factor other than good cause for delay, this case ought to be remanded for the District Court to conduct the requisite fulsome analysis. (W.O. Br. 29-33). Notably, the district court erred not only by failing to conduct a totality of the circumstances inquiry but also by failing to properly evaluate the one factor it *did* consider, the good cause for delay factor. (W.O. Br. 32-33). As contended, the district court failed to consider the second half of the Website Owners' argument – reasonable reliance on representations of Adidas' counsel that settlement discussions would end upon the filing of a Rule 60(b) motion. (*Id.*).

To this, Adidas says it disputes the facts. (Adidas Br. 55). Adidas does not, however, dispute that the Website Owners' counsel reached out to discuss settlement and mediation (Adidas Br. 55, citing Dist. Ct. Dkt. 43-1 ¶7; W.O. Br. 9). Moreover, the Website Owners never claimed to have entered into an "agreement" with opposing counsel that would have been required to be reduced to writing and submitted to the Court. (*Contra* Adidas Br. 55). Rather, the Website Owners

merely reported their understanding, based on statements made by Adidas's counsel, that settlement negotiations would cease upon the filing of a Rule 60(b) motion, and their reliance on same.

To the extent this was a mistake of fact, it constitutes good cause for delay. *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1356 (11th Cir. 2009) (finding abuse of discretion because no consideration of *Pioneer* factors, and attorney's mistaken assumption of fact was excusable negligence, not "purposeful" or based on a misinterpretation of law). (*Contra* Adidas Br. 57). To the extent this Court perceives factual disputes that require resolution, the proper course is to remand. *See Burwell*, 763 Fed. Appx. at 849. *See also Bidi Vapor LLC v. U.S. FDA*, 47 F.4th 1191, 1206 (11th Cir. 2022) (appellate courts are not fact-finders).

A remand is necessary here for reasons beyond the good cause issue. There is no dispute the District Court did not make any findings regarding the *other* factors that need to be considered (e.g., meritorious defense and prejudice). Adidas contends that remand is not necessary because there was prejudice and the lack of willfulness is not a meritorious defense. (Adidas Br. 58-64).

On willfulness, Adidas cites to evidence below regarding infringement litigation against these the Website Owners by *other* plaintiffs, as well as evidence that the Website Owners sold allegedly counterfeit goods to *these* plaintiffs on

April 22, 2024, when the *sealed* temporary restraining order was in place and prior to the April 23 service attestation. (Dist. Ct. Dkts. 17, 25); (Adidas Br. 60, citing Dist. Ct. Dkts. 43-1 at 4 and 43 at 17). The Website Owners would, if given the opportunity on remand, strongly contest the use of this evidence to demonstrate willfulness. Proper resolution of whether the Website Owners presented a meritorious defense on willful infringement is fact-dependent, and this Court ought to remand the issue so the District Court may adjudicate it in the first instance.

Moreover, the Website Owners did not abandon their claim of a meritorious defense regarding willful infringement. They specifically raised that issue (W.O. Br. 8-9, 31 n.9) and generally sought a remand so the District Court could consider *all* relevant excusable neglect factors. (*Id.* 29-33).

Regarding prejudice, Adidas does not dispute that delay of a few months "is insufficient for prejudice." (W.O. Br. 32, citing *Coniglio v. Bank of Am., N.A.,* 638 Fed. Appx. 972, 975 (11th Cir. 2016)). Nor does Adidas dispute that under the Hague Convention – which the district court found applicable – default judgment may not be entered before six months have passed. *See* Convention, Art. 15. (Website Owners' Br. 33). Instead, Adidas contends it suffered prejudice due to delay because the Website Owners deleted the product listings at issue and based on speculation that third-party records "likely" have been deleted. (Adidas Br. 61-62).

Whether Adidas deleted the product listings at issue is a red herring; we doubt Adidas would have preferred the Website Owners *continue* alleged infringement by offering the products on an ongoing basis. Moreover, Adidas already submitted the evidence in support of their infringement claim in support of their motions for injunctive relief and default judgment.

As for third-party records, speculation fails to establish spoliation, and Adidas submitted no evidence regarding when unidentified records might have been deleted or by who or how they might have materially advanced their claims. It also failed to show that any loss was caused by any delay attributable to the Website Owners rather than by ordinary third-party retention practices, especially given that the complaint originally was filed in November 2023.

In sum, given the overriding preference to resolve disputes on the merits rather than by default, *In re Worldwide Web Sys.*, 328 F.3d at 1295, this Court ought to remand so the District Court can conduct a fulsome Rule 60(b)(1) analysis. (*Contra* Adidas Br. at 63-64, arguing that a remand would be useless).

## CONCLUSION

For the reasons set forth in their opening brief and this reply, the Website Owners respectfully request that this Court: (1) reverse the district court's denial

of their motion for relief under Federal Rule of Civil Procedure 60(b)(4) or 60(b)(1), (2) vacate the default judgment, and (3) remand with appropriate instructions.

Respectfully submitted,

/s/ Laina C. Lopez
Laina C. Lopez
BERLINER CORCORAN & ROWE LLP
1101 17th Street NW, Suite 1100
Washington, D.C. 20036
(202) 293-9096 (phone)
(202) 293-9075 (fax)
llopez@bcrlaw.com

*Counsel of Record for Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(ii) as the brief contains 6,497 words, excluding those parts exempted by 11th Cir. Local R. 32-4.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) as this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

/s/ Laina C. Lopez
Laina C. Lopez